# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ARCHER AND WHITE SALES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HENRY SCHEIN, INC., DANAHER | § | CIVIL ACTION NO.: |
| CORPORATION, INSTRUMENTARIUM | § | 2:12-CV-00572-JRG-RSP |
| DENTAL INC., DENTAL EQUIPMENT | § | |
| LLC, KAVO DENTAL TECHNOLOGIES, | § | |
| LLC AND DENTAL IMAGING | § | |
| TECHNOLOGIES CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF ARCHER AND WHITE SALES, INC.'S
## RESPONSE IN OPPOSITION TO MANUFACTURER DEFENDANTS'
## MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS

Jerry L. Beane
State Bar No.  01966000
jerrybeane@andrewskurth.com
Kay Lynn Brumbaugh
State Bar No.  00785152
kaylynnbrumbaugh@andrewskurth.com
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, TX  75201
214.659.4400 Telephone
214.659.4401 Facsimile

**ATTORNEYS FOR PLAINTIFF
ARCHER AND WHITE SALES, INC.**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION .............................................................................................................1

II.     BACKGROUND ................................................................................................................2

III.    ARGUMENT AND AUTHORITIES................................................................................4

        A.      Because the arbitration agreement in the 2007 Pelton & Crane agreement is limited in scope and is not retroactive, it does not cover this dispute. ....................4

                1.      The arbitration agreement expressly excludes actions involving injunctive relief, such as this one...............................................................5

                2.      The antitrust claims are outside the scope of the arbitration agreement, because those claims do not have a significant relationship to the 2007 contract between Archer Dental and Pelton & Crane.................................7

                3.      The arbitration agreement does not cover disputes with the other Manufacturer Defendants..............................................................................8

                4.      The arbitration agreement does not apply retroactively. ............................8

                5.      This Court can make the determination that this dispute is not arbitrable. ....................................................................................................9

        B.      Manufacturer Defendants cannot use equitable estoppel to force Archer Dental to arbitrate these claims................................................................................10

                1.      The allegations in the complaint are not intertwined with the 2007 Pelton & Crane agreement. .......................................................................11

                2.      The claims against the Manufacturer Defendants are not sufficiently intertwined with the contract to qualify for equitable estoppel under the second *Grigson* test...............................................................................13

                3.      The Manufacturer Defendants cannot rely on their bad acts to create equitable estoppel..................................................................................14

IV.     CONCLUSION.................................................................................................................15

DAL:844829.3

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Heritage Life Ins. Co. v. Lang*,
  321 F.3d 533 (5th Cir. 1996) ...................................................................................................5

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009).................................................................................................................10

*AT&T Technologies, Inc. v. Communications Workers of Am.*,
  475 U.S. 643 (1986)...........................................................................................................1, 4, 9

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
  345 F.3d 347 (5th Cir. 2003) .................................................................................................10

*Cardiology Assocs. P.A. v. Mallick*,
  978 S.W.2d 209 (Tex. App.—Texarkana 1998, pet denied) ....................................................5

*Celanese Corp. v. Boc Group PLC*,
  CIV.A.3:06-CV-1462-P, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006).................................10

*Fleetwood Enters. Inc. v. Gaskamp*,
  280 F.3d 1069 (5th Cir. 2002) .................................................................................................5

*Grigson v. Creative Artists Agency L.L.C.*,
  210 F.3d 524 (5th Cir. 2000) .....................................................................................10, 11, 13

*Haddock v. Quinn*,
  287 S.W.3d 158 (Tex. App.—Ft. Worth 2009, pet. denied).....................................................9

*Hadnot v. Bay, Ltd.*,
  344 F.3d 474 (5th Cir. 2003) ...................................................................................................5

*Hill v. G E Power Sys., Inc.*,
  282 F.3d 343 (5th Cir. 2002) .......................................................................................2, 11, 14

*In re Merrill Lynch Trust Co. FSB*,
  235 S.W.3d 185 (Tex. 2007).....................................................................................................14

*Jones v. Halliburton Co.*,
  583 F.3d 228 (5th Cir. 2008) ...................................................................................................7

*Kristian v. Comcast Corp.*,
  446 F.3d 25 (1st Cir. 2006).......................................................................................................9

