# Exhibit 1



Jim Archer, Sr.
Archer & White Sales
1107 Summit Ave, Suite 1
Plano, TX
75074

May 15, 2009

Dear Jim:

I hope you and your company are fairing well during these challenging time.  We are optimistic that the market is showing signs of improvement.

We are excited about all of the new innovative products we have launched in the last six months, especially the Helios LED light, Renaissance Dental Cabinets and Aero Pure Vacs and Compressors.  These new innovations are being very well received in the market.

We have recently gone through a review of our dealer agreements.  During this review, we made some revisions and further clarification on various items.  In doing so, I am forwarding you **two print copies** of the new Pelton & Crane dealer agreement.  Please review and **sign both copies** then mail both copies back to my attention at the address below, by May 30th:

ATTN: Kirk Zambetti
Pelton & Crane
11727 Fruehauf Drive
Charlotte, NC 28273

We appreciate your support and look forward to being part of your success in the future.  Please call on me with any questions or support needs.

Good Selling,

Kirk Zambetti
VP of Sales, North America
Pelton & Crane, KaVo and Marus
704-587-7286 direct office

Pelton & Crane    P.O. Box 7800    Charlotte, NC 28241-7800-U.S.A    Tel.: (704) 588-2126

# DEALER AGREEMENT

This Dealer Agreement (this "Agreement") dated as of May 11, 2009, is made by and between Dental Equipment, LLC, doing business as Pelton & Crane ("Pelton & Crane") and Archer & White Sales ("Dealer").

## RECITALS

A. Pelton & Crane manufactures and sells Pelton & Crane brand dental equipment and products (the "Products").

B. Pelton & Crane wishes to sell the Products to dealers who demonstrate their ability to sell the Products in a professional manner that will preserve and enhance the valuable reputation and goodwill associated with the Products.

C. Dealer wishes to serve as a Pelton & Crane dealer authorized to sell the Products.

## AGREEMENT

The parties agree as follows:

### 1. DEALER APPOINTMENT

Pelton & Crane appoints Dealer as a nonexclusive authorized dealer for sale of the Products in the 250 miles of the branch locations including West Texas and nationally only (lower 48 states) for the sterilizer products (Delta Q-8", 10" and Magna-Clave) subject to the terms and conditions set forth herein. Dealer accepts such appointment.

### 2. DEALER OBLIGATIONS

2.1 Dealer shall use its best efforts to sell the Products and to encourage the purchase of the Products by Dealer's customers.

2.2 Dealer shall sell the Products only to: (a) licensed doctors of dental medicine; (b) accredited and/or licensed dental or medical clinics and hospitals; (c) accredited dental and medical schools; and (d) appropriate agencies of the federal, state, provincial, or local governments (collectively referred to herein as "Qualified Customers").

2.3 Dealer shall sell the Products only to Qualified Customers having their principal place of business: (a) within the 250 miles of the branch locations including West Texas and nationally only (lower 48 states) for the sterilizer products (Delta Q-8", 10" and Magna-Clave) (b) within the geographic area where Dealer's sales force makes regular face-to-face visits and Dealer's service staff performs service; and (c) within a reasonable distance of an authorized outlet showroom that displays the Products. At the time of becoming an authorized dealer in specified market, Pelton & Crane will establish a radius of business, centered at the approved facility, in which Dealer is authorized to conduct business. Said radius will be the sole discretion of Pelton & Crane and will be based on such indicators as population density, major metropolitan areas, dentist population and current Pelton & Crane territory designations.

2.4 Dealer shall not, directly or indirectly, sell the Products by mail order.

2.5 Dealer shall not sell the Products to any customer for resale. If Dealer learns of a resale by any of its customers, Dealer shall immediately notify Pelton & Crane.

2.6 Dealer must have a "brick and mortar" facility that is clearly identified as a place of business under the name of the authorized dealer and this facility must be occupied with the intent of servicing customers during normal business hours. Dealer shall employ and maintain its own full-time, experienced and knowledgeable sales staff that regularly makes face-to-face sales visits and presentations to customers and potential customers within Dealer's geographic area. Dealer shall train its sales personnel concerning the Products and their specifications, features, and benefits. Dealer shall perform such obligations only through Dealer's own employees, and not through independent contractors.

2.7 Dealer shall make time available during Dealer's sales meetings for Pelton & Crane representatives to present information regarding the Products. Dealer agrees to conduct such sales meetings at least once every six months.

2.8 Dealer must have a legitimate showroom with the space to accommodate a reasonable showing of large dental equipment as well as access to this facility during normal business hours. Dealer shall maintain at each authorized outlet a showroom for which it shall

its flooring and display programs from time to time.

