# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ARCHER AND WHITE SALES, INC., § § Plaintiff, § § v. § § HENRY SCHEIN, INC., DANAHER § CORPORATION, INSTRUMENTARIUM § DENTAL INC., DENTAL EQUIPMENT § LLC, KAVO DENTAL TECHNOLOGIES, § LLC AND DENTAL IMAGING § TECHNOLOGIES CORPORATION, § § Defendants. § | CIVIL ACTION NO.: 2:12-CV-00572-JRG-RSP |

## PLAINTIFF ARCHER AND WHITE SALES, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT HENRY SCHEIN, INC.'S MOTION TO COMPEL PLAINTIFF TO ARBITRATE AND TO STAY ALL PROCEEDINGS

Jerry L. Beane
State Bar No.  01966000
jerrybeane@andrewskurth.com
Kay Lynn Brumbaugh
State Bar No.  00785152
kaylynnbrumbaugh@andrewskurth.com
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, TX  75201
214.659.4400 Telephone
214.659.4401 Facsimile

**ATTORNEYS FOR PLAINTIFF ARCHER AND WHITE SALES, INC.**

DAL:845429.3

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      INTRODUCTION ..............................................................................................................1

II.     BACKGROUND ................................................................................................................2

III.    ARGUMENT AND AUTHORITIES .................................................................................5

        A.    Because the arbitration agreement in the 2007 Pelton & Crane agreement is
              limited in scope and is not retroactive, it does not cover this dispute, even as
              to signatories to the agreement. ..............................................................................5

              1.    The arbitration agreement expressly excludes actions involving
                    injunctive relief, such as this one. ................................................................6

              2.    The antitrust claims are outside the scope of the arbitration agreement,
                    because those claims do not have a significant relationship to the 2007
                    contract between Archer Dental and Pelton & Crane. .................................6

              3.    The arbitration agreement does not cover disputes with Schein. .................7

              4.    The arbitration agreement does not apply retroactively. .............................8

              5.    This Court must make the determination of arbitrability of this dispute. ....8

        B.    Schein cannot use equitable estoppel to force Archer Dental to arbitrate these
              claims. ......................................................................................................................9

              1.    The allegations in the complaint are not intertwined with the 2007
                    Pelton & Crane agreement. .........................................................................10

              2.    The claims against the Schein are not sufficiently intertwined with
                    the contract to qualify for equitable estoppel under the second
                    *Grigson* test. ................................................................................................11

              3.    An agency relationship is not sufficient to entitle a co-conspirator to
                    benefit from a conspirator's arbitration agreement. ....................................12

              4.    Schein cannot rely on its bad acts to create equitable estoppel. .................13

IV.     CONCLUSION .................................................................................................................14

DAL:845429.3

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Bankers Ins. Group v. Long*,
 453 F.3d 623 (4th Cir. 2006) ..................................................................................................10, 11

*Am. Heritage Life Ins. Co. v. Lang*,
 321 F.3d 533 (5th Cir. 1996) ..........................................................................................................5

*AT&T Technologies, Inc. v. Communications Workers of Am.*,
 475 U.S. 643 (1986).................................................................................................................1, 5

*Arthur Andersen LLP v. Carlisle*,
 556 U.S. 624 (2009).......................................................................................................................8

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
 345 F.3d 347 (5th Cir. 2003) ..........................................................................................................9

*Cardiology Assocs. P.A. v. Mallick*,
 978 S.W.2d 209 (Tex. App.—Texarkana 1998, pet denied) ........................................................6

*Celanese Corp. v. Boc Group PLC*,
 CIV.A.3:06-CV-1462-P, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006)....................................8

*Grigson v. Creative Artists Agency L.L.C.*,
 210 F.3d 524 (5th Cir. 2000) ...........................................................................................9, 10, 11

*Hadnot v. Bay, Ltd.*,
 344 F.3d 474 (5th Cir. 2003) ..........................................................................................................6

