IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ARCHER AND WHITE SALES, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO.: |
| § | 2:12-cv-00572-JRG-RSP |
| HENRY SCHEIN, INC., DANAHER § | |
| CORPORATION, INSTRUMENTARIUM § | |
| DENTAL INC., DENTAL EQUIPMENT § | |
| LLC, KAVO DENTAL TECHNOLOGIES, § | |
| LLC AND DENTAL IMAGING § | |
| TECHNOLOGIES CORPORATION, § | |
| § | |
| Defendants. § | |

**DEFENDANT HENRY SCHEIN, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL PLAINTIFF TO ARBITRATE AND TO STAY PROCEEDINGS**

Paul Schuster
State Bar No. 00784931
Michael V. Powell
State Bar No. 16204400
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Tel: (214) 740-8000
Fax: (713) 740-8800
mpowell@lockelord.com
pschuster@lockelord.com

Helene D. Jaffe
Alan R. Kusinitz
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
hjaffe@proskauer.com
akusinitz@proskauer.com

*Counsel for Defendant Henry Schein, Inc.*

# **TABLE OF CONTENTS**

                                                                                                                                    Page

INTRODUCTION ..................................................................................................................1

ARGUMENT AND AUTHORITIES..................................................................................2

I.      Plaintiff Concedes the Applicability of Equitable Estoppel Where, As Here, Plaintiff's Claims Rely On the Dealer Agreement and Plaintiff Alleges Concerted and Interdependent Misconduct Between Schein and the Manufacturer Defendants, the Signatory to the Dealer Agreement ..............................................2

        A.      Plaintiff's Termination Claim "Relies On" the Dealer Agreement .............3

        B.      Plaintiff Alleges Interdependent and Concerted Misconduct ......................5

        C.      Plaintiff's Argument That It Would Be Unfair For an Alleged Conspirator to Take Advantage of Equitable Estoppel Misstates the Law ...............................................................................................................6

        D.      North Carolina Law Allows Agents of Signatories to Compel Arbitration....................................................................................................6

II.     Plaintiff's Claim Falls Squarely Within the Scope of the Arbitration Clause .........7

CONCLUSION...................................................................................................................9

**TABLE OF AUTHORITIES**

Federal Cases                                                                                          Page

*Am. Bankers. Ins. Grp. v. Long*, 453 F.3d 623 (4th Cir. 2006) ........................................2, 5

*Arthur Andersen LLP v. Carlisle,* 556 U.S. 624 (2009) .......................................................2

*Brantley v. Republic Mortg. Ins. Co.,* 424 F.3d 392 (4th Cir. 2005) ..................................2

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)....................................................9

*Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) ................2, 5, 6

*Klopfer v. Queens Gap Mountain L.L.C.,* 816 F. Supp. 2d 281 (W.D.N.C. 2011)..............2

*Long v. Silver*, 248 F.3d 309 (4th Cir. 2001) ......................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..........................4

*Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388 (5th Cir. 2002) .................7, 8

*QPro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492 (S.D. Tex. 2011) ..........4

*RX.com v. Medco Health Solutions, Inc.*, 322 F. App'x. 394 (5th Cir. 2009) ....................8

*Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758 (5th Cir. 2002)...................................5

*Westmoreland v. Sadoux*, 299 F.3d 462 (5th Cir. 2002).......................................................7

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971) ...............................8

State Cases

*Brown v. Centex Homes*, 615 S.E.2d 86 (N.C. Ct. App. 2005) ..........................................7

*Ellison v. Alexander*, 700 S.E.2d 102 (N.C. Ct. App. 2010) ..............................................7

*In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185 (Tex. 2007).......................................2

Rules

FED. R. CIV. P. 8(a)(3)..........................................................................................................*9*

FED. R. CIV. P. 8(a)(2) & (3) ................................................................................................*9*

Henry Schein, Inc. ("Schein"), submits this reply brief in further support of its Motion to Compel Plaintiff to Arbitrate and to Stay Proceedings. (Dkt. #14.)

## INTRODUCTION

Archer and White Sales, Inc. ("Plaintiff" or "Archer") concedes, as it must, that a non-signatory to an arbitration agreement may compel a party to the agreement to arbitrate its claims under the doctrine of equitable estoppel.[1] Nevertheless, Archer challenges the application of equitable estoppel and the scope of the operative arbitration clause in a series of specious arguments.

