**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | | |
|---|---|---|
| ARCHER AND WHITE SALES, INC. | § § | |
| v. | § § | Case No. 2:12-CV-572-JRG-RSP |
| HENRY SCHEIN, INC., et al. | § § | |

**MEMORANDUM ORDER**

Currently before the Court are the two motions to compel arbitration, filed by Defendant Henry Schein, Inc. (Dkt. No. 14) and by Defendants Danaher Corporation, Dental Equipment LLC, Dental Imaging Technologies Corporation, Instrumentarium Dental Inc., and KaVo Dental Technologies, LLC (hereinafter "the Manufacturer Defendants") (Dkt. No. 10). For the reasons that follow, the motions are GRANTED.

Plaintiff ("Archer") is a distributor of dental equipment and competes directly against Defendant Henry Schein, Inc. ("Schein"), which is alleged to be the biggest distributor in the country. Defendant Danaher Corporation ("Danaher"), which is alleged to be the biggest manufacturer of dental equipment, has over the last decade acquired all of the other named defendants, formerly its smaller competitors in the dental equipment manufacturing field. Archer alleges that Schein conspired with Danaher and its subsidiaries, and one unnamed large distributor, to restrict Archer's access to the market because Archer was attempting to sell the equipment to dentists at discounted prices. In these motions, the Defendants assert that Archer is bound by

1

arbitration clauses in its distributor agreements with some of the Manufacturer Defendants. Defendants also assert that the doctrine of equitable estoppel allows even the Defendants who are not parties to any contract with Archer containing an arbitration clause to demand arbitration.

The starting point for this case is the arbitration clause itself. However, it must be read against the background of the strong public policy in favor of arbitration expressed in the Federal Arbitration Act. 9 U.S.C. §1, et seq. The clause provides: "Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes relating to trademarks, trade secrets or other intellectual property of Pelton & Crane[1]) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association." Three parts of this clause bear upon the outcome of the dispute. First, the opening clause is a broad one, referring as it does to *any* dispute *related* to the agreement. Second, that broad clause has an exception for *actions seeking injunctive relief.* Third, the clause incorporates the rules of the AAA.

The Court has no hesitation in concluding that this lawsuit is a dispute "related" to the distributor agreement. After all, the very rights that Archer claims the Defendants conspired to defeat were created by the distributor agreement and others like it that the record suggests have similar arbitration clauses. *E.g.,* Dkt. No. 24 at 11. The fact that Archer was an authorized dealer for the equipment at issue is essential to its claims. However, the exception carved out for actions seeking injunctive relief is problematic to the motions to compel arbitration. On the most superficial level, this lawsuit is clearly an action seeking injunctive relief since it *does* seek that

---

[1] Pelton & Crane was the predecessor of one of the Danaher subsidiaries.

relief.  On the other hand, it does not seek *only* injunctive relief, and the Court is persuaded that damages (described in Paragraph 1 of the Complaint as "in the tens of millions of dollars") are the predominant relief sought.   The incorporation of the rules of the AAA provides the answer to this problem, as those rules very clearly state that the question of the arbitrability of a dispute is referred to the arbitrator under the AAA rules.

In *Petrofac, Inc. v. DynMcDermott Petrol Operations, Co.,* 687 F.3d 671, 675 (5th Cir. 2012), the Court held that "We agree with most of our sister circuits that the express adoption of these [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."   If there were no reasonable construction of the contract that allowed for arbitration, there would be nothing for an arbitrator to decide.   However, there is in this case a plausible construction calling for arbitration.   Thus, the question of whether the exception for actions seeking injunctive relief should be limited to actions for an injunction in aid of arbitration or to enforce an arbitrator's award, should properly be left for the arbitrator to decide.

The case relied upon by Archer actually supports this analysis.  In *State of New York v. Oneida Indian Nation of New York,* 90 F.3d 58, 62 (2nd Cir. 1996), the Court held that "While it is true that exclusionary clauses should not be given expansive readings, here the language excluding a certain class of disputes from arbitration was *clear and unambiguous*."   (emphasis supplied). As shown above, that standard has not been met here.

The next question is whether non-signatory defendants can avail themselves of the arbitration clause.   Both sides agree that *Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524 (5th Cir. 2000), is the controlling authority on the application of the doctrine of equitable estoppel

3

in this circumstance, namely whether Archer is estopped from asserting the lack of privity against the non-signatory defendants who seek to compel arbitration.[2] In *Grigson*, the Fifth Circuit expressly adopted the Eleventh Circuit's test applying equitable estoppel to non-signatory parties seeking to compel arbitration of "intertwined" claims. That test provides:

> "Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. *First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.* When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.*"

*Id.* at 527. (emphasis original). Both branches of the test appear to apply here. First, Archer has to rely on its written distributorship agreement with Pelton & Crane in order to allege that it was wrongfully excluded from the market (e.g., Complaint ¶32, Dkt. No. 1 at 10). Second, the conspiracy alleged between Schein and the Manufacturer Defendants alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Finally, the Court cannot presume that the defendants did act wrongfully, which would be necessary in order for equity or fairness to override the application of the doctrine in this instance.

---

[2] Because both sides agree that *Grigson* is controlling, the Court need not consider whether *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 129 S.Ct. 1896 (U.S., 2009) would call for further analysis under state law.

Accordingly, the Motions to Compel Arbitration are granted and this action is stayed pending arbitration of the claims asserted herein. All parties are directed to notify the Court when the arbitration process is complete or if it has been abandoned.

**SIGNED this 28th day of May, 2013.**

                                                  ROY S. PAYNE
                                                UNITED STATES MAGISTRATE JUDGE