**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| ARCHER AND WHITE SALES, INC., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| HENRY SCHEIN, INC., DANAHER CORPORATION, INSTRUMENTARIUM DENTAL INC., DENTAL EQUIPMENT LLC, KAVO DENTAL TECHNOLOGIES, LLC AND DENTAL IMAGING TECHNOLOGIES CORPORATION, | ) CIVIL ACTION NO. 2:12-cv-00572 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**MANUFACTURER DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION
OF MAGISTRATE JUDGE'S MAY 28, 2013 MEMORANDUM ORDER (DKT. # 44)**

**Table of Contents**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

STANDARD OF REVIEW ....................................................................................................... 4

ARGUMENT ............................................................................................................................. 4

I.  THE ORDER CORRECTLY HELD THAT UNDER THE TERMS OF THE
    AGREEMENT AND THE APPLICABLE LAW, THIS DISPUTE MUST BE
    REFERRED TO ARBITRATION. ................................................................................ 4

    A.  The Order Correctly Applied *Petrofac* To Determine that the Question of
        Arbitrability Was for the Arbitrator To Decide. ................................................. 4

    B.  Even if the Issue of Arbitrability Were for the Court To Decide, This
        Dispute Would Be Subject to Arbitration. .......................................................... 6

II. THE ORDER CORRECTLY APPLIED THE FIFTH CIRCUIT'S *GRIGSON*
    TEST IN HOLDING THAT ALL OF THE MANUFACTURER DEFENDANTS
    COULD HOLD PLAINTIFF TO THE ARBITRATION CLAUSE IT SIGNED. ........ 7

    A.  Plaintiff's Reliance Upon the Dealer Agreement in Asserting Claims
        Against the Non-Signatory Defendants Satisfies the First *Grigson* Test. ........ 8

    B.  Plaintiff Alleges Only Concerted and Interdependent Conduct on the Part
        of the Manufacturer Defendants. ...................................................................... 11

CONCLUSION ........................................................................................................................ 13

## Table of Authorities

### FEDERAL CASES

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) ............................................. 6

*Amegy Bank Nat'l Assn. v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441
(S.D. Tex. 2012) ............................................................................................................... 11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ........................................ 6

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003) ................................. 12

*Brown v. Pac. Life Ins. Co.*, 462 F.3d 384 (5th Cir. 2006) ........................................................... 12

*ColorQuick, L.L.C. v. Vistaprint Ltd.*, 6:09-CV-323, 2010 WL 5136050 (E.D. Tex. July
22, 2010) ............................................................................................................................ 4

*Duke v. Crop Growers Ins. Inc.*, 70 F. Supp. 2d 711 (S.D. Tex. 1999) .......................................... 7

*Ford Motor Co. v. Ables*, 207 F. App'x 443 (5th Cir. 2006) (per curiam) .................................. 11

*Futurewei Technologies Inc. v. E. Oliver Capital Grp., LLC*, 4:09CV455, 2010 WL
1856418 (E.D. Tex. Apr. 15, 2010), report and recommendation adopted, 2010 WL
1849256 (E.D. Tex. May 7, 2010) ..................................................................................... 9

*Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000) ............................ passim

*Halliburton Energy Servs., Inc. v. BJ Servs. Co.*, No. 2:08-CV-475-TJW, 2010 WL
2991031 (E.D. Tex. July 28, 2010) .................................................................................... 5

*Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000) ............................................................................ 12

*Hill v. G.E. Power Systems, Inc.*, 282 F.3d 343 (5th Cir. 2002) (cited at Motion at 10) ........... 9, 13

*J.J Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315,320-21 (4th Cir.
1988) ................................................................................................................................ 12

*Jureczki v. Bank One Texas, N.A.*, 75 F. App'x 272 (5th Cir. 2003) ........................................... 12

*King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust
Litig.)*, 707 F.3d 917 (8th Cir. 2013) ................................................................................ 10

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704 (10th Cir. 2011) ...... 10, 11

*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ............................ 6, 12

*Palmer Ventures LLC v. Deutsche Bank AG*, 254 F. App'x 426 (5th Cir. 2007) (per
curiam) ......................................................................................................................... 9, 12

*Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061 (5th Cir. 1998).............6

