IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ARCHER AND WHITE SALES, INC., | § § § | |
| Plaintiff, | § § § | |
| vs. | § § § | CIVIL ACTION NO. 2:12-CV-00572 |
| HENRY SCHEIN, INC., DANAHER CORPORATION, INSTRUMENTARIUM DENTAL INC., DENTAL EQUIPMENT LLC, KAVO DENTAL TECHNOLOGIES, LLC AND DENTAL IMAGING TECHNOLOGIES CORPORATION, | § § § § § § § § § | |
| Defendants. | § § | |

**DEFENDANT HENRY SCHEIN, INC.'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF
MAGISTRATE JUDGE'S MAY 28, 2013 MEMORANDUM ORDER (DKT. # 44)**

Paul F. Schuster
State Bar No. 00784931
Michael V. Powell
State Bar No. 16204400
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Tel:  (214) 740-8000
Fax:  (713) 740-8800
mpowell@lockelord.com
pschuster@lockelord.com

Helene D. Jaffe
Alan R. Kusinitz
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Counsel for Defendant Henry Schein, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .........................................................................................................................2

STANDARD OF REVIEW .........................................................................................................4

ARGUMENT AND AUTHORITIES .........................................................................................5

I.      Judge Payne Properly Held that Equitable Estoppel Applies Where, As Here, Plaintiff's Claims Rely on the Dealer Agreement and Plaintiff Alleges Concerted and Interdependent Misconduct Between the Signatory and Non-Signatory Defendants .............................................................................................5

      A.      Judge Payne Was Correct that Plaintiff's Termination Claim "Relies On" the Dealer Agreement .............................................................................................6

            1.      The Cases Relied on by Archer Do Not Involve Antitrust Conspiracies to Terminate Dealer Contracts ..................................7

            2.      Judge Payne Correctly Applied the "Rely On" Test........................9

      B.      Judge Payne's Holding that Interdependent and Concerted Misconduct Is Sufficient to Compel Arbitration is Correct and Not Contrary to the Law ...............................................................................................................10

II.     Judge Payne Correctly Held That Plaintiff's Illusory Claim for Injunctive Relief Was an Insufficient Basis for Denying the Defendants' Motions to Compel Arbitration..............................................................................................................13

CONCLUSION...........................................................................................................................14

# **TABLE OF AUTHORITIES**

<u>Cases</u> <u>Page</u>

*Aetna Life Ins. Co. v. Humble Surgical Hospital, L.L.C.*,
 Nos. 12-20525, 13-20084, 2013 WL 1490615 (5th Cir. Apr. 12, 2013) ................................12

*Aggarao v. MOL Ship Mgmt. Co.*,
 675 F.3d 355 (4th Cir. 2012) ..........................................................................................5, 11

*Am. Bankers Ins. Group v. Long*,
 453 F.3d 623 (4th Cir. 2006) ....................................................................................5, 9, 10

*Arthur Anderson LLP v. Carlisle*,
 556 U.S. 624 (2009)............................................................................................................5, 9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................................14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)........................................................................................................13, 14

*Brantley v. Republic Mortg. Ins. Co.*,
 424 F.3d 392 (4th Cir. 2005) ................................................................................................9

*Bridas S.A.P.I.C. v. Government of Turkmenistan*,
 345 F.3d 347 (5th Cir. 2003) ..............................................................................................12

*Brown v. Pac. Life Ins. Co.*,
 462 F.3d 384 (5th Cir. 2006) ..............................................................................................11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
 429 U.S. 477 (1977)................................................................................................................6

*Carter v. TD Ameritrade Holding Corp.*,
 721 S.E.2d 256 (N.C. Ct. App. 2012) ..................................................................................9

*Castillo v. Frank*,
 70 F.3d 382 (5th Cir.1995) ...................................................................................................4

*In re Cotton Antitrust Yarn Litig.*,
 No. Civ. A. 1:04MD1622, 2009 WL 618252 (M.D.N.C. Mar. 6, 2009) ................................11

