# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| **ARCHER AND WHITE SALES, INC.,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| **HENRY SCHEIN, INC., DANAHER CORPORATION, INSTRUMENTARIUM DENTAL INC., DENTAL EQUIPMENT LLC, KAVO DENTAL TECHNOLOGIES, LLC and DENTAL IMAGING TECHNOLOGIES CORPORATION,** | § § § § § § § § | **CIVIL ACTION NO. 2:12-CV-00572-JRG-RSP JURY** |
| Defendants. | § § | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE'S MAY 28, 2013 MEMORANDUM ORDER (DKT. #44)**

Jerry L. Beane
State Bar No. 01966000
jerrybeane@andrewskurth.com
Kay Lynn Brumbaugh
State Bar No. 00785152
kaylynnbrumbaugh@andrewskurth.com
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, TX 75201
214.659.4400 Telephone
214.659.4401 Facsimile

**ATTORNEYS FOR PLAINTIFF
ARCHER AND WHITE SALES, INC.**

– i –

TABLE OF CONTENTS

Index Of Authorities ................................................................................................................. ii

I.    Reply Arguments And Authorities.................................................................................1

      A.    Whether the exception to arbitration "for actions seeking injunctive relief" applies is a question for the Court, not an arbitrator ...................................1

      B.    As this is an "action seeking injunctive relief"—the Magistrate Judge even found so—the exception is triggered as a matter of law................................2

      C.    This is an action for antitrust conspiracy, not a "dealer termination" case—Archer's claims against the nonsignatory conspirators do not rely on the 2007 Agreement ...............................................................................3

      D.    For a nonsignatory to compel arbitration based on concerted misconduct, the misconduct must be founded on and intertwined with the arbitration agreement.................................................................................5

II.   Conclusion .....................................................................................................................6

Certificate Of Service ................................................................................................................7

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Bankers Ins. Group v. Long*,
   453 F.3d 623, 630 (4th Cir. 2006)................................................................................. 4

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624, 632 (2009)................................................................................................2

*Brown v. Pacific Life Insurance Co.*,
   462 F.3d 384 (5th Cir. 2006)......................................................................................... 6

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
   485 U.S. 717 (1988) ...................................................................................................... 4

*Celanese Corp. v. Boc Group PLC*,
   CIV.A.3:06-CV-1462-P, 2006 WL 3513633, at *3 (N.D. Tex. Dec. 6, 2006)........................ 2

*Denny's Marina, Inc., v. Renfro Prods., Inc.*,
   8 F.3d 1217, 1221 (7th Cir. 1993)................................................................................... 4

*Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*,
   173 F.3d 946, 950 (5th Cir. 1999).................................................................................. 3

*Grigson v. Creative Artists Agency L.L.C.*,
   210 F.3d 524 (5th Cir. 2000)..................................................................................... 3, 4

*Haddock v. Quinn*,
   287 S.W.3d 158, 173–75 (Tex. App.—Fort Worth 2009, pet. denied) .................................. 1

*In re Merrill Lynch Trust Co., FSB*,
   235 S.W.3d 185, 194 (Tex. 2007) ................................................................................. 5

*In re Publication Paper Antitrust Litig.*,
   690 F.3d 51, 61 (2d Cir. 2012) ...................................................................................... 4

*James & Jackson, LLC v. Willie Gary, LLC*,
   906 A.2d 76, 80–81 (Del. 2006).................................................................................... 1

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
   449 F. App'x 704, 709 (10th Cir. 2011) ......................................................................... 4

*McCaskey v. Cont'l Airlines, Inc.*,
   133 F. Supp. 2d 514, 526 (S.D. Tex. 2001)..................................................................... 2

HOU:3327741.3

– iii –

*McLellan v. Miss. Power & Light Co.*,
   545 F.2d 919, 927 n.34 (5th Cir. 1977) ............................................................................... 6

*QPro Inc. v. RTD Qual. Servs. USA, Inc.*,
   761 F. Supp. 2d 492, 497 (S.D. Tex. 2011) ........................................................................ 2

*R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*,
   384 F.3d 157, 162–63 (4th Cir. 2004) ................................................................................ 5

*Texaco, Inc. v. Dagher*,
   547 U.S. 1, 5 (2006) ............................................................................................................ 4

Plaintiff Archer and White Sales, Inc. ("Archer") files this reply in support of its motion for reconsideration of the May 28, 2013, Memorandum Order (Dkt#44) (the "Order"):

## I. REPLY ARGUMENTS AND AUTHORITIES

**A. Whether the exception to arbitration "for actions seeking injunctive relief" applies is a question for the Court, not an arbitrator**

The Manufacturer Defendants complain that Archer "never acknowledges" the basis for the Magistrate Judge's ruling is his belief that Archer and Pelton & Crane agreed to arbitrate "the question whether [*sic*] the arbitration clause [in their 2007 Agreement] applied to this dispute."[1] Archer not only "acknowledged" this belief as the Order's basis—it proved it clearly erroneous.

