# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ARCHER AND WHITE SALES, INC.<br>*Plaintiff*,<br>v.<br><br>HENRY SCHEIN, INC. ET AL.,<br>*Defendants*. | Civil Action No. 2:12-cv-572-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Reconsideration (Dkt. No. 45) of the Magistrate Judge's Memorandum Order (Dkt. No. 44). Having fully considered the briefing and the Parties' arguments at the hearing on November 9, 2016, the Court finds that Plaintiff's Motion should be and hereby is **GRANTED**.

I. BACKGROUND

   a. Factual Background

According to the Complaint, Plaintiff Archer and White Sales ("Plaintiff") is a distributor of dental equipment that competes directly against Defendant Henry Schein, Inc. ("Schein") and Company X (not named as a defendant in this action). Plaintiff is allegedly known nationally among dental professionals for its low prices and high-quality service. (Compl. at 7.) Schein is alleged to be the largest distributor of dental equipment in the United States. (Compl. at 5.) Defendant Danaher Corporation ("Danaher") is allegedly the largest manufacturer of dental equipment in the United States. (Compl. at 4.) The remaining defendants—Instrumentarium, Dental Equipment LLC d/b/a Pelton & Crane, Dental Equipment LLC d/b/a DCI Equipment,

KaVo, and Gendex—are alleged to be wholly-owned subsidiaries of Danaher, which were acquired by Danaher since 2004. (Compl. at 4–7.) Danaher and these subsidiaries are sometimes referred to herein as the "Manufacturer Defendants."

Plaintiff alleges that Schein and Company X have conspired to fix prices and to refuse to compete with each other in the sale of dental equipment to dental professionals. (Compl. at 1–2.) Moreover, Plaintiff alleges that Schein and Company X have conspired with the Manufacturer Defendants to terminate and/or reduce Plaintiff's distribution territory in response to Plaintiff's low prices. (Compl. at 2.) Plaintiff claims that this termination constitutes an illegal boycott, orchestrated by the Defendants to perpetuate the price-fixing agreement and the agreement not to compete between Schein and Company X. (Compl. at 2.) Plaintiff further claims that Danaher, as the common supplier to all three horizontal competitors, knowingly participated in this illegal boycott. (Compl. at 2.)

### b. Procedural Background

On August 31, 2012, Plaintiff filed suit against Defendant Schein and the Manufacturer Defendants alleging violations of Section 1 of the Sherman Act, violations of Section 16 of the Clayton Act, and violations of the Texas Free Enterprise and Antitrust Act. Soon after, on September 26, 2012, the Manufacturer Defendants filed a Motion to Compel Arbitration and Stay All Proceedings (Dkt. No. 10). A few days later, Defendant Schein also filed a Motion to Compel Plaintiff to Arbitrate and to Stay Proceedings (Dkt. No. 14). After holding a hearing on these the Motions, the Magistrate Judge on May 28, 2013, issued an Order granting both Motions, staying the action pending arbitration of the asserted claims, and directing the Parties to notify the Court upon completion or abandonment of the arbitration process (Dkt. No. 44).

On June 10, 2013, Plaintiff filed this Motion for Reconsideration of the Magistrate Judge's Order (Dkt. No. 45). Although Plaintiff styled its filing as a "Motion for Reconsideration," the first sentence of the Motion reads: "Plaintiff Archer and White Sales, Inc. ('Archer') objects to and moves for reconsideration of the May 28, 2013, Memorandum Order." (Dkt. No. 45 at 1.) As such, it was unclear whether Plaintiff intended to have the Magistrate Judge reconsider his Order or whether Plaintiff intended to file objections to the Order under Rule 72(a). Having reviewed the Motion in full, and noting that Plaintiff filed its Motion within fourteen days of the Magistrate Judge's Order, the Court finds that Plaintiff intended its Motion to be considered as objections to the Magistrate Judge's Order, rather than as a Motion for the Magistrate Judge to reconsider that Order. The Court now reviews the Motion accordingly.