*Palmer Ventures LLC v. Deutsche Bank*
  AG, 254 F. App'x 426 (5th Cir. 2007)................................................................................11, 12

DAL:844829.3

*Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*,
  297 F.3d 388 (5th Cir. 2002) .................................................................................7

*QPro Inc. v. RTD Quality Services USA, Inc.*,
  761 F. Supp. 2d 492 (S.D. Tex. 2011) ...............................................................9, 10, 12

*Qualcomm Inc. v. Nokia Corp.*,
  466 F.3d 1366 (Fed. Cir. 2006)..............................................................................9

*Security Watch, Inc. v. Sentinel Systems, Inc.*,
  176 F.3d 369 (6th Cir. 1999) ................................................................................8

*Stahl Petrol. Co. v. Philips Petrol. Co.*,
  550 S.W.2d 360 (Tex. Civ. App.—Amarillo 1977, writ granted) ............................................6

*Tittle v. Enron Corp.*,
  463 F.3d 410 (5th Cir. 2006) .................................................................................9

*Wash. Mut. Fin. Group, L.L.C. v. Bailey*,
  364 F.3d 260 (5th Cir. 2004) ........................................................................5, 6, 13, 14

*Westmoreland v. Sadoux*,
  299 F.3d 462 (5th Cir. 2002) ......................................................................2, 5, 8, 10, 11, 13

*Will-Drill Res., Inc. v. Samson Res. Co.*,
  352 F.3d 211 (5th Cir. 2003) ...............................................................................4, 5

**STATUTES**

9 U.S.C. § 2.........................................................................................6, 13, 14

15 U.S.C. § 26.........................................................................................6

TEX. BUS. & COMM. CODE, § 15.21(b) .........................................................................6

**OTHER AUTHORITIES**

ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS at 798-802
  (7th ed. 2012) ...............................................................................6

DAL:844829.3

Plaintiff Archer and White Sales, Inc. ("Archer Dental") files this opposition to the motion to compel arbitration filed by Defendants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation (collectively, "Manufacturer Defendants").  The motion to compel arbitration and stay should be denied for the reasons explained below.

## I.      INTRODUCTION

Archer Dental has filed this action for injunctive relief and damages for violations of both federal and state antitrust laws that were caused by a price-fixing conspiracy and group boycott among various manufacturers and distributors of dental equipment.  Based solely on a limited arbitration agreement in an expired 2007 distribution agreement between Archer Dental and the predecessor of only one of the Manufacturer Defendants (Dental Equipment, LLC, d/b/a Pelton & Crane), the Manufacturer Defendants seek to compel all claims against them to arbitration, despite the facts that (1) none of the other Manufacturer Defendants was party to the agreement and there is no claim by the Manufacturer Defendants that there are arbitration agreements with any other of the Manufacturer Defendants; (2) the arbitration agreement specifically <u>excludes</u> "**actions** seeking injunctive relief" (emphasis added) such as this one; and (3) the antitrust conspiracy claims are outside the scope of the arbitration agreement.  Since arbitration is a matter of contract, Archer Dental cannot be forced to arbitrate any dispute that it did not agree to arbitrate.  *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986).  The plain language of the contract shows that Archer Dental did not agree to arbitrate this dispute with the Manufacturer Defendants.

The Manufacturer Defendants who are not parties to the arbitration agreement attempt to use the *per se* unlawful conspiracy alleged against them as grounds for equitable estoppel.  But those Manufacturer Defendants do not qualify under the "rare" and "limited" circumstances in

1

which equitable estoppel can enable a nonsignatory to compel arbitration. *See Westmoreland v. Sadoux,* 299 F.3d 462, 465 (5th Cir. 2002). Perhaps even more importantly, the Manufacturer Defendants' equitable estoppel arguments ignore the fundamental principle that "'the lynchpin for equitable estoppel is equity' and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.'" *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002). Allowing these defendants to benefit from their own bad acts by sheltering under another party's arbitration agreement would be a completely inequitable result.