2.9    Dealer shall maintain records for 7 years of each sale of the Products including the name and address of the purchaser, date of purchase, date of installation, and the model and serial numbers of the Products. Dealer shall deliver a copy of all such information to Pelton & Crane at no charge. Dealer agrees to return all records listed in this section (2.9) if Dealer dissolves and/or this Agreement is terminated. Dealer shall not remove any serial numbers.

2.10   Dealer shall provide customer service including installation, instruction of Dealer's customers in the use of Products, warranty service, Product repairs, and other post-sale service. Dealer shall document all Product repairs, Product service, and customer complaints and forward all customer complaint information to Pelton & Crane. Dealer agrees to participate in and cooperate with Pelton & Crane for any recalls of the Product.

2.11   Dealer shall employ and maintain its own full-time, experienced and knowledgeable service staff sufficiently trained to properly install and service the Products. Dealer shall adequately train their service personnel for service and installation as well as insure the individual(s) providing the training are adequately trained themselves prior to providing any such training. Upon Pelton & Crane's request, provide installation and service training records of service staff. Dealer shall not install, service, or maintain any of the Products by any person who is unqualified to perform such work.

2.12   Dealer shall purchase and maintain an inventory of spare parts sufficient to enable Dealer to promptly service the Products.

2.13   Dealer shall comply with all laws and regulations pertaining to the sale, assembly, installation and service of the Products by Dealer. Dealer shall communicate any regulatory requirements to Pelton & Crane. Dealer shall translate all Product literature in accordance with local statutory / regulatory requirements.

2.14   Dealer shall maintain sufficient product liability and other all risk liability insurance adequate to protect all risks associated with the sale, installation and service of the Products and, upon Pelton & Crane's request, provide Pelton & Crane with an insurance certificate or other evidence of insurance in form and in amounts satisfactory to Pelton & Crane.

2.15   Dealer shall take no action which will cause Pelton & Crane to be in violation of any law of any jurisdiction in the Territory or the United States, such laws including but not limited to the U.S. Foreign Corrupt Practices Act, the U.S. export control laws and the U.S. antiboycott laws. In this conjunction, Distributor agrees:

   1.)   To inform all customers that all Products are subject to the United States Export Administration Regulations. The following statement shown on invoices, packing lists, and bills of lading may be used for this purpose.

         "These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to the United States law is prohibited."

   2.)   To provide, upon request by Pelton & Crane, information required by Pelton & Crane to obtain U.S. export licenses, including but not limited to formal end-use statements (Statements by Ultimate Consignee and Purchaser).

   3.)   To comply with applicable laws of the Territory relating to the conduct of Distributor's business, including any requirements for registration or recording of this Agreement with governmental entities;

   4.)   Not to sell Products to customers listed on the current United States Department of Commerce Denied Persons List; and

   5.)   Not to supply any boycott related information concerning Pelton & Crane.

2.16   Dealer distributing Product within the European Union (EU) has the responsibility of registering the Product with a "Producer Compliance Scheme" in each country within the EU that Product is shipped to in accordance with Directive 2002/96/EC of the European Parliament and the Council of 27 January 2003 on Waste Electrical and Electronic Equipment (WEEE) and liable for all costs associated with WEEE compliance.

2.17   Dealer agrees to participate in Pelton & Crane audits when requested by Pelton & Crane.

2.18   Dealer shall not disparage the Products or Pelton & Crane. Further, Dealer shall not (i) make any warranty, representation or guarantee with respect to any Product except the limited warranty set forth by Pelton & Crane, or (ii) misrepresent or mislead, directly or indirectly, by commission or omission, the capabilities, qualities or characteristics of the Products. Dealer shall make all promotion, advertising and instructional materials for the Products consistent with the information, warnings and claims set forth on the labels for the Products.

## 3. MULTIPLE LOCATION DEALERS

If Dealer sells Products through more than one outlet, the obligations of Dealer set forth in this Agreement shall apply to each such outlet. Current authorized Dealer outlets are listed on <u>Exhibit A</u> attached hereto. Additional outlets may be authorized only by the prior written agreement of Pelton & Crane.

## 4. PELTON & CRANE OBLIGATIONS

4.1   Pelton & Crane shall offer to sell Products to Dealer in accordance with the terms of this Agreement and Pelton & Crane's Terms and Conditions of Sale.

4.2   Pelton & Crane shall furnish to Dealer reasonable quantities of price lists, sales catalogs, installation instructions and service manuals to support Dealer's efforts to sell and service the Products.