*Hill v. G E Power Sys., Inc.*,
 282 F.3d 343 (5th Cir. 2002) ..............................................................................................2, 9, 13

*In re Merrill Lynch Trust Co. FSB*,
 235 S.W.3d 185 (Tex. 2007)........................................................................................................13

*Jones v. Halliburton Co.*,
 583 F.3d 228 (5th Cir. 2008) ..........................................................................................................6

*Kristian v. Comcast Corp.*,
 446 F.3d 25 (1st Cir. 2006)...........................................................................................................8

*Palmer Ventures LLC v. Deutsche Bank AG*,
 254 F.App'x 426 (5th Cir. 2007) ................................................................................................10

*Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*,
 297 F.3d 388 (5th Cir. 2002) ..........................................................................................................7

*QPro Inc. v. RTD Quality Services USA, Inc.*,
   761 F.Supp.2d 492 (S.D. Tex. 2011) ..................................................................................8, 10

*Security Watch, Inc. v. Sentinel Systems, Inc.*,
   176 F.3d 369 (6th Cir. 1999) ....................................................................................................8

*State v. Abernethy*,
   17 S.E.2d 25 (N.C. 1941)........................................................................................................12

*State v. Conner*,
   103 S.E. 79 (N.C. 1920)..........................................................................................................12

*Wash. Mut. Fin. Group, L.L.C. v. Bailey*,
   364 F.3d 260 (5th Cir. 2004) ...................................................................................5, 6, 12, 13

*Westmoreland v. Sadoux*,
   299 F.3d 462 (5th Cir. 2002) ...........................................................................1, 2, 8, 9, 10, 12, 13

*Will-Drill Res., Inc. v. Samson Res. Co.*,
   352 F.3d 211 (5th Cir. 2003) ................................................................................................5, 6

**STATUTES**

9 U.S.C. § 2................................................................................................................................12, 13

15 U.S.C. § 26....................................................................................................................................6

TEX. BUS. & COMM. CODE, § 15.21(b) ...............................................................................................6

**OTHER AUTHORITIES**

ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS at 798-802
   (7th ed. 2012) ...........................................................................................................................6

Plaintiff Archer and White Sales, Inc. ("Archer Dental") files this opposition to the motion to compel arbitration and stay filed by Defendant Henry Schein, Inc. ("Schein"). The motion to compel arbitration and stay should be denied for the reasons explained below.

## I.   INTRODUCTION

Archer Dental has filed this action for injunctive relief and damages for violations of both federal and state antitrust laws that were caused by a price-fixing conspiracy and group boycott among various manufacturers and distributors of dental equipment. Schein is a distributor of dental equipment and a horizontal competitor of Archer Dental. Schein was the ringleader of the antitrust conspiracy. Based solely on a limited arbitration agreement in an expired 2007 distribution agreement between Archer Dental and the predecessor of only one of the defendant manufacturers (Dental Equipment, LLC, d/b/a Pelton & Crane), Schein seeks to compel this entire dispute to arbitration, despite the facts that (1) neither Schein nor any of the defendant manufacturers besides Pelton & Crane was party to the agreement; (2) the arbitration agreement specifically excludes "**actions** seeking injunctive relief" (emphasis added) such as this one; and (3) the antitrust conspiracy claims are outside the scope of the arbitration agreement. Since arbitration is a matter of contract, Archer Dental cannot be forced to arbitrate any dispute that it did not agree to arbitrate. *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). The plain language of the contract shows that Archer Dental did not agree to arbitrate this dispute, even with the party that signed the agreement, much less a stranger to the agreement such as Schein.