The heart of Archer's efforts are directed at unmooring its claim for termination or restriction of its distribution rights from the 2007 Pelton & Crane Dealer Agreement ("Dealer Agreement") (Dkt.#10 & 10-2). This effort fails because it was the Dealer Agreement that vested Archer with the very rights it asserts were improperly curtailed by the alleged conspiracy.

Particularly disingenuous are Archer's arguments that it has alleged a cause of action against Schein for injunctive relief and for price fixing, both of which, Plaintiff asserts, are outside the scope of the arbitration clause. A boilerplate reference to an injunction in the prayer for relief is not a "cause of action" and cannot circumvent the arbitration clause. Archer's scattered references to "price fixing" do not alter the fact that it has no standing to assert such claims and that its real complaint is the termination and restriction of its sales territory. Further, whatever the status of the other Archer-Danaher agreements, Archer's injury accrued during the effective date of the Dealer Agreement and therefore its claim falls squarely within the arbitration agreement.

---

[1] Plaintiff's Response in Opposition to Defendant Henry Schein, Inc.'s Motion to Compel Plaintiff to Arbitrate and to Stay all Proceedings ("Opp.") (Dkt. #22) at 9.

1

# ARGUMENT AND AUTHORITIES[2]

I.  **Plaintiff Concedes the Applicability of Equitable Estoppel Where, As Here, Plaintiff's Claims Rely On the Dealer Agreement and Plaintiff Alleges Concerted and Interdependent Misconduct Between Schein and the Manufacturer Defendants, the Signatory to the Dealer Agreement**

Acknowledging *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000),[3] Plaintiff concedes that a non-party to an arbitration agreement may compel arbitration under the doctrine of equitable estoppel in two circumstances. Opp. at 9.  First, equitable estoppel is appropriate "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Grigson*, 210 F.3d at 527. Second, a non-signatory may compel arbitration when "the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.; see also Am. Bankers. Ins. Grp. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). Here, no amount of smoke and mirrors can alter the fact that the allegations in Plaintiff's complaint directly implicate both strands of equitable estoppel.

---

[2] Schein joins in and incorporates the arguments and attachments of the Manufacturer Defendants' Reply Memorandum in further support of the Motion to Compel Arbitration ("Manufacturer Reply"). (Dkt. #24.)

[3] A non-party to an arbitration agreement may compel a party to the agreement to arbitrate its claim against the non-party if the *state law* governing the agreement so provides. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). The Dealer Agreement clearly states that "This Agreement shall be governed by the laws of the State of North Carolina." Dealer Agreement at § 12.8. North Carolina's equitable estoppel law is the same as the Fourth Circuit's law, and vice versa. *Klopfer v. Queens Gap Mountain L.L.C.*, 816 F. Supp. 2d 281, 293 n.5 (W.D.N.C. 2011). The Fourth Circuit and the Fifth Circuit both recognize equitable estoppel. *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005); *Grigson*, 210 F.3d 527. Therefore, in this and our opening brief we cite North Carolina, Fourth Circuit, and Fifth Circuit cases that are illustrative of the doctrine. On the other hand, the law of the State of Texas does not apply to the issue of arbitrability, and Plaintiff's reliance on cases citing Texas state law, *e.g.*, *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007), are inapposite, and ignore § 12.8 of the Dealer Agreement.

### A.     Plaintiff's Termination Claim "Relies On" the Dealer Agreement

Plaintiff maintains that Schein may not compel arbitration under the "rely on" prong of equitable estoppel because its claims do not "arise out of or depend on the existence of" the Dealer Agreement containing the arbitration clause. Opp. at 11. To this end, Plaintiff maintains that its claims arise out of a conspiracy to "fix prices and refuse to compete in the dental equipment distribution market." *Id*.