*Petrofac, Inc. v. DynMcDermott Petrol. Ops., Co.*, 687 F.3d 671 (5th Cir. 2012)......................1, 4

*In re Humana Inc. Managed Care Litig.*, 285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds sub nom PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) .........................13

*Smith/Enron Cogeneration LP v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88 (2d Cir. 1999) ................................................................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72......................................................................................................................4

# INTRODUCTION

In its Motion for Reconsideration of Magistrate Judge's May 28, 2013 Memorandum Order (Dkt. #44) (the "Motion"), Plaintiff Archer & White Sales, Inc. ("Archer Dental") seeks to persuade the Court to reject Magistrate Judge Payne's ruling[1] by distorting it.  As Archer would have it, Judge Payne engaged in "cursory analysis," Motion at 13, "rewr[o]te a contract to accord with its instinct for the dispensation of equity," *id.* at 7, "invent[ed] ambiguity" in the arbitration clause "by rewriting it, adding words the parties did not use," *id.* at 2, and on that basis simply "committed the question of the exclusionary clause's scope to the arbitrator," *id.*  That view cannot be squared with the eight separate briefs filed by the parties in the motions to compel arbitration, the nearly two hours of oral argument, or the Order and its well-reasoned conclusion.

The basis for the ruling—which Plaintiff never acknowledges—is that ***the parties to the Dealer Agreement agreed to arbitrate the question whether the arbitration clause applied to this dispute***.  Thus, Judge Payne did not send this case to arbitration because the language in the arbitration clause was ambiguous.  He did so because binding Fifth Circuit case law—upon which he expressly relied, but which is nowhere cited in Plaintiff's Motion—holds that where, as here, the parties expressly adopt the American Arbitration Association ("AAA") rules (including Rule 7(a), which provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"), that adoption provides "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petrol. Ops., Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (quoted in Order at 3).  Accordingly, the question whether the arbitration clause applies to Plaintiff's claims "should properly be left for the arbitrator to

---

[1] For ease of reference, the Order, is attached hereto as Ex. A.

decide." Order at 3. Moreover, even if the Court, rather than the arbitrator, were to resolve the issue of arbitrability, this dispute is arbitrable under the agreement and the applicable law.

Judge Payne also correctly applied controlling Fifth Circuit authority—*Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000)—in holding that non-signatories to the contract could hold Plaintiff to the arbitration clause it signed. *See* Order at 3–4. In its Motion, Plaintiff argues against the *Grigson* standard, relying instead—for the first time—on out-of-Circuit cases, notwithstanding Plaintiff's concession that *Grigson* is "the key case that lays out what the test is" for equitable estoppel. Hearing Tr. at 53:25–54:2 (attached hereto as Ex. B). But the non-Fifth Circuit case law cited by Plaintiff would be inapposite even if it were binding, and the holding that *Grigson* applies is correct, because Plaintiff both "rel[ies] on the terms of the written agreement in asserting its claims against the nonsignator[ies]," and "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract," *Grigson*, 210 F.3d at 527 (emphasis and quotation marks omitted). *See* Order at 4 ("Both branches of the test appear to apply here.").

Plaintiff's Motion should be denied in its entirety.

## BACKGROUND

Defendants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC and Dental Imaging Technologies Corporation (together, the "Manufacturer Defendants") manufacture and distribute dental equipment.[2] Compl. ¶¶ 10–14. Archer Dental distributes, sells, and services dental equipment on behalf of many different

---

[2] Facts stated in the Complaint are assumed to be true for purposes of responding to the Motion. However, Plaintiff's characterization in its Motion of the facts is incorrect. For example, the Complaint does not in fact allege the Manufacturer Defendants conspired to "fix prices," Motion at 2. Nor does it allege Danaher "acquired . . . its manufacturing competitors," *id.*, and this action does not involve any challenge whatsoever to any of Danaher's acquisitions.

2

companies, including some Manufacturer Defendants. *Id*. ¶ 9. "Archer Dental's authorized distribution territory ***in its dealer agreements with Danaher*** allowed it to sell equipment in Texas and parts of Oklahoma and Northwest Arkansas." *Id*. ¶ 23.[3]

Archer Dental executed a Dealer Agreement with Pelton & Crane (a predecessor of Defendant Dental Equipment LLC) that governs its distribution of Pelton & Crane equipment, pursuant to which Pelton & Crane appointed Archer Dental an "authorized dealer for sale" of dental equipment in certain geographic territories. *See* Ex. C § 1. The Agreement contains a one-paragraph dispute-resolution clause:

> This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes relating to trademarks, trade secrets or other intellectual property of Pelton & Crane) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association. The place of arbitration shall be Charlotte, North Carolina.