*Delarosa v. CitiFinancial, Inc.*,
 No. 4:11CV384, 2012 WL 894411 (E.D. Tex. Mar. 15, 2012)..............................................11

*DFW Metro Line Servs. v. Southwestern Bell Tel. Co.*,
 901 F.2d 1267 (5th Cir. 1990) ............................................................................................13

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ........................................................................................................... 14

*Futurewei Tech. Inc. v. E. Oliver Capital Grp., L.L.C.*,
    No. 4:09CV455, 2010 WL 1856418 (E.D. Tex. Apr. 15, 2010) ............................................ 11

*Grigson v. Creative Artists Agency, L.L.C.*,
    210 F.3d 524 (5th Cir. 2000) ......................................................................................... passim

*Hill v. GE Power Systems, Inc.*,
    282 F.3d 343 (5th Cir. 2002) .................................................................................................. 12

*Klopfer v. Queens Gap Mountain L.L.C.*,
    816 F. Supp. 2d 281 (W.D.N.C. 2011) ..................................................................................... 9

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    449 F. App'x 704 (10th Cir. 2011) ....................................................................................... 8, 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................................. 6

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) ................................................................................................................... 13

*Petrofac, Inc. v. DynMcDermott Petrol Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) .................................................................................................. 13

*Reddy v. Superior Global Solutions, Inc.*,
    No. 4:11cv845, No. 4:11cv845, 2013 WL 1949948 (E.D. Tex. May 9, 2013) ........................ 5

*Viazis v. Am. Ass'n of Orthodontists*,
    314 F.3d 758 (5th Cir. 2002) .................................................................................................. 11

*In re Wholesale Grocery Products Antitrust Litigation*
    ("*Wholesale Grocery* "), 707 F.3d 917 (8th Cir. 2013) ....................................................... 7, 8

Statutes

28 U.S.C. § 636(b)(1)(A) ................................................................................................................ 4

15 U.S.C. § 1 .................................................................................................................... 2, 8, 9, 11

TEX. BUS. & COM. CODE ANN. § 15.01 *et seq.* ............................................................................. 2

Other

FED. R. CIV. P. 72(a) ...........................................................................................................................4

Local Rule CV-65 ..............................................................................................................................14

Local Rule CV-72(b) ..........................................................................................................................1

Pursuant to Local Rule CV-72(b), Defendant Henry Schein, Inc. ("Schein") respectfully submits this Response to Plaintiff's Motion for Reconsideration of Magistrate Judge's May 28, 2013 Memorandum Order (Dkt. 45, hereinafter "Mot. for Recons.") and also joins the Response of Defendants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation (collectively "Manufacturer Defendants") to Archer and White Sales Inc.'s ("Archer" or "Plaintiff") Motion for Reconsideration (Dkt. 46).

As set forth below, Magistrate Judge Payne's Memorandum Order is fully supported by the applicable legal standards and the record before him.  Accordingly, it should be affirmed in its entirety and Plaintiff's Motion for Reconsideration should be denied in its entirety.

## PRELIMINARY STATEMENT

This is a dealer termination case alleging a conspiracy in violation of the antitrust laws.  Judge Payne granted Schein's and the Manufacturer Defendants' (collectively "Defendants") motions to compel arbitration, correctly concluding that the non-signatory Defendants were entitled to compel arbitration based on the two tests for equitable estoppel articulated in *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000).  In reaching this conclusion, Judge Payne also correctly held under controlling Fifth Circuit precedent that the plain language of the arbitration provision in the dealer agreement mandated that the arbitrator decide the arbitrability of Plaintiff's claims.

Judge Payne correctly found that Archer's dealer termination claims directly relied on the agreement containing the arbitration clause thereby satisfying *Grigson's*

1

"rely on" test. He further correctly concluded that Archer's complaint alleged concerted misconduct among the signatory and non-signatory Defendants, thereby satisfying the second *Grigson* test. Archer's objections to these well-reasoned findings are baseless. As discussed in detail below, Plaintiff's arguments rely on a tortured reading of its complaint, non-binding precedent, factually and legally distinguishable cases, and a prayer for an injunction related to a termination that occurred over five years ago.