Defendants' argument, accepted by the Magistrate Judge, is that the Fifth Circuit reserves "issues of arbitrability to an arbitrator where, as here, the parties adopt the [American Arbitration Association ("AAA")] rules."[2] However, the 2007 Agreement does not adopt the AAA rules for ***all*** disputes between Archer and Pelton & Crane. In particular, it does ***not*** adopt the AAA rules for actions, like this one, in which a party is seeking injunctive relief. Specifically, the Agreement cabins application of the AAA rules to disputes "arising under or related to" the Agreement that are not "actions seeking injunctive relief" or "disputes relating to trademarks, trade secrets or other intellectual property of Pelton & Crane." Under the Agreement, the AAA rules apply "***except for***" these two types of actions. It is thus for the court to decide whether a dispute is within the scope of the exception.[3]

Moreover, even if an arbitration agreement "may evidence clear and unmistakable intent to arbitrate questions of arbitrability between the two parties to that agreement"—and the 2007

---

[1] Dkt#46 at 1.

[2] *Id.* at 4.

[3] *See, e.g., James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80–81 (Del. 2006) (holding that because arbitration agreement did not generally provide for arbitration of all disputes under AAA rules, but expressly allowed parties to seek injunctive relief and specific performance in the courts, something more was needed to establish clear and unmistakable intent to delegate issues of arbitrability to the arbitrator); *Haddock v. Quinn*, 287 S.W.3d 158, 173–75 (Tex. App.—Fort Worth 2009, pet. denied) (discussing *James & Jackson*, and holding that "the general reference in the arbitration agreement to the AAA rules, without more," did not clearly and unmistakably manifest the parties' intent to delegate questions of arbitrability to the arbitrator).

Agreement does not—"this hardly evidences a clear intent between a nonsignatory and [signatory] Plaintiffs to arbitrate questions of arbitrability." *Celanese Corp. v. Boc Group PLC*, CIV.A.3:06-CV-1462-P, 2006 WL 3513633, at *3 (N.D. Tex. Dec. 6, 2006). In other words, an arbitrator only has power to determine arbitrability as to the agreement's signatories. *QPro Inc. v. RTD Qual. Servs. USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Thus, whether Archer's suit is an "action seeking injunctive relief" and whether nonsignatories (such as Defendant Instrumentarium with whom there was no agreement containing an arbitration clause and Defendant Schein, a competitor with whom Archer had no agreement) can invoke arbitration under the 2007 Agreement with Pelton & Crane, are questions for the Court.

**B.     As this is an "action seeking injunctive relief"—the Magistrate Judge even found so—the exception is triggered as a matter of law**

The Magistrate Judge found that "[o]n the most superficial level, this lawsuit is clearly an action seeking injunctive relief," but deemed this purported "superficiality" insufficient to trigger the exception because—he believed—Archer's damages claim predominates over its request for injunctive relief.[4] As Archer explains in its motion, however, ***nothing*** in the 2007 Agreement allows the Magistrate Judge (or anyone else) to determine whether the arbitration exclusion is triggered based on conjecture about the "predominance" of the relief sought. All "actions seeking injunctive relief" are exempt from arbitration, regardless of whether damages are also sought.

Defendants offer no response to Archer's authorities establishing that an "action" encompasses "all the parties ***and claims***" before the court. *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 526 (S.D. Tex. 2001). Instead, Defendants level cursory accusations that Archer's requests for injunctive relief are "boilerplate" (the Manufacturer Defendants) or "word games" (Schein).[5] The Court need only look at the Complaint to see that Defendants' accusations are hollow. In its sixty-nine numbered paragraphs, the Complaint provides detailed facts

---

[4] Order at 2–3.

[5] Dkt#46 at 7; Dkt#47 at 13.

explaining Defendants' conspiracy in violation of specifically-identified antitrust laws, identifying how their conspiracy has harmed and continues to harm Archer, and pleading for injunctive relief and damages. This is more than the law requires. *See Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 950 (5th Cir. 1999) ("[A] complaint will be deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist.").