## II.  STANDARD OF REVIEW

A party may file objections to a magistrate judge's order regarding a nondispositive matter within fourteen days of the order. Fed. R. Civ. Pro. 72(a).[1] A district judge may modify or set aside any part of the order that is clearly erroneous or contrary to law. *Id.*

## III.  LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), an arbitration agreement that involves interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law

---

[1] The Fifth Circuit has yet to determine the appropriate standard for reviewing a magistrate judge's ruling on motions to compel arbitration. *Lee v. Plantation of Louisiana, L.L.C.*, 454 F. App'x 358, 360 (5th Cir. 2011) ("[W]e need not reach the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of the standard of review by the district judge of the magistrate judge's order.") Other courts, however, have concluded that a ruling on a motion to compel arbitration is a non-dispositive ruling. *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 13–15 (1st Cir. 2010); *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 134–35 (3d Cir. 2014); *Tige Boats, Inc. v. Interplastic Corp.*, No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *1–3 (N.D. Tex. Dec. 21, 2015) (holding that the magistrate judge's ruling compelling arbitration was non-dispositive where the ruling stayed the case rather than dismissing the case pending arbitration). Moreover, when "review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard," and thus "there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard." *PowerShare*, 597 F.3d at 15.

or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). Section 3 of the FAA requires courts to stay court proceedings pending arbitration for any issue covered by an arbitration agreement. 9 U.S.C. § 3. *See also Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993).

At a high level, courts perform a two-step inquiry to determine whether to compel a party to arbitrate. *Dealer Computer Servs. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). First, a court must determine whether the parties agreed to arbitrate the particular dispute at issue. *Id. See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If so, the court must next determine whether any applicable federal statute or policy renders the claims nonarbitrable. *Dealer Computer Servs.*, 588 F.3d at 886. In other words, the court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors*, 473 U.S. at 628. With respect to the first inquiry, there are two separate considerations: whether a valid agreement to arbitrate *some* claims exists (contract formation) and whether the dispute at hand falls within the terms of that valid agreement (contract interpretation). *Dealer Computer Servs.*, 588 F.3d at 886. In this case, the Parties do not dispute that a valid agreement to arbitrate *some* set of claims exists. However, the Parties dispute whether that agreement covers the Plaintiff's claims in this case.

"Arbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate unless the court determines the parties agreed to arbitrate the dispute in question." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998). The FAA "does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration

agreement." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal citation omitted).

### a. The Question of Arbitrability

Although in most circumstances the Supreme Court has recognized a liberal policy in favor of arbitration, the Court has "made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (first quoting *AT&T Technologies*, 475 U.S. at 649 (emphasis added); then quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Although the Court's definition of "question of arbitrability" is narrow, it includes "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam*, 537 U.S. at 84 (citing *AT&T Technologies*, 475 U.S. at 651–52).

The Court has also explained that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options*, 514 U.S. at 943 (internal citations omitted). As to questions of arbitrability, the Court applies a "strong pro-court presumption as to the parties' likely intent." *Howsam*, 537 U.S. at 86. *See also Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013) (noting that questions of arbitrability are "presumptively for courts to decide"); *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 408 (5th Cir. 2014) ("[T]he law presumes that courts have plenary power to decide the gateway question of a dispute's 'arbitrability'—*i.e.*,

'whether [the parties] agreed to arbitrate the merits.'") (quoting *First Options*, 514 U.S. at 942). Thus, the Court has held that "[u]nless the parties *clearly and unmistakably* provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Howsam*, 537 U.S. at 86. *See also First Options*, 514 U.S. at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.") (quoting *AT&T Technologies*, 475 U.S. at 649).

## IV. ANALYSIS

The arbitration clause at issue in this case is found in a Dealer Agreement between Pelton & Crane[2] and Archer and White Sales, dated October 4, 2007, which established Archer and White Sales as a distributor of Pelton & Crane products. (Dkt. No. 46-1, Ex. C.) The arbitration clause states:

> <u>Disputes.</u> This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets or other intellectual property of Pelton & Crane) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association. The place of arbitration shall be in Charlotte, North Carolina.

Here, the Parties dispute whether they agreed to arbitrate antitrust claims. Additionally, the Parties disagree as to who should make that determination—the arbitrator or this Court.

Plaintiff argues that this action is unambiguously excluded from the arbitration clause because the clause expressly excludes "actions seeking injunctive relief"—and it is not disputed that Plaintiff seeks injunctive relief. (Dkt. No. 45, at 3–9.) Defendant responds by contending that a claim for injunctive relief can be added to most lawsuits, and Plaintiff should not be able to evade

---

[2] The same arbitration clause is found in Addendum 2 to the Marus Dealer Agreement (with the name "Marus Dental" substituted for "Pelton & Crane") (Dkt. No. 46-1, Ex. D) and Addendum 2 to the DCI Equipment Dealer Agreement (with the name "DCI Equipment" substituted for "Pelton & Crane") (Dkt. No. 46-1, Ex. E).