## II.     BACKGROUND

Archer Dental is a family-owned distributer of dental equipment located in Plano, Texas. Archer Dental has been in business since 1983. Archer Dental developed a national reputation for its low prices and high quality service. Compl. ¶¶ 19-20, 22. Because it is a low-price alternative in the dental equipment industry, Archer Dental has been victimized by a long-running conspiracy among horizontal competitors to fix prices and refuse to compete with each other in the sales of dental equipment and who maintained that conspiracy by their further agreement, along with the Manufacturer Defendants, to terminate and/or reduce Archer Dental's distribution territory. Compl. ¶¶ 1, 19-54. Archer Dental has sued a number of the co-conspirators, including the Manufacturer Defendants and Archer Dental's competitor, Henry Schein, Inc. ("Schein") which is also a distributor of dental equipment including equipment of the Manufacturer Defendants. The Complaint includes claims for both injunctive relief and damages. *Id.* at ¶¶ 59-61, 66-68.

Prior to 2004, there were a number of dental equipment manufacturers in the United States, and Archer Dental had distribution relationships with many of them, including Gendex, Kavo, Pelton & Crane, Marus, Kerr, and DCI. Compl. ¶ 21. Beginning in 2004, Danaher began consolidating the industry by acquiring many of the previously independent dental equipment

manufacturers:  Kavo and Gendex in 2004; Pelton & Crane, Marus, and DCI in 2005; and PaloDEx Group (maker of Instrumentarium) in 2009.  *Id.*  Though all of the Manufacturer Defendants were participants in this conspiracy, it was Archer Dental's rival distributor, Schein, who spearheaded the conspiracy to fix prices and exclude Archer Dental from the dental equipment business.  *Id.* at ¶¶ 26, 28-34.

Defendants seek to rely on the arbitration provision in a single, superseded contract between Archer Dental and  Pelton & Crane, a company that the Manufacturer Defendants assert is a predecessor of Defendant Dental Equipment, LLC, with an effective date of October 4, 2007. The provision reads as follows:

> Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets or other intellectual property of Pelton & Crane) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association.  The place of arbitration shall be in Charlotte, North Carolina.

Mot., Ex. A, ¶ 12.8.  This provision contains an express limitation – the exclusion of "actions seeking injunctive relief" – but it is also noticeable for what it does not contain.  It does not exclude just injunction "claims" from arbitration.  Rather it excludes the entire lawsuit, *i.e.*, "actions" which seek injunctive relief.  The contract is between only Pelton & Crane and Archer Dental; it makes no reference to any parents, subsidiaries, or affiliates of either party.[1]  The Manufacturer Defendants do not provide the Court with copies of contracts involving any other Manufacturer Defendants.  Thus, the record before the Court is that of all the dealer agreements Archer Dental had with the Manufacturer Defendants, only the Pelton & Crane agreement contained an arbitration provision.  Further, the manufacturer-distributer relationship between

---

[1] Notably absent from the Manufacturer Defendants' motion is any mention of a later agreement entered into between Archer Dental and Pelton & Crane in 2009 or the recent correspondence from the Manufacturer Defendants regarding an "updated version" of the agreement that will "replace all prior agreements."  *See* Exs. 1 and 2 to the Declaration of Kay Lynn Brumbaugh filed with this response.

Pelton & Crane and Archer Dental was not created by this agreement, but predates this agreement by many years.  Compl. ¶ 21.

Most importantly, the antitrust conspiracy that is at the heart of this lawsuit is completely unrelated to the 2007 Pelton & Crane agreement.  The antitrust conspiracy began with the unlawful agreement between Schein and Company X, and the Manufacturer Defendants joined in that conspiracy.  The terminations and restrictions subsequently placed on Archer Dental by the Manufacturer Defendants – including Manufacturer Defendant Instrumentarium with whom Manufacturer Defendants tacitly admit there was <u>no</u> arbitration agreement[2] – were acts in furtherance of the conspiracy between Schein, Company X and the Manufacturer Defendants.  The antitrust conspiracy did not arise out of or relate to the superseded 2007 Pelton & Crane Agreement with Archer Dental; it arose out of an unlawful antitrust conspiracy among the Defendants that was independent of and unrelated to the 2007 Pelton & Crane Agreement with Archer Dental.

### III.    ARGUMENT AND AUTHORITIES

**A.    Because the arbitration agreement in the 2007 Pelton & Crane agreement is limited in scope and is not retroactive, it does not cover this dispute.**

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any suit it has not agreed to arbitrate.  *AT&T Technologies, Inc.,* 475 U.S. at 648.  "Although there is a strong federal policy favoring arbitration, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."  *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).  Courts, therefore, perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute.  *Id.* at 214.  First, the court must determine whether the parties agreed to

---

[2] *See* Mot. at 11 (stating that the allegation of misconduct against Instrumentarium "changes nothing").