## 5. TERMS AND CONDITIONS OF SALE

All sales of Products by Pelton & Crane shall be subject to Pelton & Crane's Terms and Conditions of Sale, incorporated herein by this reference. Pelton & Crane may change its Terms and Conditions of Sale from time to time by giving notice to Dealer. Dealer shall pay for Products pursuant to the Pelton & Crane Terms and Conditions of Sale.

## 6. MINIMUM SALES GOALS

[Minimum sales goals for Dealer for the initial twelve (12)-month term of this Agreement are set forth in Exhibit B, attached hereto and incorporated herein by this reference.] [Pelton & Crane may establish minimum annual sales goals for Dealer.] Pelton & Crane may adjust the minimum sales goal for Dealer from time to time.

## 7. NONEXCLUSIVE APPOINTMENT; PELTON & CRANE SALES

7.1   Dealer's appointment is nonexclusive. Pelton & Crane reserves the right to increase or decrease the number of authorized dealers for the Products in the vicinity of Dealer's outlet or outlets without prior notice to Dealer.

7.2   Pelton & Crane reserves the right to sell the Products directly to government agencies, dental schools, clinics, hospitals, original equipment manufacturers ("OEMs"), value-added resellers ("VARs"), distributors and other "house accounts" of Pelton & Crane.

7.3   Pelton & Crane shall have the right to, with or without advance notice or cause, modify or discontinue the sale of any Product and may, at any time, refuse to sell, with or without advance notice or cause, any of the Products to the Dealer.

7.4   Pelton & Crane shall sell the Products to Dealer at such prices as determined by Pelton & Crane. All prices unless otherwise noted by Pelton & Crane are exclusive of U.S. or foreign national, federal, state and local excise, sales, use, value added and similar taxes and of all customs, duties, or other governmental impositions. Dealer is responsible for paying and/or reporting any applicable taxes unless it furnishes Pelton & Crane with a valid tax exemption certificate.

7.5   Pelton & Crane shall have the right, as frequently as it so chooses, to change any or all of the prices for the Products.

## 8. TRADEMARKS

8.1   Dealer acknowledges that Pelton & Crane owns all rights to the trademarks "Pelton & Crane™", and other logos, trademarks, service marks, trade names and design marks used by Pelton & Crane. Dealer shall not use any Pelton & Crane mark except in advertising or selling the Products and in a manner approved by Pelton & Crane. Upon termination of this Agreement, Dealer shall cease all use of Pelton & Crane's marks.

8.2   Dealer shall not contest in any manner Pelton & Crane's ownership to, or the validity of, Pelton & Crane marks, any promotional, marketing, and advertising materials in which Pelton & Crane holds copyrights, statutory or otherwise, either during the term of this Agreement or at any time thereafter.

LOG-004-F03
Rev 2 05/09

marks that are confusingly similar to the Pelton & Crane marks.

      8.4     Dealer shall notify Pelton & Crane of any infringement of Pelton & Crane marks, patents, or other intellectual property rights that come to Dealer's attention. Dealer shall also assist Pelton & Crane in defense of said Pelton & Crane marks, patents, or other intellectual property rights.

## 9. LIMITED WARRANTY AND DISCLAIMER

      9.1     Each of the Products is warranted by Pelton & Crane in accordance with Pelton & Crane's warranty applicable to such Product set forth in the Pelton & Crane Terms and Conditions of Sale, product warranty registration card, or other Pelton & Crane literature pertaining to such Product.

      9.2     EXCEPT FOR THE EXPRESS WARRANTY DESCRIBED IN SECTION 9.1 OF THIS AGREEMENT, PELTON & CRANE MAKES NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, DESIGN OR SUITABILITY WITH RESPECT TO THE PRODUCTS OR ANY OTHER GOODS, SERVICES OR OTHER MATERIALS PROVIDED BY PELTON & CRANE.

## 10. LIMITATION OF REMEDIES AND LIABILITY

      10.1     PELTON & CRANE SHALL NOT BE LIABLE TO DEALER OR ANY PERSON FOR PELTON & CRANE'S FAILURE TO ACCEPT OR FILL ANY ORDER, FOR ERRORS IN FILLING ANY ORDER, OR FOR ANY DELAY IN DELIVERY.

      10.2     PELTON & CRANE SHALL NOT BE LIABLE FOR THE COST OF SUBSTITUTE GOODS, LOSS OF PROFITS, OR FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER LEGAL THEORY, EVEN IF PELTON & CRANE WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

      10.3     The liability of Pelton & Crane for any and all claims related to or arising out of this Agreement or any Products provided by Pelton & Crane shall be limited to the amount paid by Dealer to Pelton & Crane (for the purchase of Products) during the period of twelve (12) months immediately preceding the date on which any such claim is asserted against Pelton & Crane.