Schein attempts to use the *per se* unlawful conspiracy alleged against it as the basis for invoking the Pelton & Crane arbitration clause under either an agency or an equitable estoppel theory. But Schein does not qualify under the "rare" and "limited" circumstances in which equitable estoppel can enable a nonsignatory to compel arbitration. *See Westmoreland v.*

1

*Sadoux,* 299 F.3d 462, 465 (5th Cir. 2002). Perhaps even more importantly, Schein's equitable estoppel arguments ignore the fundamental principle that "'the lynchpin for equitable estoppel is equity' and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.'" *Hill v. G E Power Sys., Inc*., 282 F.3d 343, 349 (5th Cir. 2002). Similarly, even if Schein was an agent of the other participants in the conspiracy, that would not entitle Schein to arbitrate this action. *Westmoreland,* 299 F.3d at 465. Allowing Schein to benefit from its own bad acts by sheltering under another party's arbitration agreement would be a completely inequitable result.

## II. BACKGROUND

Archer Dental is a family-owned distributer of dental equipment located in Plano, Texas. Archer Dental has been in business since 1983. Archer Dental developed a national reputation for its low prices and high quality service. Compl. ¶¶ 19-20, 22. Because it is a low-price alternative in the dental equipment industry, Archer Dental has been victimized by a long-running conspiracy between Schein and other horizontal competitors to fix prices and refuse to compete with each other in the sales of dental equipment and who maintained that conspiracy by their further agreement with the defendant manufacturers to terminate and/or reduce Archer Dental's distribution territory. Compl. ¶¶ 1, 19-54. Archer Dental has sued a number of the co-conspirators, including the defendant manufacturers (Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation, (collectively "Manufacturer Defendants")) and Archer Dental's competitor, Schein, a distributor of dental equipment, including equipment of the Manufacturer Defendants. The Complaint includes claims for both injunctive relief and damages. Compl. ¶¶ 59-61, 66-68.

The antitrust conspiracy began with the unlawful price-fixing and non-compete agreement between Schein and Company X. *See*, *e.g.*, Compl. ¶¶ 36-45. As detailed in the Complaint, Schein employee Mark Lowery stated that Schein will not compete with Company X for customers: if a customer is talking to Schein and the customer calls Company X to check the price, Company X "step[s] out of it . . . [he's] not going to bid it." Compl. ¶ 40. Similarly, Schein "refuses to talk about price" if it receives a price request from one of Company's X's current or potential customers. As Schein manager Lowery put it: "[T]he doctor gets it for the same price no matter who they buy it from." It is these allegations of a conspiracy to fix prices and refuse to compete among horizontal competitors Schein and Company X, that are the heart of Archer Dental's antitrust claims. The Manufacturer Defendants later joined in that conspiracy, in response to threats made by Schein and Company X. Compl. ¶¶ 31-33.

Prior to 2004, there were a number of dental equipment manufacturers in the United States, and Archer Dental had distribution relationships with many of them, including Gendex, Kavo, Pelton & Crane, Marus, Kerr, and DCI. Compl. ¶ 21. Beginning in 2004, Danaher began consolidating the industry by acquiring many of the previously independent dental equipment manufacturers: Kavo and Gendex in 2004; Pelton & Crane, Marus, and DCI in 2005; and PaloDEx Group (maker of Instrumentarium) in 2009. *Id.* Though all of the Manufacturer Defendants were participants in this conspiracy, it was Archer Dental's rival distributor, Schein, who spearheaded the conspiracy to fix prices and exclude Archer Dental from the dental equipment business. *Id.* at ¶¶ 26, 28-34.

Schein, like the Manufacturer Defendants, seeks to rely on the arbitration provision in a single, superseded contract between Archer Dental and Pelton & Crane, a company that Defendants claim is a predecessor of Defendant Dental Equipment, LLC, with an effective date of October 4, 2007. The provision reads as follows:

3

> Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets or other intellectual property of Pelton & Crane) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association. The place of arbitration shall be in Charlotte, North Carolina.

*See* Mot. at 2 n.2. This provision contains an express limitation – the exclusion of "actions seeking injunctive relief" – but it is also noticeable for what it does not contain. It does not exclude just injunction "claims" from arbitration. Rather it excludes the entire lawsuit, *i.e.*, "actions" which seek injunctive relief. The contract is between only Pelton & Crane and Archer Dental; it makes no reference to any agents of either party. The manufacturer-distributer relationship between Pelton & Crane and Archer Dental was not created by this agreement, but predates this agreement by many years. Compl. ¶ 21.