Plaintiff's argument is entirely without merit. Archer's only cognizable claim is predicated on the allegation that its distribution rights under a written dealer agreement were terminated or curtailed as a result of a conspiracy. Compl. ¶¶ 1, 33, 51.[4] These rights were granted by the Dealer Agreement and therefore, Plaintiff necessarily relies on the Dealer Agreement in alleging that its distribution territory was illegally terminated or restricted. In other words, because the Defendants could not have engaged in a conspiracy to terminate or curtail distribution rights that Plaintiff did not possess, Archer's claim directly relies on the Dealer Agreement.[5]

Archer's attempts to avoid the first prong of equitable estoppel by recasting its dealer termination/restriction cause of action as a price fixing claim is unavailing. *See, e.g.*, Opp. at 7, 11. To be sure, the complaint refers to a purported price fixing agreement between Schein and Company X. *See, e.g.*, Compl. ¶¶ 1, 26. However, Plaintiff's complaint does not – and could not – plead a *cause of action* for price fixing. This is because Archer and Schein are horizontal competitors (Compl. ¶ 1; Opp. at 1) and, as a

---

[4] In its Response, Archer tries to walk away from the allegations that it had a dealer agreement by vaguely asserting that it only has a "dealer relationship" that "in no way depends[s] on or arise[s] from a dealer agreement." Opp. at 9.

[5] The Complaint does not allege any facts against the Manufacturer Defendants, other than Pelton & Crane and Instrumentarium (which is part of the same alleged conspiracy), and therefore the presence of such Danaher subsidiaries in the caption cannot be used to defeat arbitration. *See* Manufacturer Reply at 7-8.

horizontal competitor to Schein, Archer lacks standing to bring any price fixing cause of action. The United States Supreme Court has held that a horizontal competitor who is not a member of the price fixing conspiracy, as Archer alleges here, benefits from -- and is not harmed by -- the conspiracy and therefore does not have an antitrust cause of action. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986) (defendants' competitors could not recover damages for defendants' price fixing). Since Plaintiff has not and could not plead a price fixing claim, Plaintiff's attempt to recast its cause of action does not change the fact that its claim is for its termination as a dealer and therefore directly relies on the Dealer Agreement.

Archer's reliance on *QPro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492 (S.D. Tex. 2011), to argue that its claims do not rely on the Dealer Agreement is similarly misplaced. Opp. at 10. The plaintiff in *QPro* leased certain non-destructive inspection technology from Applus pursuant to an agreement with an arbitration clause. *QPro Inc.*, 761 F. Supp. 2d at 494-95. QPro used the technology in connection with a services contract with Dow Chemical. *Id*. at 494. RTD, Applus' U.S. subsidiary, allegedly conspired with another company to interfere with the Dow service contract. *Id*. at 494-95. When QPro sued RTD for tortious interference, RTD, relying on equitable estoppel, moved to compel arbitration pursuant to the arbitration clause in the lease agreement between plaintiff and Applus, even though it was not a signatory to that agreement. *Id*. at 495-96. The court held that equitable estoppel was inappropriate because the plaintiff's claim did "not depend on the terms of [the lease] agreement, such that [plaintiff] is simultaneously invoking the lease yet refusing to comply with the arbitration clause it contains." *Id*. at 500. Here, in contrast to *QPro*, Archer's termination

claim necessarily relies on the Dealer Agreement because the Dealer Agreement vested Archer with the very rights Schein and the Manufacturer Defendants allegedly terminated or restricted. In sum, since Plaintiff's only cognizable claim relies on the Dealer Agreement, Schein may compel arbitration under the first strand of equitable estoppel.

### B. Plaintiff Alleges Interdependent and Concerted Misconduct

Equally without merit is Plaintiff's claim that Schein may not compel arbitration under the "concerted and intertwined misconduct" strand of equitable estoppel "because the antitrust conspiracy between Schein and Company X arose completely independently from the 2007 Pelton & Crane agreement with Archer." Opp. at 12.

A non-party to an arbitration agreement may compel arbitration when a plaintiff alleges substantially interdependent and concerted misconduct between a signatory and non-signatory to an arbitration agreement. *See Grigson*, 210 F.3d at 527; *Long*, 453 F.3d at 627 n.3.[6] Plaintiff's Complaint easily satisfies this test as Archer's claim is premised on an alleged conspiracy involving concerted action between Schein, Company X, and Pelton & Crane to terminate and/or restrict Archer's distribution territories. Compl. ¶¶ 31-33. Indeed, concerted action is the *sine qua non* of a claim under Section 1 of the Sherman Act (and its Texas counterpart). *See Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 761 (5th Cir. 2002) ("[t]o establish a § 1 violation, a plaintiff must demonstrate concerted action"). Accordingly, since Pelton & Crane (a Manufacturer Defendant) signed the Dealer Agreement, Schein, a non-signatory, may compel arbitration based on

---

[6] To the extent that the concerted misconduct must relate to the Dealer Agreement (Opp. at 11) Schein has satisfied this burden for the reasons set forth *supra* Part I.A.