*Id*. § 12.8. The dealer agreements between Archer Dental and the other predecessors of Dental Equipment LLC—Marus and DCIE—contain identical clauses. *See* Ex. D § 12.8; Ex. E. § 12.8.

Notwithstanding the broad arbitration clause in its dealer agreements, Archer Dental filed a complaint in this Court alleging violations of the Sherman Act, 15 U.S.C. §§ 1–27, and the Texas Free Enterprise and Antitrust Act, Tex. Bus. & Com. Code §§ 15.01–15.52, seeking treble damages under both causes of action, on the basis that it allegedly suffered harm because the distribution rights conferred by the Pelton & Crane and other dealer agreements were restricted and/or terminated. Compl. ¶¶ 1, 23, 55–69. Plaintiff also includes a two-sentence request for injunctive relief, *see id*. ¶¶ 61, 68, but provides no support for that request, and has never filed any motion for injunctive relief, preliminary or otherwise.

---

[3] All emphasis herein is supplied by the authors, unless otherwise noted.

**STANDARD OF REVIEW**

Where a party timely objects to a magistrate judge's decision on a non-dispositive motion, the district judge reviews the order only to the extent it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *accord ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-CV-323, 2010 WL 5136050, at *3 (E.D. Tex. July 22, 2010). "[A]n 'abuse of discretion' standard [applies] to the numerous instances in which magistrate judges exercise discretion in resolving nondispositive matters." 2010 WL 5136050, at *3 (quotation marks omitted).

**ARGUMENT[4]**

I.  **THE ORDER CORRECTLY HELD THAT UNDER THE TERMS OF THE AGREEMENT AND THE APPLICABLE LAW, THIS DISPUTE MUST BE REFERRED TO ARBITRATION.**

To argue that a Magistrate Judge's ruling was "contrary to law," the party seeking reconsideration should properly state both the ruling and the governing law to which it supposedly was contrary. Plaintiff does neither: It ignores the ground upon which the ruling was based—that the parties agreed questions of arbitrability would be decided by an arbitrator—and fails to acknowledge *Petrofac*, the Fifth Circuit precedent upon which the ruling relies. *Petrofac* requires the Court to honor the parties' decision to reserve issues of arbitrability to an arbitrator where, as here, the parties adopt the AAA rules. Even if *Petrofac* somehow did not apply here and the issue of arbitrability were for the Court to decide, the language of the arbitration clause would compel the conclusion that this dispute is subject to arbitration.

   A.  **The Order Correctly Applied *Petrofac* To Determine that the Question of Arbitrability Was for the Arbitrator To Decide.**

In *Petrofac*, the Fifth Circuit held "that the express adoption of the[ AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." 687 F.3d at

---
[4] The Manufacturer Defendants adopt by reference all arguments made by the Defendants in the briefing before Judge Payne. *See* Dkt. ## 10, 14, 24, 31.

4

675; *accord, e.g.*, *Halliburton Energy Servs., Inc. v. BJ Servs. Co.*, No. 2:08-CV-475-TJW, 2010 WL 2991031, at *3 (E.D. Tex. July 28, 2010) ("By applying the AAA rules to the arbitration, the . . . Agreement applies the rules to all aspects of the arbitration, including the threshold issue of jurisdiction. Thus, the arbitrator, instead of this Court, is vested with the jurisdictional issue of arbitrability."). The Order correctly applied that holding here: It is undisputed that the parties' agreement expressly incorporates the AAA Rules, including Rule 7(a), which provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See* Ex. C § 12.8; Ex. F (AAA Rules) at R-7. Questions about whether a dispute falls within the scope of the clause are thus for the arbitrator to decide—*Petrofac* precludes the Court from doing exactly what Plaintiff argues it should have done here.