Archer argues that Judge Payne erred in holding that its "superficial" claim for injunctive relief did not remove this matter from the purview of the arbitration clause. Archer is simply incorrect. Archer's argument rests on the faulty premise that the conclusory use of the word "injunction" both states a claim for relief and can defeat the strong public policy in favor of arbitration. Moreover, Archer's argument ignores, as Judge Payne correctly held, that under controlling Fifth Circuit law, incorporation of the AAA Rules in an arbitration agreement manifests the parties' intention to have an arbitrator decide questions of arbitrability. Since the arbitration agreement in this case expressly incorporated the AAA Rules, Judge Payne properly concluded that an arbitrator should determine whether Archer's claims are subject to arbitration.

## BACKGROUND

This is a dealer termination case brought under the Sherman Act and Texas analogue to the Act.[1] *See, e.g.*, Complaint ¶¶ 1, 33, 57, 64 (Dkt. 1, hereafter "Compl."). Plaintiff's complaint alleges a conspiracy between Schein, Company X, and the Manufacturer Defendants "to terminate and/or reduce [Plaintiff's] distribution territory"

---

[1] *See* Section 1 of the Sherman Act, 15 U.S.C. § 1, and the Texas Free Enterprise Antitrust Act ("TFEAA"), TEX. BUS. & COM. CODE ANN. § 15.01 *et seq.,* Compl. ¶¶ 57, 64. The TFEAA is "construed in harmony with federal judicial interpretations of comparable federal antitrust statutes…." TEX. BUS. & COM. CODE ANN. § 15.04.

2

in several states. Compl. at ¶¶ 1, 32, 51. The Manufacturer Defendants manufacture and supply dental equipment. Compl. at ¶¶ 10-14. Plaintiff alleges that Schein, Company X and Archer are direct competitors in the distribution of dental equipment. Compl. at ¶ 1. The termination purportedly occurred during the first quarter of 2008. *See* Compl. at ¶ 33.

Plaintiff alleges that it entered into dealer contracts with the Manufacturer Defendants. *See* Compl. at ¶¶ 1, 23. For example, on or about October 4, 2007, Plaintiff executed a written "Dealer Agreement" with Pelton & Crane (the predecessor entity to Defendant Dental Equipment LLC, a subsidiary of Danaher), appointing Plaintiff as an "authorized dealer for sale" of dental equipment in certain geographic territories ("Dealer Agreement"). *See* Manufacturer Defendants' Memorandum in Opposition to Plaintiff's Motion for Reconsideration (Dkt. 46) Ex. C to Pitt Declaration, § 1 (Pitt Declaration and exhibits are at Dkt. 46-1). The Dealer Agreement is "governed by the laws of North Carolina" and contains a provision requiring the arbitration of "*Any* dispute arising under or related to this Agreement" in Charlotte, North Carolina.[2] Pitt. Decl., Ex. C, § 12.8 (emphasis added). The Dealer Agreement also incorporates the rules of the American Arbitration Association, which provide in pertinent part: "[t]he arbitrator shall have the power to rule on his or her own jurisdiction including any objections with respect to the existence, scope or validty of the arbitration agreement." Pitt Decl., Ex. C, § 12.8; Ex. F at R-7(a) (AAA Rules on arbitrator's jurisdiction). The dealer agreements between

---

[2] The full text of the arbitration clause is as follows: "This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets or other intellectual property of Pelton & Crane) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association. The place of arbitration shall be in Charlotte, North Carolina."

3

Plaintiff and the other Manufacturer Defendants contain identical clauses. *See* Pitt. Decl., Ex. D, § 12.8; Ex. E, § 12.8.