Schein also faults Archer for not filing "a separate instrument requesting injunctive relief," and for giving what Schein characterizes as an "evasive answer" when queried as to whether Archer's complaint was drafted in contemplation of the exclusion for actions seeking injunctive relief.[6] Archer's alleged failure to comply with the separate instrument local rule is irrelevant to whether this action is one seeking injunctive relief (and it is). Moreover, it is telling that Schein does not quote Archer's supposedly "evasive answer"—doubtless because there is ***nothing*** evasive about it: "[Archer's counsel]: [W]e drafted it [*i.e.*, the complaint] seeking all the relief that we thought was appropriate, Your Honor. And it certainly happens that part of the relief that we believe is appropriate and the nature of this action is one that takes it out of the arbitration provision."[7] The only evasion in this case is Defendants' evasion of Archer's right under the 2007 Agreement not to have to arbitrate this action seeking injunctive relief.

C. **This is an action for antitrust conspiracy, not a "dealer termination" case—Archer's claims against the nonsignatory conspirators do not rely on the 2007 Agreement**

Schein and the Manufacturer Defendants parrot that this is "a dealer termination case" which relies on "the allegation that [Archer's] distribution rights" under the 2007 Agreement with Pelton & Crane "were terminated or curtailed as a result of a conspiracy."[8] As such, they chorus in unison, Archer's claims "rely on" the 2007 Agreement and must be arbitrated under

---

[6] Dkt#47 at 14.

[7] Dkt#47-2 at 38.

[8] Dkt#47 at 1, 6; *see* Dkt#46 at 8–9, 10 n.9.

*Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000). This is an antitrust conspiracy action, however, not a "dealer termination case," and Archer does not rely on the 2007 Agreement to prove the nonsignatory Defendants' antitrust violations. As Archer explained in the motion for reconsideration, a party does not "rely on" an agreement merely because the agreement is "factually significant" to the party's claims. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011).[9] Rather, a party only relies on an agreement if, **without it**, the party "would have no cause to complain." *Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 630 (4th Cir. 2006).[10] Archer has cause to complain—and is complaining—about the nonsignatory Defendants independently of the 2007 Agreement.

In the typical "dealer termination" case, one dealer complains to the manufacturer that another dealer is discounting the manufacturer's products, and the manufacturer responds to the complaint by terminating the discounting dealer. *E.g.*, *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717 (1988). Without more, there is no antitrust violation in that situation. Here, in contrast, the dealers entered into a horizontal price fixing agreement; they agreed not to compete on price and not to bid against each other. *See* Compl. ¶¶ 1–3, 19–52. In furtherance of this price-fixing conspiracy, the dealers got the Manufacturer Defendants to restrict or terminate Archer. *Id.* "Concerted action by dealers to protect themselves from price competition by discounters constitutes horizontal price-fixing." *Denny's Marina, Inc., v. Renfro Prods., Inc.*, 8 F.3d 1217, 1221 (7th Cir. 1993). And horizontal price-fixing is a *per se* antitrust violation. *See In re Publication Paper Antitrust Litig.*, 690 F.3d 51, 61 (2d Cir. 2012) ("An agreement between competitors to fix prices, known as a horizontal price-fixing agreement, categorically constitutes an unreasonable restraint, and, accordingly, is unlawful *per se*.") (citing *Texaco, Inc. v. Dagher*, 547 U.S. 1, 5 (2006)).

---

[9] While the Manufacturer Defendants try to distinguish *Lenox MacLaren* by noting the Tenth Circuit was analyzing the Eleventh Circuit law of equitable estoppel, the Fifth Circuit's *Grigson* test is itself based on Eleventh Circuit law. *See Grigson*, 210 F.3d at 527 ("We agree with the . . . the Eleventh Circuit.").

[10] In *Long*, unlike here, each of the plaintiffs' claims against the nonsignatory defendant were "dependent upon their allegation that [the defendant] breached a duty created 'solely by the [contract containing the arbitration clause].'" 453 F.3d at 629–30.

"To prevail on a claim of horizontal price fixing, a plaintiff must demonstrate that the defendants entered into a conspiracy formed for the purpose and with the effect of raising prices." *Id.* (internal citation omitted). The 2007 Agreement with Pelton & Crane thus does not form the legal basis of the duties owed to Archer by the dealers and the nonsignatory Manufacturer Defendants.[11] Those duties are imposed by the federal and state antitrust laws. Archer does not rely on the Agreement to establish the illegal price-fixing conspiracy of these nonsignatory conspirators. The liability of these Defendants will be determined by their duties under federal and state antitrust law, not by any duty under the 2007 Agreement. *See R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 162–63 (4th Cir. 2004) (holding that general contractor could not force homeowners association to arbitrate because the legal duties the builder allegedly violated arose from state law, not the general contract). When Defendants assert that "there would be no antitrust conspiracy to terminate Archer if there were no dealer contract [*i.e.*, 2007 Agreement]," therefore, they misstate both Archer's claims and the law.[12] Defendants' conspiracy was to fix prices, and the restrictions upon Archer were simply some actions (of many) that one manufacturer took in furtherance of that conspiracy. As such, the Magistrate Judge clearly erred in holding Archer "relies on" the Agreement for its claims against the nonsignatories.