6

arbitration by merely asking for injunctive relief in addition to Plaintiff's claim for damages. (Dkt. No. 46, at 7.) According to Plaintiff, however, the fact that a plaintiff may put forth a claim for damages in addition to a claim for injunctive relief is simply irrelevant, and the Court must give the contract its plain and unambiguous meaning. (Dkt. No. 45, at 4.) As such, Plaintiff objects to the Magistrate Judge's ruling on the grounds that it is contrary to the plain language of the arbitration clause. (Dkt. No. 45, at 4.) Further, both sets of Defendants argue that the Magistrate Judge correctly held that the question of arbitrability should be determined by the arbitrator rather than this Court.

### a. Scope of Arbitration Clause

"[A] valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)). However, to determine the scope of an arbitration agreement, "we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). As such, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House*, 534 U.S. at 294 (internal citation omitted). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc.*, 489 U.S. at 478.

7

The Manufacturer Defendants argue that the only "sensible" construction of the arbitration clause would require arbitration of the present action. (Dkt. No. 46, at 6.) Specifically, the Manufacturer Defendants argue that this dispute is "related to" the parties' agreement because the rights Plaintiff seeks to vindicate were created by the Dealer Agreement. (Dkt. No. 46, at 6.) As to the express exclusion of actions seeking injunctive relief, the Manufacturer Defendants argue that Plaintiff's interpretation of the clause would significantly weaken the arbitration clause and thus cannot be correct. (Dkt. No. 46, at 7.) According to the Manufacturer Defendants, a party's "mere inclusion of a boilerplate request for injunctive relief in a complaint otherwise seeking a jury trial for a damages claim" would suffice to remove an action from arbitration. (Dkt. No. 46, at 7.) As such, the Manufacturer Defendants propose another interpretation of that express exclusion: that the exclusion is intended to "allow[] a party to seek injunctive relief in court, particularly where the issue in dispute involves 'trademarks, trade secrets or other intellectual property,' or to seek an injunction in aid of arbitration or to enforce an arbitrator's award." (Dkt. No. 46, at 7.) However, these Defendants fail to provide any substantive basis for reading into the Parties' agreement such significant limitations.

Defendant Schein adopts the Manufacturer Defendants' arguments. (Dkt. No. 47, at 13.) Schein also argues that Plaintiff's complaint fails to allege facts to support a claim for injunctive relief. (Dkt. No. 47, at 13.) Specifically, Schein lists the four *eBay* factors and argues that Plaintiff failed to plead the "elements" of a claim for a preliminary or permanent injunction. (Dkt. No. 47, at 13–14.) The Court will address each of the Defendants' arguments in turn.

First, the Court need not affirmatively decide whether the present action falls within the clause which indicates that any disputes "related to" the agreement must be arbitrated, as the

8

ultimate question turns on the clause's express exclusion, which excludes from arbitration "actions seeking injunctive relief."

Second, the phrase "except actions seeking injunctive relief" is clear on its face—any action seeking injunctive relief is excluded from mandatory arbitration. Plaintiff's action seeks injunctive relief. Applying the plain meaning of the clause, Plaintiff's action is excluded from mandatory arbitration.

As Plaintiff noted in its Response to the Manufacturer Defendants' Motion to Compel, the arbitration clause in the Dealer Agreement differs from the standard arbitration clause suggested by the American Arbitration Association ("AAA"). (Dkt. No. 21, at 6 (citing Dkt. No. 10-3, Ex. B).) Specifically, the clause's exclusion of actions seeking injunctive relief (and trademark disputes) is not part of the AAA's suggested language. The arbitration clause in this case is unique. Such an intentional drafting effort as opposed to dropping in standard language is worthy of the Court's notice.

Third, the Manufacturer Defendants' proposed interpretation of the exclusion clause fails based on the plain language of the clause itself. Those Defendants argue that the exclusion covers only intellectual property disputes or actions seeking injunctions in aid of arbitration. However, no textual basis exists for reading the phrase "actions seeking injunctive relief" as "actions seeking injunctive relief if such injunctions are in aid of arbitration." Further, the clause does not limit the exclusion to actions seeking "only" injunctive relief, and the Court also declines to read that limitation into the document.