4

arbitrate the dispute.  *Id.*  If the court finds that the parties agreed to arbitrate, it must consider

whether any federal statute or policy renders the claims nonarbitrable.

In the first step, "the court must determine whether the parties agreed to arbitrate the

dispute" by applying "the contract law of the particular state that governs the agreement."[3]

*Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 263-64 (5th Cir. 2004).   "This

determination involves two considerations:  (1) whether there is a valid agreement to arbitrate

between the parties; and (2) whether the dispute in question falls within the scope of that

arbitration agreement."  *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 1996).

Only after the court has made these determinations does the presumption favoring arbitration

arise, shifting the burden to the party seeking to avoid arbitration in the second step of the

analysis.  *Will-Drill Res., Inc.*, 352 F.3d at 214; *Cardiology Assocs. P.A. v. Mallick*, 978 S.W.2d

209, 212 (Tex.  App.—Texarkana 1998, pet denied).

1.     The arbitration agreement expressly excludes actions involving injunctive relief,
        such as this one.

The action before this Court is expressly excluded by the plain language of the arbitration

provision.  As part of the first step of the analysis, the Court must determine whether the dispute

in question falls within the scope of a valid arbitration agreement.  *Wash. Mut.*, 364 F.3d at 263-

64.  This analysis must always begin with contract interpretation.  *Hadnot v. Bay, Ltd.,* 344 F.3d

474, 476 (5th Cir. 2003).  In analyzing the contract, the "Court may not revise a contract under

the guise of professing to interpret it or to make for the parties a contract different from the one

---

[3] Manufacturer Defendants claim that the Court should apply the law of North Carolina to their motion, based solely on the forum selection clause in the 2007 Pelton & Crane agreement.  *See* Mot. at 5, 7.  Archer Dental does not concede that North Carolina law applies to any issue except the interpretation of the terms of the 2007 Pelton & Crane agreement.  *See, e.g. Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (while state contract law applies to some issues, such as the existence of a valid arbitration agreement, federal law applies to issues such as scope).  Since North Carolina, Texas, and federal law are more or less in accord on the issues raised by the Manufacturer Defendants, *see Westmoreland v. Sadoux*, 299 F.3d 462, 466 (5th Cir. 2002) (discussing similarities between 5th Circuit and 4th Circuit law on the ability of nonsignatories to compel arbitration), Archer Dental reserves its right to object to the choice of North Carolina law on any future issues on which the Texas, federal and North Carolina laws diverge.

they entered into."  *Stahl Petrol. Co. v. Philips Petrol. Co.*, 550 S.W.2d 360, 368 (Tex. Civ. App.—Amarillo 1977, writ granted).  This view is consistent with the purpose of the Federal Arbitration Act, which is "to give arbitration agreements the same force and effect as other contracts—no more and no less." *Wash. Mut.*, 364 F.3d at 264 (citing 9 U.S.C. § 2).

A plain reading of the contract shows that the parties did not intend to subject actions involving claims seeking injunctive relief to binding arbitration, as the arbitration agreement expressly <u>excludes</u> "actions seeking injunctive relief."  Mot., Ex. A, ¶ 12.8.  This action falls squarely within this exclusion.  Archer Dental has asserted claims under Section 16 of the Clayton Act, 15 U.S.C. § 26, which provides for injunctive relief against threatened loss or injury by a violation of the antitrust laws.[4]  Compl. ¶¶ 5, 61.  Therefore, this dispute is plainly "an action seeking injunctive relief" and therefore expressly excluded from the arbitration provision. To compel arbitration of this action would impermissibly create for the parties a contract different from the one into which they entered.[5]

The Rules of the American Arbitration Association ("AAA") also support the conclusion that this case is not within the scope of the arbitration provision.  Those rules, attached to the Manufacturer Defendants' Motion as Exhibit B, contain a suggested form of arbitration provision.  Mot., Ex. B at 9.  That form does not exclude actions involving injunctive relief. Thus, the arbitration provision in the Pelton & Crane agreement is not a standard AAA provision, but rather was specifically and intentionally drafted to exclude actions involving injunctive relief.