## 11. TERM AND TERMINATION

      11.1     The term of this Agreement shall be effective as of the date set forth in the introductory paragraph and shall continue until terminated as described below unless terminated earlier pursuant to the provisions in this Agreement.

      11.2     Either party may terminate this Agreement immediately: (a) upon breach of this Agreement by the other party if the breach is not cured within ten (10) days after written notice of such breach is given or, (b) upon either party's insolvency, bankruptcy or suspension of business.

      11.3     Either party may terminate this Agreement for any reason or no reason by giving 60 days' prior written notice to the other party.

      11.4     Pelton & Crane has the right to immediately terminate this Agreement by giving a written notice to Dealer in the event (a) Dealer sells or transfers fifty percent (50%) or more of its voting stock to a third party or sells substantially all of its assets to a third party from the current controller, or (b) Dealer commits acts that result in commercial discredit to Pelton & Crane.

      11.5     Sections 8, 9, 10, 12.6, 12.7 and 12.8, and all other provisions of this Agreement which may reasonably be interpreted or construed as surviving the expiration, termination or cancellation of this Agreement, shall survive the expiration, termination or cancellation of this Agreement.

## 12. GENERAL PROVISIONS

      12.1     <u>Financial Statement</u>. Dealer will from time to time, upon request by Pelton & Crane, furnish financial statements and information relating to its financial condition, including its current net worth.

      12.2     <u>Nonassignment</u>. Dealer will not, directly or indirectly (through a transfer of ownership of Dealer or otherwise) assign, transfer, or sell its rights under this Agreement, or delegate its duties hereunder, without prior written consent of Pelton & Crane.

12.3 Independent Dealer. Dealer is an independent business and has no authority (nor will Dealer represent that Dealer has any authority) to bind Pelton & Crane or to assume or to create any obligation, express or implied, on behalf of Pelton & Crane. Nothing in this Agreement shall be construed as constituting Dealer and Pelton & Crane as partners, or as creating relationships of employer and employee or principal and agent between the parties.

12.4 Modification. This Agreement (together with the Pelton & Crane Terms and Conditions of Sale) contains the entire agreement between the parties. Unless otherwise provided in this Agreement, no modification of this Agreement shall be binding upon the parties unless made in writing and signed by both parties.

12.5 Waiver. Pelton & Crane may waive any obligation Dealer has under this Agreement, but such a waiver shall not be effective unless made in writing.

12.6 Indemnification. Dealer will indemnify and hold Pelton & Crane, its officers, directors, agents, employees, and affiliates harmless from any claims, demands, loss, damage, liability, or expense, including attorneys' fees and expenses, arising out of the acts or omissions of Dealer, its agents or employees.

12.7 Attorneys' Fees. In the event any suit or action is brought to enforce or interpret any terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and expenses incurred by it in connection therewith.

12.8 Disputes. This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets or other intellectual property of Pelton & Crane) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association. The place of arbitration shall be in Charlotte, North Carolina.

12.9 Notices. Notices shall be deemed given if delivered personally or sent by first-class mail, postage prepaid, addressed to the other party at the address set forth in this Agreement or at such other address as designated by the party by written notice.

12.10 Survival. Any debts, obligations or liabilities accrued hereunder between the parties hereto, and any obligations listed hereunder between the parties hereto related to confidential information, indemnification, and compliance with laws, shall survive the expiration or termination of this Agreement regardless of the reason and manner of termination. No termination of this Agreement shall operate to discharge or relieve any party of any obligation vested pursuant to this Agreement prior to the effective date of such termination, or terminate the effectiveness of any obligations and provisions, which are intended by the parties to survive the termination of this Agreement.

12.11 Force Majeure. Pelton & Crane shall not be liable for delay in any performance or for failure to render any performance, and any such delay or failure shall for all purposes be excused, when such delay or failure is caused by governmental regulation, fire, flood, wind, strike, labor disputes, accident, embargo, riot, act of God, or any other cause or causes, whether of like or different nature, beyond the reasonable control of Pelton & Crane.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

Dental Equipment LLC, doing business as
Pelton & Crane

By: _____
Title: President

Address: 11727 Fruehauf Drive
Charlotte, NC 28273

Archer & White Sales

By: Jim Archer
Title: owner

Address: 1107 Summit Ave Suite 1
Plano, TX 75074

LOG-004-F03
Rev 2 05/09

EXHIBIT A

TO

DEALER AGREEMENT

FOR

_____

Addresses of Authorized Dealer Outlets

1107 Summit Ave  Suite 1

Plano, TX 75074

LOG-004-F03
Rev 2 05/09

EXHIBIT B

TO

DEALER AGREEMENT

FOR

_____

Minimum Annual Sales Goal

LOG-004-F03
Rev 2 05/09