Most importantly, the antitrust conspiracy that is at the heart of this lawsuit is unrelated to the 2007 Pelton & Crane agreement. The antitrust conspiracy began with the unlawful agreement between Schein and Company X, and the Manufacturer Defendants subsequently joined in that conspiracy. The terminations and restrictions subsequently placed on Archer Dental by the Manufacturer Defendants – including Manufacturer Defendant Instrumentarium with whom Manufacturer Defendants tacitly admit there was <u>no</u> arbitration agreement[1] – were acts in furtherance of the conspiracy between Schein, Company X and the Manufacturer Defendants. The antitrust conspiracy did not arise out of or relate to the superseded 2007 Pelton & Crane Agreement with Archer Dental; it arose out of an unlawful antitrust conspiracy among the Defendants that was independent of and unrelated to the 2007 Pelton & Crane Agreement with Archer Dental.

---

[1] *See* Manufacturer Defs.' Mot. at 11 (stating that the allegation of misconduct against Instrumentarium "changes nothing").

4

## III.     ARGUMENT AND AUTHORITIES

**A.     Because the arbitration agreement in the 2007 Pelton & Crane agreement is limited in scope and is not retroactive, it does not cover this dispute, even as to signatories to the agreement.[2]**

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any suit it has not agreed to arbitrate. *AT&T Technologies, Inc.*, 475 U.S. at 648. "Although there is a strong federal policy favoring arbitration, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). Courts, therefore, perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. *Id.* at 214. First, the court must determine whether the parties agreed to arbitrate the dispute. *Id.* If the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable.

In the first step, "the court must determine whether the parties agreed to arbitrate the dispute" by applying "the contract law of the particular state that governs the agreement."[3] *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 263-64 (5th Cir. 2004). "This determination involves two considerations:  (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 1996). Only after the court has made these determinations does the presumption favoring arbitration arise, shifting the burden to the party seeking to avoid arbitration in the second step of the

---

[2] Schein has stated that it is joining Manufacturer Defendants' Motion to Compel Arbitration.  Mot. at 1.  Archer Dental's arguments and authorities in support of its opposition to the motions to compel are set out in further detail in the opposition to the Manufacturer Defendants' Motion to Compel Arbitration.  Archer Dental hereby incorporates those arguments by reference.

[3] Schein claims that the Court should apply the law of North Carolina to its motion, based solely on the forum selection clause in the 2007 Pelton & Crane agreement to which Schein is a complete stranger.  *See* Mot. at 4.  Archer Dental does not concede that North Carolina law applies to Schein's motion.

5

analysis. *Will-Drill Res., Inc.*, 352 F.3d at 214; *Cardiology Assocs. P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex. App.—Texarkana 1998, pet denied).

1. <u>The arbitration agreement expressly excludes actions involving injunctive relief, such as this one.</u>

The action before this Court is expressly excluded by the plain language of the arbitration provision. As part of the first step of the analysis, the Court must determine whether the dispute in question falls within the scope of a valid arbitration agreement. *Wash. Mut.*, 364 F.3d at 263-64. This analysis must always begin with contract interpretation. *Hadnot v. Bay, Ltd.,* 344 F.3d 474, 476 (5th Cir. 2003). A plain reading of the contract shows that the parties did not intend to subject actions involving claims seeking injunctive relief to binding arbitration, as the arbitration agreement expressly <u>excludes</u> "actions seeking injunctive relief." *See* Mot. at 2 n.2. This action falls squarely within this exclusion. Archer Dental has asserted claims under Section 16 of the Clayton Act, 15 U.S.C. § 26, which provides for injunctive relief against threatened loss or injury by a violation of the antitrust laws.[4] Compl. ¶¶ 5, 61. Therefore, this dispute is plainly "an action seeking injunctive relief" and therefore expressly excluded from the arbitration provision. To compel arbitration of this action would impermissibly create for plaintiff and Pelton & Crane a contract different from the one into which they entered.[5]