Plaintiff's allegations of concerted misconduct between a signatory and non-signatory to an arbitration agreement.[7]

### C. Plaintiff's Argument That It Would be Unfair For an Alleged Conspirator to Take Advantage of Equitable Estoppel Misstates the Law

Plaintiff, in arguing that applying equitable estoppel in this case would be "absurd and unfair" because Archer is a "victim" of Schein's misconduct (Opp. at 13) turns the law upside down and makes the plaintiff the judge and jury before the case has been litigated. Equitable estoppel is intended to prevent a signatory from "on the one hand, seek[ing] to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing] arbitration's applicability because the defendant is a non-signatory." *Grigson*, 210 F.3d at 528. Thus, the allegations that matter are not the Defendants' ultimate guilt or innocence, but whether Plaintiff has alleged (i) a claim, that relies on the agreement containing the arbitration clause, or (ii) concerted conduct among signatory (Danaher) and non-signatory (Schein) defendants. As discussed above, this is precisely the situation here. Archer is endeavoring to impose liability on Schein based on a dealer agreement, while at the same time denying the applicability of the Dealer Agreement's arbitration clause. Moreover, Archer's argument would also render the second strand of equitable estoppel, which requires concerted and intertwined conduct between multiple parties, a nullity.

### D. North Carolina Law Allows Agents of Signatories to Compel Arbitration

Finally, under North Carolina law a non-party to an arbitration agreement may compel arbitration when its alleged liability arises from its actions as an agent of the

---

[7] Notably, Plaintiff's Response also fails to distinguish any of the concerted misconduct cases cited by Schein in its initial Motion to Compel Arbitration (Dkt. #14) at 5-7.

6

party who signed the contract containing the arbitration clause. *See Ellison v. Alexander*, 700 S.E.2d 102, 110-11 (N.C. Ct. App. 2010); *Brown v. Centex Homes*, 615 S.E.2d 86, 88-89 (N.C. Ct. App. 2005). This is hardly a "bizarre argument" (Opp. at 12) and is consistent with the second prong of the *Grigson* test that Plaintiff agrees is applicable here. *Compare Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) (agency law applicable where the facts and claims against the signatory and non-signatory defendants are closely intertwined) *with Westmoreland v. Sadoux*, 299 F.3d 462, 466-67 (5th Cir. 2002) (non-signatory defendant could not rely on agency to compel arbitration because plaintiff's claims were unrelated to the contract containing the arbitration clause).[8]

## II. Plaintiff's Claim Falls Squarely Within the Scope of the Arbitration Clause

Plaintiff raises a series of specious arguments that its antitrust claim falls outside the scope of the arbitration clause. *See* Opp. at 5-9. Each of these arguments to circumvent the reach of the Dealer Agreement's arbitration clause fail both factually and legally.

Plaintiff argues that this dispute falls outside the scope of the Dealer Agreement's arbitration clause because it does not "arise out of or relate to" the agreement. Opp. at 7. However, for the reasons explained *supra* Part I.A., Plaintiff's claim that its distribution rights were improperly terminated or restricted, obviously has a "significant relationship" to the Dealer Agreement. *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) (broad arbitration clauses embrace "'all disputes between the parties having a significant relationship to the contract regardless of the label attached to the

---

[8] Schein has not argued, as Archer claims, that Schein is "entitled to benefit as an agent under *any* of the Manufacturer Defendant's contracts with *any* party." Opp. at 12 (emphasis added). Schein does argue that Plaintiff's allegations squarely relate to the Dealer Agreement that Plaintiff claims was terminated or restricted pursuant to interdependent and concerted conduct.