Plaintiff characterizes the ruling as depending on supposed "findings" that the arbitration clause is ambiguous, Motion at 4, and that Plaintiff's request for damages predominates over its request for injunctive relief, *id.* at 5-8. But a plain reading of the Order shows it did nothing of the kind—rather, it acknowledged that because "there is in this case a plausible construction calling for arbitration," it could not be said there was "nothing for an arbitrator to decide," and thus, under *Petrofac*, the parties' decision to commit issues of arbitrability to the arbitrator must be honored. Order at 3. Plaintiff's arguments about the meaning of "action," and its claim that a two-sentence injunctive relief request is on equal footing with its damages claim seeking "tens of millions of dollars," are irrelevant to the Court's decision. The Order's application of *Petrofac* was straightforward and correct.[5]

---

[5] Plaintiff's assertion that "injunctive relief is not available in an arbitration proceeding because the [AAA] rules do not allow it," Motion at 4, is incorrect. No AAA rule bars injunctive relief. Rule 43, which Plaintiff cites, states that an arbitrator may grant any remedy that is just and

5

### B. Even if the Issue of Arbitrability Were for the Court To Decide, This Dispute Would Be Subject to Arbitration.

Even if *Petrofac* somehow did not require the Court to honor the parties' decision to reserve questions of arbitrability to the arbitrator, the dispute would be subject to arbitration. "[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (brackets and quotation marks omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Here, there is a plausible construction of the arbitration clause that encompasses this dispute—indeed, it is the only sensible one—and thus at a minimum it cannot be said with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

The arbitration clause, which applies to "[a]ny dispute arising under or related to this Agreement," Ex. C § 12.8, is a classic "broad arbitration clause." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067–68 (5th Cir. 1998). There can be no doubt that, as the Order noted, the dispute is "related to" the parties' agreement. Order at 2 ("The very rights that Archer claims the Defendants conspired to defeat were created by the distributor agreement."); *see* Compl. ¶¶ 1, 23 (alleging restriction and/or termination of distribution rights created by the distribution agreements that contain the arbitration clause at issue).

---

equitable. Ex. F at R-43. Under *Petrofac*, whether the arbitration clause permits injunctive relief is a question for the arbitrator to decide. And even if Plaintiff's putative injunctive relief claim were not arbitrable, the rest of its claims would be. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("[A] stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration[.]" (quotation marks omitted)).

As the Order also noted, the clause includes a parenthetical exception for "actions seeking injunctive relief and disputes relating to trademarks, trade secrets or other intellectual property of Pelton & Crane." Order at 2.[6] But that exception does not mean, as Plaintiff argues, that the entire arbitration clause may be defeated by a party's mere inclusion of a boilerplate request for injunctive relief in a complaint otherwise seeking a jury trial for a damages claim. *See, e.g., Duke v. Crop Growers Ins. Inc.*, 70 F. Supp. 2d 711, 715 (S.D. Tex. 1999) (refusing to adopt interpretation that "would lead to absurd results for it would render the arbitration clause absolutely worthless").[7] Rather, it allows a party to seek injunctive relief in court, particularly where the issue in dispute involves "trademarks, trade secrets or other intellectual property," or to seek an injunction in aid of arbitration or to enforce an arbitrator's award.

Even if the application of the arbitration clause to this dispute were properly before the Court rather than the arbitrator, the proper outcome would be to send this claim to arbitration.

## II. THE ORDER CORRECTLY APPLIED THE FIFTH CIRCUIT'S *GRIGSON* TEST IN HOLDING THAT ALL OF THE MANUFACTURER DEFENDANTS COULD HOLD PLAINTIFF TO THE ARBITRATION CLAUSE IT SIGNED.

The Order also correctly held that under *Grigson*, the Manufacturer Defendants which were not signatories to the contracts with the arbitration clause (but which are the parent company and affiliates of the signatory) could hold Plaintiff to its commitment to arbitrate under the doctrine of equitable estoppel. In *Grigson*, the Fifth Circuit set forth two separate, independently sufficient circumstances under which equitable estoppel may be used by a

---

[6] Plaintiff selectively quotes the Order: "The Magistrate Judge held that 'this lawsuit is clearly an action seeking injunctive relief.'" Motion at 1; *accord id.* at 4. But the full quote is: "**On the most superficial level**, this lawsuit is clearly an action seeking injunctive relief since it *does* seek that relief." Order at 2–3 (second emphasis in original).