Pursuant to the dealer agreements, the Manufacturer Defendants allowed the Plaintiff to sell dental equipment in Oklahoma and other territories. Compl. at ¶ 23. According to the complaint, Schein and Company X conspired with the Manufacturer Defendants, their common supplier, to terminate or reduce Plaintiff's distribution territory from those granted in the Dealer Agreement in Oklahoma, Northwest Arkansas, and elsewhere, thereby restricting Archer's sales to Texas. Compl. at ¶¶ 1, 31-33, 51.

The complaint was filed on August 31, 2012, almost five years after the alleged termination. Plaintiff did not file a motion for a preliminary injunction. *See* attached Schuster Declaration ("Schuster Decl."), Ex. A (hearing transcript) at 37-38. The Manufacturer Defendants and Schein filed timely motions to compel arbitration. (Dkt. 10 & 14). After extensive briefing and oral argument Judge Payne issued a Memorandum Order granting the Defendants' motions to compel arbitration. (Dkt. 44, hereinafter "Order").

Archer has now filed a motion for reconsideration. For the reasons set forth below, the Court should deny Archer's motion for reconsideration.

## STANDARD OF REVIEW

As Plaintiff concedes, Judge Payne's Order is a non-dispositive pretrial motion subject to review under the "clearly erroneous or contrary to law" standard. *See* FED. R. CIV. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir.1995) ("Section 636(b)(1)(A) specifically requires the district court to apply a 'clearly erroneous' standard when reviewing a magistrate judge's ruling on a nondispositive,

4

pretrial motion[.]") (citation omitted); *Reddy v. Superior Global Solutions, Inc.*, No. 4:11cv845, No. 4:11cv845, 2013 WL 1949948 (E.D. Tex. May 9, 2013).

## ARGUMENT AND AUTHORITIES[3]

I. **Judge Payne Properly Held that Equitable Estoppel Applies Where, As Here, Plaintiff's Claims Rely on the Dealer Agreement and Plaintiff Alleges Concerted and Interdependent Misconduct Between the Signatory and Non-Signatory Defendants**

Plaintiff concedes that it is settled law that the doctrine of equitable estoppel allows a non-party to an arbitration agreement to compel a party to the agreement to arbitrate its claim against the non-party. Plaintiff Archer and White Sales, Inc.'s Response in Opposition to Defendant Henry Schein, Inc.'s Motion to Compel Plaintiff to Arbitrate and to Arbitrate and to Stay All Proceedings at 9 (Dkt. 22); *see Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Plaintiff further conceded at the hearing on the motion to compel arbitration and in its briefs that equitable estoppel is appropriate in two independent circumstances. *See* Schuster Decl., Ex. A at 53-54; Dkt. 22 at 9. First, equitable estoppel is proper "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Grigson*, 210 F.3d at 527; *Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 627 (4th Cir. 2006).[4] Second, a non-signatory may compel arbitration when "the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Grigson*, 210 F.3d at 527; *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2012).

---

[3] Schein adopts by reference all arguments made by the Defendants in the briefing before Judge Payne. *See* Dkts. 10, 14, 24, 31.

[4] *See infra* n.6.

5

Nevertheless, Plaintiff claims that Judge Payne erred in holding that its claims relied on the Dealer Agreement and that the Defendants that did not sign the Dealer Agreement could compel arbitration based on the allegations of concerted misconduct between the signatory and non-signatory Defendants. Mot. for Recons. at 13-14. Archer's objections are without merit.

### A. Judge Payne Was Correct that Plaintiff's Termination Claim "Relies On" the Dealer Agreement

Judge Payne correctly held that equitable estoppel applies because Archer "has to rely on its written distributorship agreement with Pelton & Crane in order to allege that it was wrongfully excluded from the market." Order at 4. Archer's argument that its "allegations do not depend on whether it had a right to distribute Pelton & Crane equipment" is specious. Mot. for Recons. at 13. As Judge Payne held, Archer's claim is predicated on the allegation that its distribution rights contained in a written dealer agreement were terminated or curtailed as a result of a conspiracy.[5] *See* Order at 4; Compl. ¶¶ 1, 33, 51. Plaintiff's complaint alleges, for example, that "Archer Dental's authorized distribution territory in its dealer agreements with Danaher allowed it to sell equipment in Texas and parts of Oklahoma and Northwest Arkansas" (Compl. at ¶ 23), and that "Danaher prohibited Archer Dental from selling dental equipment in areas and to customers which the distribution agreements between Archer Dental and Danaher or its predecessors permitted Archer Dental to sell…." Compl. at ¶ 1. As the Plaintiff's own