D.  **For a nonsignatory to compel arbitration based on concerted misconduct, the misconduct must be founded on and intertwined with the arbitration agreement**

Lastly, Defendants contend that concerted misconduct between a signatory to an arbitration agreement and nonsignatories is sufficient to allow the nonsignatories to compel arbitration, even if Archer's antitrust claims do not rely on the 2007 Agreement. Again, however,

---

[11] The Manufacturer Defendants assert that "the Complaint does not in fact allege the Manufacturer Defendants conspired to 'fix prices,'" and does not "allege Danaher 'acquired . . . its manufacturing competitors." Dkt#46 at 2 n.2. Not so. *See* Compl. at ¶2 ("Defendants and Company X have carried out their conspiracy through a services of unlawful activities, including, but not limited to . . . agreements to fix prices, and boycotts."); *Id.* at ¶21 ("Beginning in or around 2004, Danaher embarked on a plan to consolidate the dental equipment manufacturing industry. Danaher has become the largest manufacturer of dental equipment, in part by acquiring multiple smaller manufacturers of dental equipment over the years.").

[12] Dkt#47 at 8; *see also id.* at 9; Dkt#46 at 11.

"[c]onspiracy is a tort, not a rule of contract law." *In re Merrill Lynch Trust Co., FSB*, 235 S.W.3d 185, 194 (Tex. 2007) (holding that nonsignatories could not compel signatory to arbitrate).[13] A nonsignatory cannot compel arbitration under an equitable estoppel theory unless the plaintiff's claims ***against that nonsignatory*** are founded in and intertwined with the obligations imposed by the contract containing the arbitration clause.

For example, Defendants rely on *Brown v. Pacific Life Insurance Co.*, 462 F.3d 384 (5th Cir. 2006).[14] Yet in *Brown* the Fifth Circuit recognized that both branches of *Grigson* rest on the reasoning that "equity does not allow a party to 'seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory,'" and refused to compel arbitration because consideration of the contract was essential to recovery against the non-signatory defendants. *Id.* at 398. As Archer seeks to hold the nonsignatory Defendants liable for their antitrust conspiracy (*see infra*), not pursuant to duties imposed by the 2007 Agreement, it is clear error to compel Archer to arbitrate those claims.

## II.  CONCLUSION

Defendants note more than once that Archer's citations to "out of Circuit and Texas state court decisions" are not binding on this Court.[15] Archer never claimed otherwise. The Court should note, however, that Archer's authorities include Eighth and Tenth Circuit decisions on the arbitrability of statutory antitrust claims. Defendants try, and fail, to distinguish Archer's antitrust cases on their facts, but do not identify any errors of legal reasoning, or any difference between the laws of the Eighth and Tenth Circuits and this one. Nor do Defendants discuss any antitrust authorities of their own. Archer's motion for reconsideration should be granted.

---

[13] *See also McLellan v. Miss. Power & Light Co.*, 545 F.2d 919, 927 n.34 (5th Cir. 1977) (recognizing that civil conspiracy is a tort).

[14] *See* Dkt#47 at 11; *see also* Dkt#46 at 12 n.13.

[15] Dkt#47 at 11 n.8; *see id.* at 7; Dkt#46 at 10 n.10.

– 7 –

Dated: June 27, 2013

>Respectfully submitted,
>
>By: */s/ Jerry L. Beane*
>    Jerry L. Beane
>    State Bar No. 01966000
>    jerrybeane@andrewskurth.com
>    Kay Lynn Brumbaugh
>    State Bar No. 00785152
>    kaylynnbrumbaugh@andrewskurth.com
>    ANDREWS KURTH LLP
>    1717 Main Street, Suite 3700
>    Dallas, TX 75201
>    214.659.4400 Telephone
>    214.659.4401 Facsimile
>
>    **ATTORNEYS FOR PLAINTIFF**
>    **ARCHER AND WHITE SALES, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2013, a copy of the foregoing document was filed and served by operation of the electronic filing system of the U.S. District Court for the Eastern District of Texas upon all counsel of record who have consented to receive notice of filings in this matter.

>    */s/ Kay Lynn Brumbaugh*
>    Kay Lynn Brumbaugh