A very similar clause was recently addressed by the Southern District of New York in *Frydman v. Diamond*, No. 1:14-CV-8741-GHW, 2015 WL 5294790 (S.D.N.Y. Sept. 10, 2015). The clause that excluded actions from arbitration in that case stated:

> Should any dispute arise between the Parties which gives rise to injunctive or equitable relief pursuant to the terms of this Agreement, the Operating Agreements or the Settlement Agreements, then notwithstanding anything else contained in such agreements, *the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court of competent jurisdiction*, and each of the other Parties hereby consent to same and shall not seek to dismiss or move such action to arbitration or other adjudication. *Id.* at *2 (emphasis added).

The parties' arguments in that case mirror the arguments presented to this Court. There, the plaintiff argued that the exception allowed the plaintiff to choose the forum in which to bring any action seeking injunctive relief. *Id.* at *2. Meanwhile, the defendants argued that the clause "was intended to be a narrow exception to the parties' broad agreement to arbitrate, and that the plaintiff's interpretation of [the clause] would render the parties' agreement to arbitrate meaningless because any party could avoid arbitration by simply including any type of claim of injunctive or equitable relief in his complaint." *Id.* at *6. There the defendants also argued that the exclusion should be interpreted as "a standard 'aid of arbitration' provision of the sort that allows a party to an arbitration agreement to seek equitable or injunctive relief either to enforce an arbitral award or to maintain the status quo pending arbitration." *Id.* at *6. The court in that case held that the plain language excluded the plaintiff's action from arbitration because the plaintiff's action sought equitable relief. In reaching the same conclusion, this Court finds persuasive the *Frydman* Court's emphasis on the plain language chosen and agreed to by the parties.[3]

---

[3] Although the court in *Frydman* relied on New York state law principles of contract interpretation to underscore the supremacy of the plain language, North Carolina law places the same emphasis on the plain meaning of words in contract interpretation. Under North Carolina law, "when the terms of a contract 'are plain and unambiguous, there is

The Manufacturer Defendants' argument that this reading of the clause would substantially weaken the arbitration clause simply cannot override the plain meaning of the words chosen by the parties in their agreement. To put it concisely, the Court will not re-write the terms of the Parties' agreement to accommodate a party—notably, the party that drafted the agreement[4]—that could have negotiated for more precise language. It is the duty of the courts to "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc.*, 489 U.S. at 478. *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (noting that the purpose of the Federal Arbitration Act was "to make arbitration agreements as enforceable as other contracts, *but not more so*") (emphasis added).

Finally, Defendant Schein's argument that Plaintiff failed to "plead" a claim for injunctive relief also fails. First, any argument that Plaintiff failed to state a claim for relief should be raised under Federal Rule of Civil Procedure 12. There is no such motion before the Court. Further, the factors articulated by the Supreme Court in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006), are not pleading requirements—rather, they are factors that are to be considered and carefully weighed by a court before an injunction should issue. To put it simply, injunctive relief is a remedy, not a cause of action. *See Prompt Med. Sys., L.P. v. Allscriptsmisys Healthcare Sols., Inc.*, No. 6:10-CV-71, 2011 WL 12863577, at *1 (E.D. Tex. Feb. 11, 2011) (noting that the defendants in that case failed to provide any authority that an injunction must be pleaded with more specific facts). *See also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649

---

no room for construction. The contract is to be interpreted as written,' . . . and 'enforce[d] . . . as the parties have made it.'" *State v. Philip Morris USA Inc.*, 363 N.C. 623, 632, 685 S.E.2d 85, 91 (2009) (first quoting *Jones v. Casstevens*, 222 N.C. 411, 413, 23 S.E.2d 303, 305 (1942); then quoting *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970)) (internal citations omitted).

[4] As Plaintiff noted in its Sur-reply to the Manufacturer Defendants' Motion to Compel, the clause at issue was drafted by Pelton & Crane. (Dkt. No. 33, at 2.)

(1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.").

Given the plain meaning of the language chosen by the Parties, and there being no basis for reading significant limitations into the express exclusion, the Court concludes that there is, in this case, a "positive assurance" that no reasonable interpretation of the arbitration clause would force this action into arbitration. *See Pers. Sec. & Safety Sys.*, 297 F.3d at 392 ("[A] valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'") (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).