---

[4] The request for injunctive relief is no mere boilerplate claim.  It is a substantive claim that can be brought under the antitrust laws whether or not a claim for antitrust damages is also alleged.  *See* ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS at 798-802 (7th ed. 2012).  The Texas Free Enterprise and Antitrust Act also provides for suits seeking injunctive relief.  TEX. BUS. & COMM. CODE, § 15.21(b).  *See* Compl. ¶ 68.

[5] The fact that Archer Dental also seeks damages in addition to injunctive relief for these claims is irrelevant, since the plain language of the arbitration agreement exempts "<u>actions</u> seeking injunctive relief" (emphasis added) rather than just requests for injunctive relief.  Mot., Ex. A, ¶ 12.8.

DAL:844829.3

Additionally, Rule 43 of the AAA rules provides that the arbitrator may grant any remedy that is just and equitable "and within the scope of the agreement of the parties …"  Mot., Ex. B, R-43 at 37.  Injunctive relief is not within the scope of the arbitration provision.  Thus, the arbitrator cannot grant injunctive relief to Archer Dental.  That creates an untenable and Catch-22 situation:  if arbitration is ordered, the Court would have no jurisdiction to grant injunctive relief and the arbitrator could not grant it because of the terms of the arbitration provision.  Arbitration means that Archer Dental is deprived of its right to obtain injunctive relief.  That denial of the ability to obtain injunctive relief is alone a basis to deny the motion to compel arbitration.

> 2. <u>The antitrust claims are outside the scope of the arbitration agreement, because those claims do not have a significant relationship to the 2007 contract between Archer Dental and Pelton & Crane.</u>

While the language in the arbitration agreement may be broad, that is not the end of the scope of inquiry.  *See Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2008) ("even broad clauses have their limits").  As the Fifth Circuit has held, "Where, as here, an arbitration provision purports to cover all disputes 'related to' or 'connected with' the agreement, we have held that the provision is not limited to claims that literally 'arise under the contract,' but rather embrace[s] all disputes between the parties having a <u>significant relationship to the contract</u> regardless of the label attached to the dispute."  *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) (emphasis added).

The antitrust conspiracy did not arise out of or relate to the superseded 2007 Pelton & Crane Agreement with Archer Dental; it arose out of unlawful conduct by Defendants that had nothing to do with the 2007 Pelton & Crane Agreement.  The antitrust conspiracy began with the unlawful price-fixing and non-compete agreement between Schein and Company X, and the Manufacturer Defendants later joined in that conspiracy.  The terminations and restrictions

7

subsequently placed on Schein's price-cutting competitor, Archer Dental, by the Manufacturer

Defendants were acts in furtherance of the conspiracy among Schein, Company X and the

Manufacturer Defendants.  Plainly, the antitrust claims against the Manufacturer Defendants and

others do not have the type of relationship to the 2007 Pelton & Crane contract required to

invoke the arbitration provision.[6]

      3.      <u>The arbitration agreement does not cover disputes with the other Manufacturer Defendants.</u>

Even if the scope of the arbitration provision was considered broad enough to cover

Archer Dental's dispute with Pelton & Crane, the remaining Manufacturer Defendants are not

entitled to any presumption that the clause covers disputes between themselves and Archer

Dental.  The Fifth Circuit has stated:  "[W]e will read the reach of an arbitration agreement

between parties broadly, but that is a different matter from the question of who may invoke its

protections."  *Westmoreland v. Sadoux,* 299 F.3d 462, 465 (5th Cir. 2002).  There is no evidence

in the agreement that the parties intended to allow anyone other than the parties to invoke the

agreement.  The Manufacturer Defendants provide no such evidence.  Indeed, the Manufacturer

Defendants tacitly admit that there are no other such agreements.  *See, e.g., supra,* n.2.