2. <u>The antitrust claims are outside the scope of the arbitration agreement, because those claims do not have a significant relationship to the 2007 contract between Archer Dental and Pelton & Crane.</u>

While the language in the arbitration agreement may be broad, that is not the end of the scope of inquiry. *See Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2008) ("even broad

---

[4] The request for injunctive relief is no mere boilerplate claim. It is a substantive claim that can be brought under the antitrust laws whether or not a claim for antitrust damages is also alleged. *See* ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS at 798-802 (7th ed. 2012). The Texas Free Enterprise and Antitrust Act also provides for suits seeking injunctive relief. TEX. BUS. & COMM. CODE, § 15.21(b). Compl. ¶ 68.

[5] The fact that Archer Dental also seeks damages in addition to injunctive relief for these claims is irrelevant, since the plain language of the arbitration agreement exempts "<u>actions</u> seeking injunctive relief" (emphasis added) rather than just requests for injunctive relief. *See* Mot. at 2 n.2.

6

clauses have their limits"). As the Fifth Circuit has held, "Where, as here, an arbitration provision purports to cover all disputes 'related to' or 'connected with' the agreement, we have held that the provision is not limited to claims that literally 'arise under the contract,' but rather embrace[s] all disputes between the parties having a <u>significant relationship to the contract</u> regardless of the label attached to the dispute." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) (emphasis added).

The antitrust conspiracy did not arise out of or relate to the superseded 2007 Pelton & Crane Agreement with Archer Dental; it arose out of unlawful conduct by Defendants that had absolutely nothing to do with the 2007 Pelton & Crane Agreement. The antitrust conspiracy began with the unlawful price-fixing and non-compete agreement between Schein and Company X. *See, e.g.*, Compl. ¶¶ 36-45. The Manufacturer Defendants later joined in that conspiracy, in response to threats made by Schein and Company X. Compl. ¶¶ 31-33. The terminations and restrictions subsequently placed on Schein's price-cutting competitor Archer Dental by the Manufacturer Defendants were acts in furtherance of the conspiracy among Schein, Company X and the Manufacturer Defendants. Plainly, the antitrust claims against the Schein do not have the type of relationship to the 2007 Pelton & Crane contract – a contract to which Schein is a complete stranger – required to invoke the arbitration provision.[6]

   3.  <u>The arbitration agreement does not cover disputes with Schein</u>.

Even if the scope of the arbitration provision was considered broad enough to cover Archer Dental's dispute with Pelton & Crane, Schein not entitled to any presumption that the clause covers the dispute between Schein and Archer Dental. The Fifth Circuit has stated: "[W]e will read the reach of an arbitration agreement between parties broadly, but that is a

---

[6] Although Schein points to Archer Dental's references in the complaint to the dealer agreements between Archer Dental and Danaher or its predecessors (Mot. at 8), the 2007 Pelton & Crane agreement is not an agreement with Schein, Danaher or any other of its predecessors. As alleged in the Complaint, Archer Dental had separate agreements with each manufacturer of dental equipment for which it acted as a distributor. *See* Compl. ¶¶ 21, 23.

7

different matter from the question of who may invoke its protections." *Westmoreland,* 299 F.3d at 465. There is no evidence in the agreement that the parties intended to allow anyone other than the parties to invoke the agreement.

    4.    <u>The arbitration agreement does not apply retroactively</u>.

Further, the agreement in the contract with Pelton & Crane has an effective date of October 4, 2007, which may very well be after the conspiracy began.[7] Identical language in arbitration agreements referring to disputes arising under or related to "this Agreement" has consistently been held not to apply retroactively. *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) (no retroactivity in an arbitration clause that read "[t]he parties shall follow these dispute resolution processes in connection with all disputes, controversies or claims ... arising out of or relating to the Products furnished pursuant to this Agreement or acts or omissions of [parties] under this Agreement."); *see also Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir. 2006). The relationship between Pelton & Crane and Archer Dental predates this agreement by many years. Compl. ¶ 21.