7

dispute'") (citation omitted). Notably, without the Dealer Agreement, Archer would have no basis to recover as the Dealer Agreement vested Archer with the rights it now claims were illegally curtailed.[9]

Plaintiff advances a similar argument that because its complaint contains factual allegations of purported price fixing activities, this dispute falls outside the scope of the arbitration clause. Opp. at 7. However, also for the reasons explained *supra* Part I.A., the Complaint's only claim for relief is for damages resulting from the termination or restriction of the Dealer Agreement. Accordingly, to the extent Plaintiff relies on vague allegations of price fixing to remove this dispute from the purview of the Dealer Agreement's arbitration clause, this argument also fails as a matter of law.

Plaintiff's argument that the antitrust conspiracy "may" have begun before the Dealer Agreement's effective date is legally irrelevant. Opp. at 8. The dealer termination claim, the only claim that Plaintiff can allege, accrued during the effective date of the Dealer Agreement. "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971); *see also RX.com v. Medco Health Solutions, Inc.*, 322 F. App'x. 394 (5th Cir. 2009) (holding that online pharmacy's boycott claim accrued on the date that it was injured, when it was refused admission to each defendant's pharmaceutical network). Here, the injury for which Archer complains is termination and/or restricting of its distribution territory. According to the complaint this occurred on or about March 2008 (Compl. ¶ 33), during the

---

[9] "In view of the policy favoring arbitration, [the court] ordinarily resolve[s] doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (internal quotation and citation omitted).

8

effective date of the Dealer Agreement (Dkt. #10 & 10-2). Accordingly, the arbitration clause in the Dealer Agreement covers Plaintiff's claims.[10]

Finally, Plaintiff incorrectly argues that its prayer for relief takes this matter outside the scope of the arbitration clause. Plaintiff's prayer for relief contains a boilerplate request for an injunction, which Plaintiff now characterizes as a cause of action, which renders the arbitration clause a nullity. Opp. at 6. This is simply wrong. Like the phantom price fixing claim, Plaintiff has not, nor could it plead, an action for injunctive relief.[11] In fact, Plaintiff's complaint does not plead any of the elements of a claim for a permanent injunction, *e.g.*, (1) irreparable harm; (2) inadequate remedies; (3) balancing of the hardships; (4) the public interest. *See, e.g., eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, four years after the injury, Plaintiff is entitled, if at all, to a remedy at law – that is damages. Finally, the complaint does not assert a claim for "threatened loss or injury." Rather it unambiguously asserts that the termination or restriction occurred in 2008. Compl. ¶ 33. A termination by definition is not recurring and thus provides no basis for Plaintiff's claim for injunctive relief.

## **CONCLUSION**

Schein respectfully requests that its Motion be granted and all proceedings be stayed pending the completion of such arbitration.

---

[10] Schein adopts the Manufacturer Defendant's arguments in response to Archer's contention that the Dealer Agreement was superseded. Manufacturer Reply at 3-4.

[11] As the Federal Rules make clear, a prayer for relief is not a claim for relief. *See* FED. R. CIV. P. 8(a)(3). A cause of action requires, at a minimum, a "plain statement" of the facts showing that the pleader is entitled to relief, as well as a prayer for relief. *Id.* at 8(a)(2) & (3). In addition, in the event that the Court finds that Plaintiff's claim for injunctive relief is nonarbitrable, the Court, for the reasons set forth in the Manufacturer Reply, should nevertheless compel arbitration of Archer's damages claim. Manufacturer Reply at 5.

9

Dated:  October 26, 2012

Respectfully submitted,

/s/ Paul F. Schuster
Paul Schuster
State Bar No. 00784931
Michael V. Powell
State Bar No. 16204400
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Tel:  (214) 740-8000
Fax:  (713) 740-8800
mpowell@lockelord.com
pschuster@lockelord.com

Helene D. Jaffe
Alan R. Kusinitz
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
hjaffe@proskauer.com
akusinitz@proskauer.com

*Counsel for Defendant Henry Schein, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Defendant Henry Schein, Inc.'s Reply in Support of Motion to Compel Plaintiff to Arbitrate and to Stay Proceedings has been served upon all counsel of record by using the Court's electronic filing system on October 26, 2012.

/s/ Paul F. Schuster
Paul Schuster