[7] Plaintiff's claim that this argument "presumes that the attorneys for a party . . . would violate Federal Rule of Civil Procedure 11," Motion at 8, is a *non sequitur*. The question is not whether attorneys will include frivolous claims, but whether the inclusion of a boilerplate request for injunctive relief—which can be made in any antitrust action—can render the clause meaningless.

7

nonsignatory to an agreement to compel arbitration. "First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Grigson*, 210 F.3d at 527 (emphasis and quotation marks omitted). "Second [and alternatively], application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id*. (emphasis and quotation marks omitted). The Order properly held that "[b]oth branches of the test appear to apply here." Order at 4.

Although Plaintiff previously conceded that *Grigson* governs whether non-signatory Defendants may invoke the arbitration clause in the Dealer Agreement, Pl.'s Opp. to Mfr. Defs.' Mot. to Compel Arb. at 10–13; Ex. B at 53:25–54:2 ("[W]e don't disagree that *Grigson* is sort of the key case that lays out what the test is."), Plaintiff now argues against that standard. Instead, relying for the first time on cases from the Eighth and Tenth Circuits (both of which are distinguishable in any event), Plaintiff now argues only breach of contract claims can qualify for equitable estoppel under the first *Grigson* test. Motion at 11. And as to the second *Grigson* test, Plaintiff now claims "allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories" are insufficient. *Id.* at 14. But Plaintiff's efforts to rewrite the law of the Fifth Circuit do not render the Order "contrary to law."

  A.  **Plaintiff's Reliance Upon the Dealer Agreement in Asserting Claims Against the Non-Signatory Defendants Satisfies the First *Grigson* Test.**

The Order correctly held that "Archer has to rely on its written distributorship agreement with Pelton & Crane in order to allege that it was wrongfully excluded from the market." Order at 4. Plaintiff alleges "Danaher prohibited Archer Dental from selling dental equipment in areas and to customers **which the distribution agreements between Archer Dental and Danaher or its**

8

*predecessors permitted Archer Dental to sell*," Compl. ¶ 1, and "Archer Dental's authorized distribution territory *in its dealer agreements* with Danaher allowed it to sell equipment in Texas and Parts of Oklahoma and Northwest Arkansas," *id.* ¶ 23. Thus, Plaintiff's sole allegation of harm—that the Manufacturer Defendants unlawfully restricted or terminated its distribution rights, *see, e.g., id.* ¶¶ 56, 63—depends on the validity of the Agreement. Plaintiff cannot rely on the existence of the distribution rights created by the Dealer Agreements while evading the arbitration clause contained within those Agreements by its decision to sue nonsignatories.

Plaintiff claims the non-signatory Manufacturer Defendants cannot compel arbitration because "Archer does not contend that Pelton & Crane's successor or any other party breached the terms of the [Dealer] Agreement." Motion at 11. But the first *Grigson* test applies more broadly than just to breach of contract claims. *Palmer Ventures LLC v. Deutsche Bank AG*, 254 F. App'x 426, 431 (5th Cir. 2007) (per curiam) ("[T]he first *Grigson* test permits a non-signatory to enforce an agreement to compel arbitration through equitable estoppel when the signatory must rely on the terms of the agreement to bring its claim against the non-signatory. This standard is met when each of the signatory's claims *makes reference to or presumes the existence of the agreement*." (citation omitted)).[8] The recent case *Futurewei Technologies Inc. v. E. Oliver Capital Group, LLC*, No. 4:09CV455, 2010 WL 1856418 (E.D. Tex. Apr. 15, 2010), report and recommendation adopted, No. 4:09CV455, 2010 WL 1849256 (E.D. Tex. May 7, 2010), is instructive in this regard. There, the first *Grigson* test applied and arbitration was compelled as to non-signatories because plaintiff "relie[d] upon the terms of the Supply Contract" with the signatory (which contained the arbitration clause) in bringing claims against

---

[8] *Hill v. G.E. Power Systems, Inc.*, 282 F.3d 343 (5th Cir. 2002) (cited at Motion at 10), failed the first *Grigson* test because, unlike here, the defendant "stop[ped] short of asserting that [plaintiff] relies upon the express terms of the [agreement] in asserting its claims." *Id.* at 349.

non-signatories (none of which was breach of contract). The court established such reliance because "Plaintiff's fraudulent transfer count . . . alleges damages in the amount outstanding on the Supply Contract"; "Plaintiff's conversion count . . . alleges that [Plaintiff's] right of possession of the telecommunication equipment at issue, and thus the foundation of its conversion claim, arises from the Supply Contract"; and "Plaintiff's quantum meruit claim . . . relies on the Supply Contract . . . to fix the value of the benefit received." *Id.* at *3.