---

[5] Archer may not avoid equitable estoppel by recasting its dealer termination/restriction cause of action as a price fixing claim. *See, e.g.*, Mot. for Recons. at 5, 13. While the complaint refers to a purported price fixing agreement between Schein and Company X (*see, e.g.*, Compl. at ¶¶ 1, 26), as previously explained (Dkt. 31 at 3-4), Plaintiff, as Schein's horizontal competitor (Compl. at ¶ 1), does not have standing to sue for a price fixing conspiracy. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986) (defendants' competitors could not recover damages for defendants' price fixing); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977).

6

allegations demonstrate, its distribution rights were granted by specific provisions of the Dealer Agreement and therefore, Plaintiff necessarily relies on the Dealer Agreement in alleging that its contractual distribution territory was illegally terminated or restricted. Because Defendants could not have engaged in a conspiracy to terminate or curtail distribution rights that Plaintiff did not possess, Archer's claim directly relies on the Dealer Agreement.

1. The Cases Relied on by Archer Do Not Involve Antitrust Conspiracies to Terminate Dealer Contracts

The Eighth and Tenth Circuit decisions cited by Archer were never cited to Judge Payne and, even if they had been, as out-of-circuit cases they are not binding precedent. Moreover, they are inapposite as they do not involve antitrust conspiracies to terminate dealer contracts. Mot. for Recons. at 11-12. For example, in *In re Wholesale Grocery Products Antitrust Litigation* ("*Wholesale Grocery* "), 707 F.3d 917 (8th Cir. 2013), the retail grocer plaintiffs entered into requirements contracts that contained arbitration clauses with two wholesaler defendants. *Id*. at 920. The requirements contracts did not have any pricing terms. *Id*. The defendant wholesalers swapped assets (including customer contracts) and agreed not to solicit any of the customers that fell within the exchanged contracts. *Id*. Plaintiffs claimed that the asset swap was an agreement to fix prices. *Id*. When the retailers filed suit, the wholesalers invoked the arbitration clauses in the supply agreements. *Id*. at 920-21. In an effort to avoid arbitration, the plaintiffs generally sued the wholesaler defendant with whom they did not have a contract. *Id*. at 920.

The Eighth Circuit held that defendants could not rely on equitable estoppel as the plaintiffs' price fixing claims were not "intertwined with the agreement containing the

arbitration clause" (*id*. at 923) because the price fixing claims, unlike here, did not arise directly from violations of the terms of the requirements contracts. *Id*. at 923-24 ("Moreover, the Retailers' antitrust claims are premised on paying artificially inflated prices, but since none of the Retailers' contracts with the Wholesalers specify price terms, the Retailers' claims do not involve alleged violation of any terms of those contracts."). Instead, the price fixing claims arose from the swap agreement. Since the plaintiffs' antitrust claims existed independently of the agreements that contained the arbitration clause, the Eighth Circuit concluded that equitable estoppel was inappropriate. *Id*. at 923. Here, in contrast, there would be no antitrust conspiracy to terminate Archer if there were no dealer contract, as Jude Payne properly found.