### b. The Question of Arbitrability

The Parties disagree as to who should determine the scope of the arbitration clause in this case—the arbitrator or this Court. A general presumption exists in favor of arbitrability being decided by the Court, as "the law presumes that courts have plenary power to decide the gateway question of a dispute's 'arbitrability'—*i.e.*, 'whether [the parties] agreed to arbitrate the merits.'" *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 408 (5th Cir. 2014) (quoting *First Options*, 514 U.S. at 942). Thus, the Court concludes that the question of arbitrability should not be sent to the arbitrator in these narrow circumstances for two reasons: (1) the Parties did not clearly and unmistakably agree to arbitrate the arbitrability of actions seeking injunctive relief; and (2) Defendants' argument that Plaintiff's claims fall within the scope of the arbitration clause is wholly groundless. The Court will address these two independent rationales in turn.

i. Clear and Unmistakable Evidence

Courts often find clear and unmistakable evidence of an agreement to arbitrate arbitrability when an agreement includes an express delegation provision. *See, e.g.*, *Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413, 415 (5th Cir. 2014) (holding that the delegation clause provided clear and unmistakable evidence that the parties intended to arbitrate arbitrability). "A delegation provision is an 'agree[ment] to arbitrate "gateway" questions of "arbitrability," such as . . . whether [the parties'] agreement covers a particular controversy.'" *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014). There is no *express* delegation clause in the agreement before this Court. Nonetheless, as Schein and the Manufacturer Defendants correctly note, the Fifth Circuit has held that the adoption of the AAA rules to govern arbitration proceedings "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (quoting *Petrofac, Inc. v. DynMcDermott Petroleum Operations, Co.*, 687 F.3d 671, 675 (5th Cir. 2012)). As such, Defendants rely on *Petrofac* to argue that the Magistrate Judge correctly decided to refer the case to an arbitrator to determine arbitrability based on the Parties incorporation of the AAA rules. (Dkt. No. 46, at 1; Dkt. No. 47, at 13.)

As Plaintiff noted during its oral argument, the arbitration clause in *Petrofac* did not contain any exclusions. Rather, it was a standard broad arbitration clause. Plaintiff also argues that unlike the arbitration clause in *Petrofac*, the arbitration clause here "cabins application of the AAA rules to disputes 'arising under or related to' the Agreement that are *not* 'actions seeking injunctive relief' or 'disputes relating to trademarks, trade secrets or other intellectual property of Pelton & Crane.'" (Dkt. No. 48, at 1 (emphasis added).) In other words, according to Plaintiff, the clause

represents an agreement that the AAA rules would govern only when the dispute did *not* fall within the expressly excluded categories. This Court finds such argument to have merit.

Although Plaintiff's argument at first blush appears circular, the logic of Plaintiff's argument holds true given the exclusion expressly set forth by the Parties. For example, if the present action fell *outside* of the clause's express exclusion, any questions as to arbitrability (*e.g.*, whether a particular cause of action "arises out of or relates to" the agreement) would be sent promptly to the arbitrator. That is not the case here, where the present action falls squarely within the terms of an express carve-out. Indeed, it would be senseless to have the AAA rules apply to proceedings that are not subject to arbitration. As such, there is no reason to believe that incorporation of the AAA rules, including the AAA rule that delegates the question of arbitrability to the arbitrator, should indicate a clear and unmistakable intention that the parties agreed to arbitrate the question of arbitrability in these circumstances—when an action falls squarely within the clause excluding actions like this from arbitration. *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 81 (Del. 2006) (addressing a broad arbitration clause that contained a clause allowing injunctive relief to be pursued in court and holding that "[s]ince this arbitration clause does not generally refer *all* controversies to arbitration, the federal majority rule does not apply, and something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator") (emphasis added).

    ii.  <u>The "Wholly Groundless" Exception</u>

Even if this Court were to find that the adoption of the AAA rules constituted clear and unmistakable evidence that the Parties agreed to arbitrate the question of arbitrability in these unique circumstances, recent guidance from the Fifth Circuit indicates that in narrow

14

circumstances, a court should nonetheless determine arbitrability where a defendant's argument in favor of arbitrability is "wholly groundless." *Douglas*, 757 F.3d at 463–64. In *Douglas*, the Fifth Circuit addressed whether the question of arbitrability should be sent to the arbitrator. *Id.* at 462. The arbitration clause at issue in that case defined the "disputes" that would be subject to arbitration as including "the validity, enforceability, or scope of this Arbitration provision." *Id.* at 462. Despite the existence of an express delegation clause in the arbitration agreement (which does not exist here), the Fifth Circuit held that the question of arbitrability need not be sent to arbitration. *Id.* at 462–63.