      4.      <u>The arbitration agreement does not apply retroactively.</u>

Further, the agreement in the contract with Pelton & Crane has an effective date of

October 4, 2007, which may very well be after the conspiracy began.[7]  Identical language in

arbitration agreements referring to disputes arising under or related to "this Agreement" has

consistently been held not to apply retroactively.  *Security Watch, Inc. v. Sentinel Systems, Inc.*,

---

[6] Although the Manufacturer Defendants make much of the fact that Archer Dental referred in the complaint to "distribution agreements between Archer Dental and Danaher or its predecessors," (Mot. at 5) the 2007 Pelton & Crane agreement is not an agreement with Danaher or any other of its predecessors. As alleged in the Complaint, Archer Dental had separate agreements with each manufacturer of dental equipment for which it acted as a distributor. *See* Compl. ¶¶ 21, 23.  The Manufacturer Defendants, however, do not provide such agreements.

[7] Defendants concealed their unlawful conduct.  Compl. ¶ 53-54.

8

176 F.3d 369, 372 (6th Cir. 1999) (no retroactivity in an arbitration clause that read "[t]he parties shall follow these dispute resolution processes in connection with all disputes, controversies or claims ... arising out of or relating to the Products furnished pursuant to this Agreement or acts or omissions of [parties] under this Agreement."); *see also Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir. 2006).  The relationship between Pelton & Crane and Archer Dental predates this agreement by many years.  Compl. ¶ 21.

      5.      <u>This Court can make the determination that this dispute is not arbitrable.</u>

Manufacturer Defendants wrongly claim that this Court does not have the power to determine if this dispute is subject to arbitration.   But, "because arbitrators derive their authority from an agreement between the parties to arbitrate, the question of arbitrability is undeniably an issue for judicial determination.  Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citing *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)).

While some courts have found that invocation of the AAA rules can constitute such evidence, that is not the end of the inquiry.  For obvious reasons, when, as here, the arbitration clause itself contains specific exclusions, the court still has the right to determine whether those exclusions remove the dispute from the scope of the arbitration clause.  *See, e.g., Haddock v. Quinn*, 287 S.W.3d 158, 173 (Tex. App.—Ft. Worth 2009, pet. denied) (where an arbitration agreement did not generally provide for arbitration of all disputes but expressly allowed the parties to seek injunctive relief and specific performance in the courts, something other than mere incorporation of AAA rules would be needed in order to establish clear and unmistakable intent to delegate issues of arbitrability to the arbitrator); *QPro Inc. v. RTD Quality Services USA, Inc.*, 761 F. Supp. 2d 492, 498 (S.D. Tex. 2011); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d

1366, 1374-75 (Fed. Cir. 2006) (even if invoking AAA rules was evidence of intent to delegate questions of arbitrability to an arbitrator, the court still needed to determine whether there were grounds to determine that the dispute was within the scope of the agreement).

Further, the determination of whether Manufacturer Defendants other than Pelton & Crane may invoke the protections of the arbitration clause is, without a doubt, a matter for the Court, not an arbitrator to decide. *QPro Inc.*, 761 F.Supp.2d at 497 ("When, as here, the issue is whether a nonsignatory to an arbitration clause may enforce it against a signatory, the courts have viewed that as a matter for the court to decide.") (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S.  624, 632 (2009)); *Celanese Corp. v. Boc Group PLC*, CIV.A.3:06-CV-1462-P, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006) (arbitrator only has power to determine arbitrability as to the signatories to that agreement:  "although the arbitration agreement may evidence clear and unmistakable intent to arbitrate questions of arbitrability between the two parties to that agreement, this hardly evidences a clear intent between nonsignatory and [signatory] Plaintiffs to arbitrate questions of arbitrability").  Given the express exclusion from arbitration of "actions seeking injunctive relief," it is necessary and appropriate for the Court to exercise its authority to determine that this case is not within the scope of the arbitration clause.

**B.     Manufacturer Defendants cannot use equitable estoppel to force Archer Dental to arbitrate these claims.**

"Arbitration agreements apply to nonsignatories only in rare circumstances." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003); *Westmoreland v. Sadoux,* 299 F.3d 462, 465 (5th Cir. 2002) ("we will allow a nonsignatory to invoke an arbitration agreement only in rare circumstances").  The Manufacturer Defendants try to dodge this general rule by asking the Court to apply equitable estoppel, an equitable doctrine that can, "in certain limited circumstances," compel signatories to an arbitration agreement to arbitrate disputes with non-signatories. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).

10

DAL:844829.3

Under *Grigson*, nonsignatories can use equitable estoppel to invoke an arbitration agreement in only two circumstances. *Westmoreland*, 299 F.3d at 467. The first situation is when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. *Id.* The second situation occurs when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. *Id.* In both cases, "the lynchpin for equitable estoppel is equity and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.'" *Hill,* 282 F.3d at 349.

These rare and limited circumstances in which equitable estoppel can apply are not present here. While Archer Dental does presume the existence of the contractual relationship with manufacturers such as Pelton & Crane, its claims do not depend on or arise from the agreement. Rather, Archer Dental's claims arise out of a long-standing conspiracy to fix prices and not compete between Schein and Company X in which the Manufacturer Defendants joined. Nor are the claims sufficiently intertwined so as to entitle Manufacturer Defendants to equitable estoppel. Even where the grounds for equitable estoppel are present, the choice of whether to apply this equitable doctrine remain within the district court's discretion. *Westmoreland*, 299 F.3d at 528. Manufacturer Defendants should not be able to use their antitrust conspiracy as an equitable ground for avoiding litigation of this matter.

    1.    <u>The allegations in the complaint are not intertwined with the 2007 Pelton & Crane agreement.</u>

The first *Grigson* test permits a nonsignatory to enforce an agreement to compel arbitration through equitable estoppel when the signatory must rely on the terms of the agreement to bring its claim against the non-signatory. *Palmer Ventures LLC v. Deutsche Bank AG*, 254 F. App'x 426, 431 (5th Cir. 2007). This test requires more than claims that "touch

11

matters" relating to the agreement; the claims are not arbitrable unless the plaintiff must rely on the agreement to establish its cause of action. *Id.* at 431-32 (Equitable estoppel did not apply where the agreement "may play a role in the ultimate outcome of this suit, [but] is not part of [p]laintiffs' causes of action" since plaintiffs were not seeking to use the agreement to hold the non-signatory liable"). For example, where tortious interference claims presumed the existence of a lease agreement containing an arbitration clause, the claims did not rely on the agreement containing the arbitration since the claims alleged the refusal to enter into a second, separate lease. *QPro Inc.*, 761 F. Supp. 2d at 497.

Manufacturer Defendants claim that because "Plaintiff's claims … make reference to and presume the validity of the Dealer Agreement" equitable estoppel allows the nonsignatory defendants to compel arbitration. Mot. at 9. This is simply not the standard, as shown by the very cases they cite. *Palmer Ventures LLC,* 254 F. App'x at 431-32 ("even if a plaintiff's claims 'touch matters' relating to the arbitration agreement, the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action"). Even if their statement of the law was accurate, their description of the facts was not. Archer Dental's allegations arise out of the antitrust conspiracy between Schein, Company X and the Manufacturer Defendants. Archer Dental's claims against the non-signatory Manufacturer Defendants do not arise out of or depend on the existence of the 2007 Pelton & Crane agreement. They arise out of a conspiracy and the termination or reduction of Archer Dental's sales territory by each of the non-signatories. As an example, Archer Dental's claims against Manufacturer Defendant Instrumentarium do not arise out of or depend on the Pelton & Crane agreement. The claims depend on the conspiracy and the termination or reduction of Archer Dental's distribution rights to the Instrumentarium line of dental equipment. The same situation exists with respect to Archer Dental's claims against all of the non-signatory Manufacturer Defendants. As discussed in Section III.A.2 above, Archer

12

Dental had multiple contractual relationships with the Manufacturer Defendants and their predecessors, starting years before the 2007 Pelton & Crane agreement was signed. Since Manufacturer Defendants have not shown (and cannot show) that Archer Dental must rely on the terms of the agreement to bring its claims, they are not entitled to equitable estoppel to compel arbitration.

> 2.  The claims against the Manufacturer Defendants are not sufficiently intertwined with the contract to qualify for equitable estoppel under the second *Grigson* test.

Nor can the Manufacturer Defendants use the second *Grigson* method. To obtain equitable estoppel under this prong of *Grigson,* the Manufacturer Defendants must show that Archer Dental alleged substantially interdependent and concerted misconduct related to the contract by both the nonsignatory and one or more of the signatories to the contract. *See Westmoreland*, 299 F.3d at 467. The Manufacturer Defendants cannot do so, because the antitrust conspiracy between Danaher and its predecessors, Schein, and Company X has, arose completely independently from the 2007 Pelton & Crane agreement with Archer. *See* Section III.A.3. The conduct directed at Archer Dental that resulted from the conspiracy, *i.e.*, the boycott, termination and restriction of Archer Dental, were acts in furtherance of the antitrust conspiracy. It was not due to a contractual dispute between Archer Dental and Pelton & Crane. Allowing the Manufacturer Defendants to invoke the arbitration agreement because the Manufacturer Defendants used the relationship with Archer Dental as an instrument to further the antitrust conspiracy would mean that the scope of the arbitration agreement as to nonsignatories would be broader than the scope as to the signatories, which is not possible under the Federal Arbitration Act. *See, e.g., Wash. Mut.*, 364 F.3d at 264 (citing 9 U.S.C. § 2).

3.    <u>The Manufacturer Defendants cannot rely on their bad acts to create equitable estoppel.</u>

Even if the Court did find that Archer Dental alleged significantly interconnected conduct, the Court should not reward Manufacturer Defendants by applying equitable estoppel to the claims against them.  "'[T]he lynchpin for equitable estoppel is equity' and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.'" *Hill,* 282 F.3d at 349 (affirming district court's refusal to apply equitable estoppel to nonsignatory's motion to compel, even though it found allegations of interdependent and concerted misconduct).

Equitable estoppel is, as the name implies, an equitable doctrine.  Manufacturer Defendants seek to use their illegal antitrust violations – a *per se* unlawful antitrust conspiracy to violate not just the rights of Archer Dental, but to overcharge countless dental professionals – as a means of avoiding litigation through the use of equitable estoppel.  Allowing these defendants to use this conspiracy as equitable grounds for avoiding litigation would lead to an absurd and unfair result – any party engaging in a conspiracy to violate the antitrust laws could escape litigation simply by expanding the scope of the conspiracy to include a single party with an arbitration agreement with the victim.  *See In re Merrill Lynch Trust Co.  FSB*, 235 S.W.3d 185, 194-95 (Tex. 2007) ("As other contracts do not become binding on nonparties due to concerted misconduct, allowing arbitration contracts to become binding on that basis would make them easier to enforce than other contracts, contrary to the Arbitration Act's purpose.")  Such a result would be contrary to the fundamental principles of equity underlying the equitable estoppel doctrine and the Federal Arbitration Act's purpose:  "to give arbitration agreements the same force and effect as other contracts—no more and no less." *Wash. Mut.,* 364 F.3d at 264 (citing 9 U.S.C. § 2).

14

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Archer Dental requests that the Court deny Manufacturer Defendants' motion to compel arbitration.

DATED:  October 12, 2012.

Respectfully submitted,

*/s/ Jerry L.  Beane*

Jerry L. Beane
State Bar No.  01966000
jerrybeane@andrewskurth.com
Kay Lynn Brumbaugh
State Bar No.  00785152
kaylynnbrumbaugh@andrewskurth.com
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, TX  75201
214.659.4400 Telephone
214.659.4401 Facsimile

**ATTORNEYS FOR PLAINTIFF
ARCHER AND WHITE SALES, INC.**

15

# CERTIFICATE OF SERVICE

I hereby certify on this 12th day of October, 2012, that a copy of the foregoing *Plaintiff Archer and White Sales, Inc.'s Response in Opposition to Manufacturer Defendants' Motion to Compel Arbitration and Stay All Proceedings* was filed and served by operation of the electronic filing system of the U.S. District Court for the Eastern District of Texas upon all counsel of record who have consented to receive notice of filings in this matter.

Layne E. Kruse
Fulbright and Jaworski LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095

Steven R. Kuney
Jonathan B. Pitt
James H. Weingarten
Williams & Connolly, LLP
725 Twelfth Street NW
Washington, DC  20005

*Attorneys for Defendants Danaher Corporation, Instrumentarium Dental, Inc., Dental Equipment LLC, KaVo Dental Technologies, LLC and Dental Imaging Technologies Corporation*

Paul F. Schuster
Michael V. Powell
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, TX  75201-6776

Helene D. Jaffe
Alan R. Kusinitz
Proskauer Rose LLP
Eleven Times Square
New York, NY  10036-8299

*Attorneys for Defendant Henry Schein, Inc.*

  */s/ Jerry L.  Beane*
Jerry L. Beane

16

DAL:844829.3