    5.    <u>This Court must make the determination of arbitrability of this dispute</u>.

The determination of whether Schein may invoke the protections of the arbitration clause is, without a doubt, a matter for the Court, not an arbitrator to decide. *QPro Inc. v. RTD Quality Services USA, Inc.*, 761 F.Supp.2d 492, 497 (S.D. Tex. 2011) ("When, as here, the issue is whether a nonsignatory to an arbitration clause may enforce it against a signatory, the courts have viewed that as a matter for the court to decide.") (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)); *Celanese Corp. v. Boc Group PLC*, CIV.A.3:06-CV-1462-P, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006) (arbitrator only has power to determine arbitrability as to the signatories to that agreement: "although the arbitration agreement may evidence clear and

---

[7] Defendants concealed their unlawful conduct. Compl. ¶ 53-54.

8

unmistakable intent to arbitrate questions of arbitrability between the two parties to that agreement, this hardly evidences a clear intent between nonsignatory and [signatory] Plaintiffs to arbitrate questions of arbitrability").

**B.	Schein cannot use equitable estoppel to force Archer Dental to arbitrate these claims.**

"Arbitration agreements apply to nonsignatories only in rare circumstances." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003); *Westmoreland,* 299 F.3d at 465 ("we will allow a nonsignatory to invoke an arbitration agreement only in rare circumstances"). Schein tries to dodge this general rule by asking the Court to apply equitable estoppel, an equitable doctrine that can, "in certain limited circumstances," compel signatories to an arbitration agreement to arbitrate disputes with non-signatories. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).

Under *Grigson*, nonsignatories can use equitable estoppel to invoke an arbitration agreement in only two circumstances. *Westmoreland*, 299 F.3d at 467. The first situation is when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. *Id.* The second situation occurs when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. *Id.* In both cases, "the lynchpin for equitable estoppel is equity and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.'" *Hill,* 282 F.3d at 349.

These rare and limited circumstances in which equitable estoppel can apply are not present here. While Archer Dental does presume the existence of the dealer relationship with manufacturers such as Pelton & Crane, its claims in no way depend on or arise from a dealer agreement. Rather, Archer Dental's claims arise out of a long-standing conspiracy to fix prices

9

and not compete between Schein and Company X in which the Manufacturer Defendants later joined. Nor are the claims sufficiently intertwined so as to entitle Schein to equitable estoppel. Even where the grounds for equitable estoppel are present, the choice of whether to apply this equitable doctrine remain within the district court's discretion. *Westmoreland*, 299 F.3d at 528. Schein should not be able to use its antitrust conspiracy as an equitable ground for avoiding litigation of this matter.

    1.    <u>The allegations in the complaint are not intertwined with the 2007 Pelton & Crane agreement</u>.

The first *Grigson* test permits a nonsignatory to enforce an agreement to compel arbitration through equitable estoppel when the signatory must rely on the terms of the agreement to bring its claim against the non-signatory. *Palmer Ventures LLC v. Deutsche Bank AG*, 254 F.App'x 426, 431 (5th Cir. 2007). This test requires more than claims that "touch matters" relating to the agreement, assume the validity of the agreement, or make reference to the agreement; the claims are not arbitrable unless the plaintiff must rely on the agreement to establish its cause of action. *Id.* at 431-32 (Equitable estoppel did not apply where the agreement "may play a role in the ultimate outcome of this suit, [but] is not part of [p]laintiffs' causes of action" since plaintiffs were not seeking to use the agreement to hold the non-signatory liable"). For example, where tortious interference claims presumed the existence of a lease agreement containing an arbitration clause, the claims did not rely on the agreement containing the arbitration since the claims alleged the refusal to enter into a second, separate lease. *QPro Inc.*, 761 F.Supp.2d at 497.

Schein's reliance on *Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 629 (4th Cir. 2006) is misplaced. In *Long*, plaintiffs alleged claims against ABIG arising out of its participation in a fraudulent promissory note scheme. The promissory note purchased by plaintiff from Thaxton Life Partners ("TLP") incorporated a subscription agreement which contained an arbitration

10

class. ABIG was not a signatory to the subscription agreement, but ABIG had underwritten the life insurance policies sold by TLP to the public. *Id.* at 625. The *Long* court observed that equitable estoppel applied to compel arbitration of the claims against non-signatory ABIG where the "complaint [is] based on the [nonsignatory's] alleged breach of the obligations and duties assigned to it in the agreement." *Id.* at 628. Put another way, the court explained that the plaintiffs' claims were "dependent upon their allegation that ABIG [*i.e.*, the non-signatory] breached a duty created 'solely by [the Note].'" *Id.* at 630.

Archer Dental's claims against Schein, by contrast, are not based on Schein's breach of any obligations and duties assigned to it in a dealer agreement between Pelton & Crane and Archer Dental. If the 2007 Pelton & Crane Agreement had never been signed, Archer Dental would still have basis for its antitrust claims against Schein for its conspiracy with Company X to fix prices and suppress competition.

Archer Dental's allegations arise out of the antitrust conspiracy between Schein, Company X, which was later joined by the Manufacturer Defendants. Archer Dental's claims against Schein do not arise out of or depend on the existence of the 2007 Pelton & Crane agreement. They arise out of a conspiracy between Schein and Company X to fix prices and refuse to compete in the dental equipment distribution market. Since Schein has not shown (and cannot show) that Archer Dental must rely on the terms of an agreement to which Schein is a stranger in order for Archer Dental to bring its claims against Schein, Schein is not entitled to equitable estoppel to compel arbitration.

    2.    <u>The claims against the Schein are not sufficiently intertwined with the contract to qualify for equitable estoppel under the second *Grigson* test</u>.

Nor can Schein use the second *Grigson* method. To obtain equitable estoppel under this prong of *Grigson,* Schein must show that Archer Dental alleged substantially interdependent and concerted misconduct <u>related to the contract</u> by both the nonsignatory and one or more of the

11

signatories to the contract. *See Westmoreland*, 299 F.3d at 467. Schein cannot do so, because the antitrust conspiracy between Schein and Company X arose completely independently from the 2007 Pelton & Crane agreement with Archer. The conduct directed at Archer Dental that resulted from the conspiracy, *i.e.*, the boycott, termination and restriction of Archer Dental, were acts in furtherance of the antitrust conspiracy. It was not due to a contractual dispute between Archer Dental and Pelton & Crane. Allowing Schein to invoke the arbitration agreement because Schein used the Manufacturer Defendants' relationship with Archer Dental as an instrument to further the antitrust conspiracy would mean that the scope of the arbitration agreement as to nonsignatories would be broader than the scope as to the signatories, which is not possible under the Federal Arbitration Act. *See, e.g. Wash. Mut.,* 364 F.3d at 264 (citing 9 U.S.C. § 2).

       3.    <u>An agency relationship is not sufficient to entitle a co-conspirator to benefit from a conspirator's arbitration agreement</u>.

Schein has made the bizarre argument that because it engaged in a conspiracy with the Manufacturer Defendants, it is an agent of the Manufacturer Defendants and, therefore, entitled to benefit as an agent under any of the Manufacturer Defendant's contracts with any party. Mot. at 9. Schein does not point to any cases showing that a co-conspirator can benefit from its conspiracy by being deemed an agent, as opposed to situations where the agency relationship is imputed under the rules of evidence against a co-conspirator for the purpose of determining the admissibility of testimony.[8] *Id.* Regardless, under both 5th and 4th Circuit law, status as an agent <u>alone</u> is not enough to allow an agent to invoke the principal's arbitration clause. "[A] nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories."

---

[8] Both of the cases Schein cites in support of this argument, *State v. Abernethy*, 17 S.E.2d 25, 27-28 (N.C. 1941) and *State v. Conner*, 103 S.E. 79, 81 (N.C. 1920), involve the use of a quasi-agency theory under the rules of evidence to admit the statements of one co-conspirator against another.

12

*Westmoreland,* 299 F.3d at 466 (noting that the 4th Circuit, like the 1st and 9th Circuit, apply equitable estoppel analysis to determine if the agent has the right to enforce the agreement).

    4.    <u>Schein cannot rely on its bad acts to create equitable estoppel</u>.

Even if the Court did find that Archer Dental alleged significantly interconnected conduct, the Court should not reward Schein by applying equitable estoppel to the claims against them. "'[T]he lynchpin for equitable estoppel is equity' and the point of applying it to compel arbitration is to prevent a situation that 'would fly in the face of fairness.'" *Hill,* 282 F.3d at 349 (affirming district court's refusal to apply equitable estoppel to nonsignatory's motion to compel, even though it found allegations of interdependent and concerted misconduct).

Equitable estoppel is, as the name implies, an equitable doctrine. Schein seeks to use its illegal antitrust violations – a *per se* unlawful antitrust conspiracy to violate not just the rights of Archer Dental, but to overcharge countless dental professionals – as a means of avoiding litigation through the use of equitable estoppel. Allowing Schein to use this conspiracy as equitable grounds for avoiding litigation would lead to an absurd and unfair result – any party engaging in a conspiracy to violate the antitrust laws could escape litigation simply by expanding the scope of the conspiracy to include a single party with an arbitration agreement with the victim. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 194-95 (Tex. 2007) ("As other contracts do not become binding on nonparties due to concerted misconduct, allowing arbitration contracts to become binding on that basis would make them easier to enforce than other contracts, contrary to the Arbitration Act's purpose.") Such a result would be contrary to the fundamental principles of equity underlying the equitable estoppel doctrine and the Federal Arbitration Act's purpose: "to give arbitration agreements the same force and effect as other contracts—no more and no less." *Wash. Mut.*, 364 F.3d at 264 (citing 9 U.S.C. § 2).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Archer Dental requests that the Court deny Schein's motion to compel arbitration.

DATED: October 16, 2012.

> Respectfully submitted,
>
>    */s/ Jerry L. Beane*
> Jerry L. Beane
> State Bar No. 01966000
> jerrybeane@andrewskurth.com
> Kay Lynn Brumbaugh
> State Bar No. 00785152
> kaylynnbrumbaugh@andrewskurth.com
> ANDREWS KURTH LLP
> 1717 Main Street, Suite 3700
> Dallas, TX 75201
> 214.659.4400 Telephone
> 214.659.4401 Facsimile
>
> **ATTORNEYS FOR PLAINTIFF**
> **ARCHER AND WHITE SALES, INC.**

**CERTIFICATE OF SERVICE**

     I hereby certify on this 16th day of October, 2012, that a copy of the foregoing *Plaintiff Archer and White Sales, Inc.'s Response in Opposition to Defendant Henry Schein, Inc.'s Motion to Compel Plaintiff to Arbitrate and to Stay All Proceedings* was filed and served by operation of the electronic filing system of the U.S. District Court for the Eastern District of Texas upon all counsel of record who have consented to receive notice of filings in this matter.

Layne E. Kruse
Fulbright and Jaworski LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095

Steven R. Kuney
Jonathan B. Pitt
James H. Weingarten
Williams & Connolly, LLP
725 Twelfth Street NW
Washington, DC  20005

*Attorneys for Defendants Danaher Corporation, Instrumentarium Dental, Inc., Dental Equipment LLC, KaVo Dental Technologies, LLC and Dental Imaging Technologies Corporation*

Paul F. Schuster
Michael V. Powell
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, TX  75201-6776

Helene D. Jaffe
Alan R. Kusinitz
Proskauer Rose LLP
Eleven Times Square
New York, NY  10036-8299

*Attorneys for Defendant Henry Schein, Inc.*

          */s/ Jerry L. Beane*
          Jerry L. Beane

DAL:845429.3