Plaintiff's reliance on *King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust Litig.)*, 707 F.3d 917 (8th Cir. 2013) (discussed in Motion at 11–12), and *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011) (discussed in Motion at 12–13), is misplaced—even if those cases were on point, Judge Payne's failure to rely upon out-of-Circuit cases that were never cited by Plaintiff could not have been "contrary to law." In any event, both cases are distinguishable. In *Wholesale Grocery*, the Eighth Circuit held non-signatories could not compel arbitration because the "Retailers' antitrust claims are premised on paying artificially inflated prices, but since none of the Retailers' contracts with the Wholesalers specify price terms, the Retailers' claims do not involve alleged violation of any terms of those contracts." 707 F.3d at 924.[9] Similarly, in *Lenox MacLaren*, the Tenth Circuit[10]

---

[9] Plaintiff appears to read *Wholesale Grocery* as suggesting only breach of contract claims can qualify for the application of equitable estoppel. Motion at 11–12. But in fact, that case held that equitable estoppel applies where "the signatory . . . rel[ies] on the agreement in formulating its claims," 707 F.3d at 922 (quotation marks omitted), and acknowledged that equitable estoppel is available in cases alleging "negligence, negligent misrepresentation, and fraudulent misrepresentation," *id.* at 923  Here, Plaintiff, who alleges all the Manufacturer Defendants conspired to deprive it of the rights created by the Dealer Agreement, has made "'allegations of pre-arranged, collusive behavior demonstrating that the claims are intimately founded in and intertwined with the agreement at issue,'" *id.* at 922–23 (quoting *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 835 (8th Cir. 2010)).

[10] In *Lenox MacLaren*, Defendants argued (and the Tenth Circuit analyzed) Eleventh Circuit law of equitable estoppel. *See* 449 F. App'x at 708. Judge Payne was not required to apply Eleventh Circuit law or the Tenth Circuit's interpretation of Eleventh Circuit law. Moreover, *Lenox*

rejected equitable estoppel because the Plaintiff was "not attempting 'to hold the non-signatory liable pursuant to duties imposed by the agreement,' and its claims do not depend on whether either . . . Defendants' conduct was proper under the Agreement." 449 F. App'x at 710 (quoting *Grigson*, 210 F.3d at 528). By contrast, here the crux of Plaintiff's claim is that it was harmed because all Defendants (including the non-signatory Defendants) allegedly conspired to curtail its rights that existed by dint of the very Agreement that contained the arbitration clause.

    **B.    Plaintiff Alleges Only Concerted and Interdependent Conduct on the Part of the Manufacturer Defendants.**

The Order also correctly held that "the conspiracy alleged between Schein and the Manufacturer Defendants alleges 'substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" Order at 4 (quoting *Grigson*, 210 F.3d at 527). It is well-established that allegations that signatory and non-signatory defendants "tortiously conspired between themselves and with others to unlawfully injure Plaintiffs" constitute allegations of substantially interdependent and concerted misconduct sufficient to equitably estop a plaintiff. *Ford Motor Co. v. Ables*, 207 F. App'x 443, 448 (5th Cir. 2006) (per curiam); *see also Amegy Bank N.A. v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 451 (S.D. Tex. 2012). Plaintiff alleges an antitrust conspiracy among the non-signatory and signatory Manufacturer Defendants, allegedly resulting in its injury, *e.g.*, Compl. ¶¶ 1, 33. It alleges interdependent and concerted misconduct by all Manufacturer Defendants as a single unit and makes the same allegations against the Manufacturer Defendants collectively—it does not allege any independent conduct whatsoever on the part of Danaher, Kavo, or Dental Imaging

---

*MacLaren*, like *Wholesale Grocery*, did not hold or suggest only breach of contract claims could qualify for equitable estoppel. Rather, it held—quoting *Grigson*—that "[a] signatory plaintiff 'cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *Id.* (quoting 210 F.3d at 528).

11

Technologies other than their alleged participation in a conspiracy with Dental Equipment LLC d/b/a Pelton & Crane, Marus, and DCIE, *id.* ¶¶ 31–33, and it alleges its relationship with Instrumentarium was restricted pursuant to the very same alleged conspiracy, *id.* ¶ 50. Plaintiff asserts all of its claims against all Defendants.[11] And, as many courts have recognized, equitable estoppel is especially appropriate where, as here, a plaintiff sues corporate affiliates of the signatory for the same course of conduct in which the signatory allegedly engaged.[12] Plaintiff's allegations are more than sufficient to meet the second *Grigson* test.[13]

The cases Plaintiff cites, Motion at 14, are all distinguishable. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003), distinguished *Grigson* expressly because in *Bridas*, it was the *signatory* to an arbitration agreement who was seeking to compel a *non-signatory* to arbitrate. *Id.* at 361. That is the opposite of this case. *Moses H. Cone* did not involve equitable estoppel at all—the non-signatory to the arbitration agreement was not even seeking to compel arbitration. 460 U.S. 1. In *Hill*, the second *Grigson* test was easily satisfied

---

[11] *See, e.g., Jureczki v. Bank One Texas, N.A.*, 75 F. App'x 272, 275 (5th Cir. 2003) ("The district court thoroughly deconstructed the Jureczkis' complaint and found that all of their legal and factual allegations were asserted against Defendants collectively.").

[12] *See, e.g., Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000) (nonsignatory could compel arbitration because its potential liability arose and was inseparable from claims against its signatory owner, and because allowing suit to go forward against non-signatory "could have a critical impact in the . . . arbitration"); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.") (quoted in *Wheeler v. Kidder Peabody & Co.*, 8 F.3d 21 (5th Cir. 1993) (unpublished table decision), *available at* 1993 WL 455869, at *3); *Smith/Enron Cogeneration LP v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (compelling arbitration against non-signatory where plaintiff treated signatories and non-signatories "as a single unit").

[13] *See, e.g., Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398–99 (5th Cir. 2006) (test is met when claims against non-signatory depend "in some part" on tortious conduct of signatory); *Palmer Ventures*, 254 F. App'x at 432 ("Key to the decision in *Brown* was the fact that none of the claims against the non-signatories could be considered without analyzing the 'tortious acts' of the signatories.").

because, like here, "[t]he complaint allege[d] that [the signatory and non-signatory defendants] worked in tandem to" harm the plaintiff (in that case, by misappropriating trade secrets and fraudulently inducing a contract), but the Fifth Circuit did not regard the District Court's failure to order arbitration as to the non-signatories an abuse of discretion. 282 F.3d at 349. And in *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003), "the RICO claims [we]re unrelated to any of the contractual relationships." *Id.* at 976–77. Here, by contrast, Plaintiff's allegations of conspiracy are directly related to the contractual relationship created by the Dealer Agreement because the gravamen of Plaintiff's claims is that it was harmed by the restriction and termination of the distribution rights created by that Agreement.

## CONCLUSION

For all the foregoing reasons, Plaintiff has failed to demonstrate Judge Payne's Order was "clearly erroneous" or "contrary to law." Its Motion for Reconsideration should be denied.

Dated:  June 20, 2013

Respectfully submitted,

/s/ Layne E. Kruse
Layne E. Kruse (Bar No. 11742550)
FULBRIGHT AND JAWORSKI LLP
1301 McKinney, Suite 5100
Houston, TX 77010
Tel:  (713) 651-5151
Fax:  (713) 651-5246
lkruse@fulbright.com

Steven R. Kuney (pro hac vice)
Jonathan B. Pitt (pro hac vice)
James H. Weingarten (pro hac vice)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029

*Counsel for Defendants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC and Dental Imaging Technologies Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing MANUFACTURER DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE'S MAY 28, 2013 MEMORANDUM ORDER (DKT. # 44) has been served upon all counsel of record by using the Court's electronic filing system ("EFS") on June 20, 2013.

/s/ Jonathan B. Pitt