Similarly, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 707 (10th Cir. 2011), is not a dealer termination case under Section 1 of the Sherman Act, but a monopolization case under Section 2 of the Sherman Act. In *Lenox MacLaren*, Plaintiff, Lenox MacLaren ("LM"), manufactured a surgical bone grinder used to mill bone for surgery. *Id*. at 705. LM entered into a distribution agreement ("Agreement") relating to its bone grinder with Medtronic USA, an affiliate of Medtronic Inc. *Id*. Another Medtronic company manufactured a rival bone grinder. *Id*. at 707. LM alleged that defendant Medtronic Inc. engaged in a scheme to monopolize the bone grinder market by recalling all the LM grinders it had distributed and attempting to replace them with Medtronic grinders. *Id*. Even though Medtronic USA was not a party to the action, Medtronic Inc. moved to compel arbitration based on the Agreement which contained an arbitration clause. *Id*. However, because Medtronic did not sign the Agreement, the motion to compel arbitration relied on equitable estoppel. The motion was denied

8

because the monopolization claim would have existed with or without the Agreement and thus did "not form the legal basis for LM's claims." *Id*. at 709-10.

Here, Archer's antitrust claim is premised on the fact that its distribution rights were improperly terminated and/or curtailed. Any such right that Plaintiff had to sell Pelton & Crane equipment was derived from and arose out of the Dealer Agreement, which contained an arbitration clause. Therefore, unlike *Medtronic*, the alleged anticompetitive conduct in this case is inextricably intertwined with the agreement containing an arbitration clause.

### 2. Judge Payne Correctly Applied the "Rely On" Test

Defendants cited *American Bankers Ins. Group v. Long*, 453 F.3d 623 (4th Cir. 2006), to Judge Payne as illustrative of why equitable estoppel correctly applies to this case.[6] In *Long*, plaintiffs purchased promissory notes from TLP pursuant to subscription agreements that contained an arbitration clause. *Id*. at 625. When TLP refused to pay interest on the promissory notes or return the plaintiffs' principal, the Longs filed suit against American Bankers Insurance Group ("ABIG"), a non-signatory to the contract, alleging that ABIG engaged in a fraudulent scheme with TLP to issue worthless promissory notes and ensure that it was in the position of first priority in the event of a default. *Id*. Specifically, plaintiffs alleged claims for interference with contract,

---

[6] The Supreme Court has held that state law governs the applicability of equitable estoppel. *See Carlisle*, 556 U.S. at 631. In this case, the application of state law or Fifth Circuit law yields the same result. North Carolina law governs the Agreement at issue. *See* Pitt Decl., Ex. C, § 12.8. North Carolina's equitable estoppel law is the same as the Fourth Circuit's law, and vice versa. *Klopfer v. Queens Gap Mountain L.L.C.*, 816 F. Supp. 2d 281, 293 n.5 (W.D.N.C. 2011) ("Plaintiffs fail to note, however, that North Carolina's law of equitable estoppel is the same as Fourth Circuit law."); *see also Carter v. TD Ameritrade Holding Corp.*, 721 S.E.2d 256, 263 (N.C. Ct. App. 2012) (citing *Am. Bankers Ins. Group v. Long*, 453 F.3d 623 (4th Cir. 2006)). The Fourth Circuit and thus North Carolina's equitable estoppel law employs the same test as the Fifth Circuit. *Compare Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005), *with Grigson*, 210 F.3d at 527. Accordingly, this Court's analysis would not materially differ if it elected to apply North Carolina law.

securities fraud and negligence, civil conspiracy, unjust enrichment and rescission, and violations of South Carolina's Unfair Trade Practices Act. *Id*. at 625-26.

The Court reversed the district court's denial of arbitration even though ABIG was a non-signatory to the subscription agreements. *Id*. at 626. In so holding, the Court explained that arbitration is appropriate where "plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." *Id*. at 629. The Court further held that the plaintiff/signatory was not required to assert a claim "for breach of the contract containing the arbitration clause." *Id*. at 627-28. Arbitration was appropriate even though the claims were for torts and statutory violations because they all "relied on" the subscription agreements containing the arbitration clause. *Id*. at 630. "[W]ithout the alleged breach of the Note, the [plaintiffs] would have no cause to complain." *Id*.

The rationale in *Long* applies with equal force to Plaintiff's claims in this case. Here, Plaintiff alleges that its distribution rights were terminated or curtailed as a result of a conspiracy. Compl. ¶¶ 32-33, 50-51. These rights were granted pursuant to the Dealer Agreement, and therefore, Plaintiff necessarily "relies on" the Dealer Agreement in alleging that its distribution territory was terminated or constricted.

**B. Judge Payne's Holding that Interdependent and Concerted Misconduct Is Sufficient to Compel Arbitration is Correct and Not Contrary to the Law**

Judge Payne held that the Defendants could compel arbitration because "the conspiracy alleged between Schein and the Manufacturer Defendants alleges 'substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the [Dealer Agreement]." Order at 4. Archer maintains that this holding was erroneous because concerted misconduct between a signatory and a non-

10

signatory is insufficient standing alone to compel arbitration.[7] Mot. for Recons. at 14. In advocating this position, Archer misreads *Grigson* and ignores a long line of decisions cited to Judge Payne, holding that equitable estoppel applies when a "signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to a contract." *See, e.g.*, *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398-99 (5th Cir. 2006) (holding non-signatory defendants could compel arbitration where there was no way to bring actions against non-signatory defendants without considering the conduct of the signatory defendants); *see also Aggarao*, 675 F.3d at 374-75; *Delarosa v. CitiFinancial, Inc.*, No. 4:11CV384, 2012 WL 894411, at *6 (E.D. Tex. Mar. 15, 2012); *Futurewei Tech. Inc. v. E. Oliver Capital Grp., L.L.C.*, No. 4:09CV455, 2010 WL 1856418, at *4 (E.D. Tex. Apr. 15, 2010); *In re Cotton Antitrust Yarn Litig.*, No. Civ. A. 1:04MD1622, 2009 WL 618252, at *5 n.8 (M.D.N.C. Mar. 6, 2009).[8]

As Judge Payne correctly found, Plaintiff's complaint easily satisfies the second test for equitable estoppel because Archer's claim is premised on an alleged conspiracy involving concerted action between Schein, Company X, and Pelton & Crane (Danaher) to terminate and/or restrict Archer's distribution territories. Compl. ¶¶ 31-33. Indeed, concerted action is the *sine qua non* of a claim under Section 1 of the Sherman Act (and its Texas counterpart). *See Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 761 (5th Cir. 2002) ("[t]o establish a § 1 violation, a plaintiff must demonstrate concerted action").

---

[7] Even if Plaintiff was correct that concerted misconduct between a signatory and non-signatory defendant is insufficient standing alone to trigger *Grigson's* second test, the Defendants in this case would still be entitled to the benefit of equitable estoppel because, as explained above, Defendants satisfy *Grigson's* first test.

[8] As noted above, Plaintiff's citations to out of Circuit and Texas state court decisions (Mot. for Recons. at 14-15) are unavailing as these are not binding on this Court.

11

Accordingly, since Pelton & Crane, a Manufacturer Defendant, signed the Dealer Agreement, Schein, a non-signatory, may compel arbitration based on Plaintiff's allegations of concerted misconduct between a signatory and non-signatory to an arbitration agreement.

Plaintiff's citations to Fifth Circuit cases purportedly holding that "concerted and intertwined misconduct" is insufficient to compel arbitration are inapposite. Mot. for Recons. at 14. In *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 360-61 (5th Cir. 2003), the Fifth Circuit refused to apply equitable estoppel because the *plaintiff* rather than the *defendant* sought to compel arbitration. According to the court "the distinction is not one without a difference." *Id*. at 361. Here the Defendants moved to compel the Plaintiff to arbitrate, accordingly, *Bridas S.A.P.I.C.* does not counsel against the application of the "concerted and intertwined misconduct" test.

Similarly, in *Hill v. GE Power Systems, Inc.*, 282 F.3d 343 (5th Cir. 2002), the court specifically held that a defendant may rely on equitable estoppel to compel arbitration when the "signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id*. at 349. However, applying an abuse of discretion standard, the Fifth Circuit declined to overturn the district court's denial of equitable estoppel. *Id*. Accordingly, *Hill* stands for the simple proposition that the district court's decision to apply equitable estoppel is entitled to a strong measure of deference.[9]

---

[9] Plaintiff's citation to *Aetna Life Ins. Co. v. Humble Surgical Hospital, L.L.C.*, Nos. 12-20525, 13-20084, 2013 WL 1490615 (5th Cir. Apr. 12, 2013), does not advance its argument as this case also stands for the proposition that a district court's ruling on the application of equitable estoppel is entitled to a substantial measure of deference. Mot. for Recons. at 14 n.31.

**II. Judge Payne Correctly Held That Plaintiff's Illusory Claim for Injunctive Relief Was an Insufficient Basis for Denying the Defendants' Motions to Compel Arbitration**

Plaintiff argues that Judge Payne erred in compelling arbitration because its "claim" for injunctive relief removes this case from the scope of the Dealer Agreement's arbitration clause. Mot. for Recons. at 8. Schein adopts the arguments of the Manufacturer Defendants that Judge Payne correctly held that under *Petrofac, Inc. v. DynMcDermott Petrol Operations Co.*, 687 F.3d 671 (5th Cir. 2012), the incorporation of the AAA Rules in the Dealer Agreement reflects the parties' intentions to have the arbitrator decide any questions of arbitrability. Accordingly, for the reasons stated more fully in the Manufacturer Defendants' Response (Dkt. 46), Judge Payne properly compelled arbitration.

In addition, the Order was correct because Archer's complaint does not allege facts supporting injunctive relief, and does not plead the elements of a claim for a preliminary or a permanent injunction. Relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), Plaintiff concedes that the arbitration clause's exclusion is only triggered by a "claim for injunctive relief that is 'plausible on its face'…." Mot. for Recons. at 4. Here, Archer's inclusion of the word "injunction" a handful of times in its complaint falls well short of pleading a plausible claim for injunctive relief. *See* Compl. at ¶¶ 61, 68, introduction, prayer for relief. The strong federal presumption of arbitration cannot be defeated by such word games. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

"The traditional prerequisites for injunctive relief are applicable to antitrust cases." *DFW Metro Line Servs. v. Southwestern Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th

Cir. 1990). Accordingly, a plaintiff seeking permanent injunctive relief must plead: (1) irreparable harm; (2) inadequate remedies; (3) balancing of the hardships; and (4) the public interest. *See, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Archer's complaint fails to plead each and everyone of these elements. This failure is not cured by asserting that the complaint alleges an "ongoing" "boycott." Under *Twombly* such statements are conclusions and are not entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Archer's argument is further belied by its course of conduct throughout this litigation. According to Local Rule CV-65 any application for a preliminary injunction must be "made on an instrument separate from the complaint." To date, Archer has not filed a separate instrument requesting injunctive relief. In addition, during oral argument Archer admitted that it had not filed a preliminary injunction and further stated that it had not determined whether it would seek such relief. Schuster Decl., Ex. A at 37-38. Finally, when queried by Judge Payne whether its complaint was drafted in contemplation of the Dealer Agreement's exclusion for actions seeking injunctive relief, Archer offered an evasive answer. *Id*. at 38. Given these facts and circumstances, Judge Payne properly rejected Plaintiff's efforts to plead around the arbitration clause.

## **CONCLUSION**

For the foregoing reasons, the Court should affirm Judge Payne's Order compelling arbitration.

Dated: June 20, 2013    Respectfully submitted,

/s/ Paul F. Schuster_____
Paul Schuster
State Bar No. 00784931
Michael V. Powell
State Bar No. 16204400
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Tel:  (214) 740-8000
Fax:  (713) 740-8800
mpowell@lockelord.com
pschuster@lockelord.com

Helene D. Jaffe
Alan R. Kusinitz
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
hjaffe@proskauer.com
akusinitz@proskauer.com

*Counsel for Defendant Henry Schein, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by using the Court's electronic filing system on July 20, 2013.

/s/ Paul F. Schuster