The Circuit held that "[t]he law of this circuit does not require all claims to be sent to gateway arbitration merely because there is a delegation provision." *Id.* at 463. In its analysis, the Fifth Circuit relied on a test established by the Federal Circuit, a test that "most accurately reflects the law—that what must be arbitrated is a matter of the parties' intent." *Id.* at 464.[5] The Federal Circuit's test involves two steps: "(1) did the parties 'unmistakably intend to delegate the power to decide arbitrability to an arbitrator,' and if so, (2) is the assertion of arbitrability 'wholly groundless.'" *Agere Sys., Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 340 (5th Cir. 2009) (quoting *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006)). As applied, "the 'wholly groundless' inquiry 'necessarily requires the courts to examine and, to a limited extent, construe the underlying agreement.'" *Douglas*, 757 F.3d at 463 (quoting *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 718 F.3d 1336, 1346–47 (Fed. Cir. 2013), vacated on other grounds, 134 S.Ct. 1876 (2014) (vacating on mootness grounds)).

---

[5] Though cited with approval, it is unclear whether the Fifth Circuit has expressly adopted the Federal Circuit's "wholly groundless" test. Regardless, even if that test has not been adopted by the Fifth Circuit, as discussed in Section IV.b.i above the Court finds that there is not clear and unmistakable evidence that the Parties intended to send the question of arbitrability to an arbitrator because the adoption of the AAA rules in this case applies only to matters subject to arbitration—not to those that are expressly excluded from arbitration.

15

In so holding, the Fifth Circuit emphasized that to hold otherwise would require the plaintiff to go to an arbitrator merely to have the arbitrator "flatly" explain that the claim did not fall within the scope of the agreement and promptly send plaintiff back to court. *Douglas*, 757 F.3d at 463. The Circuit noted the absurdity of such a process:

> When [plaintiff] signed the arbitration agreement containing a delegation provision, did she intend to go through the rigmaroles of arbitration just so the arbitrator can tell her in the first instance that her claim has nothing whatsoever to do with her arbitration agreement, and she should now feel free to file in federal court? Obviously not. *Id.* at 464.

The same unequivocal response from the arbitrator would just as readily occur here, where the plain language of the clause carves out and excludes the action brought by this Plaintiff. As discussed above in Section IV.a, Defendants' argument that this action seeking injunctive relief should be referred to arbitration is wholly without merit based on the plain language of the arbitration clause itself. As a result, the Court finds that even if the inclusion of the AAA rules for disputes not carved out by the Parties' own language is held to be clear and unmistakable evidence that the parties generally agreed to arbitrate the question of arbitrability, Defendants' assertion that this particular action should be arbitrated is "wholly groundless." Additionally, given the clarity of the arbitration provision discussed above, it would be senseless to refer the issue of arbitrability to the arbitrator, only to have the arbitrator read the plain language of the clause and then send the Parties back to this Court.

The Court recognizes that the "wholly groundless" exception in *Douglas* should be used only in "exceptional" circumstances, and the Court does not seek to expand that narrow exception by applying it in this case. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 n.1 (5th Cir. 2016) ("Such cases are exceptional, and the rule in *Douglas* is not a license for the court to

16

prejudge arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause. So long as there is a 'plausible' argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective to divest the court of its ordinary power to decide arbitrability."). However, given the precise facts of this case—that there is no express delegation of arbitrability, but simply the adoption of the AAA rules for disputes not excluded from arbitration—and given that the plain meaning of the language at issue leaves Schein and the Manufacturer Defendants with no plausible argument that this action falls within the narrowed parameters of those disputes subject to arbitration, application of the *Douglas* exception is appropriate in this particular case.

### c. Equitable Estoppel

Having concluded that this action falls within the express exclusion contained in the parties' arbitration clause and that this action is not subject to mandatory arbitration, the Court need not decide, and does not reach, the question of whether the third parties to the arbitration clause in this case can enforce such arbitration clause.

### V. CONCLUSION

For the foregoing reasons, the Magistrate Judge's Order should be and hereby is **REVERSED**. It is therefore **ORDERED** that the Magistrate Judge's Order (Dkt. No. 44) is hereby **VACATED**. Accordingly, the Motions to Compel Arbitration filed by Defendant Schein and the Manufacturer Defendants are **DENIED**, and the stay previously entered in this case is hereby **LIFTED**.

The trial date for this action is hereby set for February 5, 2018, and the pre-trial hearing date is set for January 8, 2018. Accordingly, the Parties are **ORDERED** to meet and confer and

thereafter jointly submit a proposed Docket Control Order to the Court within 14 days of this Order based on the above trial and pre-trial dates.

**So ORDERED and SIGNED this 7th day of December, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE