IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ARCHER AND WHITE SALES, INC.<br>*Plaintiff*,<br>v.<br><br>HENRY SCHEIN, INC. ET AL.,<br>*Defendants*. | Civil Action No. 2:12-cv-572-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Stay Proceedings Pending Appeal (Dkt. No. 66) filed by Defendant Henry Schein, Inc. and Defendants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation (collectively, "Defendants"). Having considered the briefing and the relevant authorities, the Court is of the opinion that the Motion should be and hereby is **DENIED**.

### I. BACKGROUND

On December 7, 2016, the Court entered an Order denying Defendants' respective Motions to Compel Arbitration (Dkt. No. 63). A week later, Defendants filed Notices of Appeal (Dkt. Nos. 64, 65). Defendants also filed this Motion to Stay Proceedings Pending Appeal (Dkt. No. 66) which is now before the Court.

### II. LEGAL STANDARDS

Under Fifth Circuit law, the stay of a case pending appeal constitutes "extraordinary relief." *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 275 (5th Cir. 1994). In the context of arbitration, the Fifth Circuit has held that a party is not entitled to an automatic stay of

district court proceedings pending appeal from a denial of a motion to compel arbitration. *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 907–10 (5th Cir. 2011). Instead, the decision whether to stay a case lies within the sound discretion of the district court. *Weingarten Realty Investors*, 611 F.3d at 910. In exercising such discretion, a court analyzes four factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceedings; and (4) whether the public interest favors a stay. *Weingarten Realty Investors*, 661 F.3d at 910. These traditional four factors "must be fully applied except where there is a serious legal question involved *and* the balance of equities heavily favors a stay; in those situations, the movant only needs to present a substantial case on the merits." *Weingarten Realty Investors*, 661 F.3d at 910 (emphasis added).

### III. ANALYSIS

#### a. Factor One: Likelihood of Success on the Merits

As to the first factor, Defendants argue that they need only present a "substantial case" on the merits, rather than a "strong showing," because the Court's Order allegedly raises serious legal issues (namely, the questions of "whether arbitration clauses that include exceptions for certain kinds of relief or certain kinds of claims are subject to the rule of *Petrofac* and whether the arguments that Defendants raised are 'wholly groundless'"). (Dkt. No. 66, at 4–5.)

The "substantial case" standard relied upon by Defendants stems from the Fifth Circuit's decision in *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981), which the Circuit later applied to the arbitration context in *Weingarten Realty Investors*. Under that standard, a movant need only present a substantial case on the merits "where there is a serious legal question involved *and* the

balance of equities heavily favors a stay." *Weingarten Realty Investors*, 661 F.3d at 910 (emphasis added).

In *Weingarten Realty Investors*, the Fifth Circuit held that a serious legal question did not exist where the dispute involved a "private contractual matter regarding whether arbitration is required." 661 F.3d at 910. In so determining, the Circuit contrasted the private issue of the arbitrability of a dispute between two parties to the serious question of statutory interpretation that was at issue in *United States v. Baylor University Medical Center*, 711 F.2d 38, 40 (5th Cir. 1983), which "could have had a broad impact on relations between the states and the federal government." *Weingarten Realty Investors*, 661 F.3d at 910 n.9. *See also Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992) ("No such serious legal question is involved here. This case involves only a private contractual matter . . . .").

Notably, Defendants failed to discuss (or even cite) the Fifth Circuit's decision in *Weingarten Realty Investors* in their Motion, even though the opinion addresses the precise issue in this case—a stay of proceedings pending denial of a motion to compel arbitration. Rather than attempting to distinguish this case from *Weingarten Realty Investors*, Defendants merely characterize the Court's decision in this case as one that would decide the broad question of "whether arbitration clauses that include exceptions for certain kinds of relief or certain kinds of claims are subject to the rule of *Petrofac*." Defendants overstate this Court's holding. The Court did not purport to create a new rule of law—or even modify an existing rule. The Court's decision merely applied the governing law in *Petrofac* to the text of the unique arbitration clause in this case.

Likewise, Defendants' argument that a serious legal question exists based on whether their arguments in favor of arbitration were "wholly groundless" is also without merit. Again, the Court's Order simply applied existing Fifth Circuit law to the facts of this case without raising any novel legal issues. The effect of the Court's conclusion extends no further than any other ruling in any other case.[1] *See Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992) ("Whether the particular contract at issue does or does not permit exhibition or distribution of the film . . . is of no concern to others. Except for the Plaintiffs, the results of this dispute have no far-reaching effects or public concerns to anyone—unlike those at issue in *Baylor*.").

Even if Defendants could demonstrate that a "serious legal issue" exists in this case, as discussed below, Defendants have not met their burden to show that the balance of equities weighs *heavily* in their favor. The equities of this matter are developed in detail below, but the apparent conclusion of such analysis is that they do not heavily favor a stay. Accordingly, without the balance of equities tilted heavily in their favor, Defendants cannot rely on the "substantial case on the merits" standard to demonstrate the first factor of the traditional four-factor analysis. Thus, Defendants must present a "strong showing" that they are likely to succeed on the merits. *Weingarten Realty Investors*, 661 F.3d at 910. This they have not done.

Any argument that Defendants have demonstrated a strong showing of a likelihood of success is belied by the exchange that occurred during oral argument on the motions to compel arbitration. (Transcript, Dkt. No. 81, 23:11–20.) Looking at the text of the arbitration clause (which expressly excludes from arbitration actions seeking injunctive relief and disputes related to

---

[1] Any judicial decision is subject to being cited in the future, and in that context *every* decision potentially reaches further than the case itself. However, here the Court merely applied the established precedent of this Circuit to the unique facts of this case. Every case has its own unique facts. No broad statements or dicta were included to "push the needle" any further than necessarily occurs in every case. In this Court's view, Defendants argue for "serious legal questions," at least in part, because their posture under the traditional four-factor test is weak.

4

trademarks, trade secrets or other intellectual property), the Court asked Defendants if there could be a "plausible argument" for arbitration under *Douglas v. Regions Bank*, 757 F.3d 460 (5th Cir. 2014), if a plaintiff were to bring a trademark infringement case against Defendant Pelton & Crane. (Transcript, Dkt. No. 81, 23:11–16.) In response, Defendants' counsel stated: "If all the complaint is doing is seeking relief for an alleged trademark-based injury, then I would say likely it would not be a plausible reading." (Transcript, Dkt. No. 81, 23:18–20.) This situation, where the relief requested included injunctive relief, is no more plausible and is far from a "strong showing." The plain language of the arbitration clause in this case carves out actions seeking injunctive relief in the same way that it carves out disputes regarding trademark infringement. As discussed in the Court's Order denying the motions to compel arbitration, Defendants' arguments in favor of arbitrability are not persuasive.

Given that Defendants have presented no new arguments, but instead have merely re-urged arguments already considered by the Court, Defendants have not demonstrated a likelihood of success on the merits. As such, this factor weighs against a stay.

### b. Factor Two: Irreparable Injury

Defendants argue that they will suffer irreparable injury because they will be forced to participate in discovery and will be deprived of their right to select the forum in which their disputes are resolved.

Although Defendants rely on a Seventh Circuit case to argue that arbitration may be faster and cheaper than district court litigation (and thus, that a stay is warranted), the Fifth Circuit has held that purported speed and cost savings brought about by arbitration are insufficient to show irreparable injury. *Weingarten Realty Investors*, 661 F.3d at 913 ("[W]e reject the idea that

5

arbitration ensures substantial speed and cost savings, so these considerations alone do not constitute irreparable injury.").[2] *See also Peru v. Unisert Multiwall Sys., Inc.*, No. 4:14-cv-773, 2014 WL 7338863, at *3 (S.D. Tex. Dec. 22, 2014) (finding no irreparable injury where defendant argued that it would incur additional costs and attorney fees if the suit was not stayed pending appellate review of arbitrability). As such Defendants' arguments regarding speed and costs savings are insufficient to justify a stay in this case.

As to discovery, the Fifth Circuit in *Weingarten Realty Investors* left open the possibility that discovery that could jeopardize the movant's right to arbitrate, when added to the potential cost increases brought about by litigating in court, could be an irreparable injury—"particularly where parties contracted for arbitration to limit discovery of sensitive information." 661 F.3d at 913 n.19. Defendants, however, failed to explain how discovery in this case could harm their alleged right to arbitrate. As Plaintiff notes, any discovery that occurs in litigation could be used in arbitration, if arbitration were found to be appropriate. (Dkt. No. 70, at 5.) Moreover, Defendants have not argued that the arbitration clause in this case was designed to limit discovery of sensitive information. *See Weingarten Realty Investors*, 661 F.3d at 913 n.19. As such, Defendants have failed to meet their burden to show irreparable harm. This factor weighs against a stay.

   c. **Factor Three: Substantial Injury to Other Parties Interested in the Proceedings**

Defendants argue that the only harm Plaintiff will suffer by a stay is an additional delay in adjudication of this dispute. (Dkt. No. 66, at 6.) Even if that were the only harm to Plaintiff, it is a degree of harm for the Court to consider. Although the substantial delays in this case (for which

---

[2] As noted previously, Defendants' Motion failed to address the Fifth Circuit's decision in *Weingarten Realty Investors*, and Defendants did not file a Reply Brief in response to Plaintiff's reliance on this precedent. The Defendants' silence on this is telling.

both parties are at fault) have already resulted in some harm, that does not excuse or negate the additional harm that further delay would bring about.

Regardless of whether delay alone is sufficient harm, Plaintiff has identified additional tangible harms, unique to the circumstances of this case, that would be caused by a stay. (Dkt. No. 70, at 6.) Specifically, Plaintiff notes that it has been served with two subpoenas in *In re Dental Supplies Antitrust Litigation*, No. 1:16-cv-00696-BMC-GRB (E.D.N.Y.), which is a consolidated set of class actions brought by direct purchasers of dental supplies against Defendant Schein and others. (Dkt. No. 70, at 6.) Such subpoenas ask Plaintiff to turn over documents that support Plaintiff's claims in this lawsuit. (Dkt. No. 70, at 6.)

Plaintiff elaborated on these ongoing parallel proceedings during the November 9, 2016, hearing on Defendants' Motions to Compel Arbitration. (Transcript, Dkt. No 81, 4:16–5:11.) At the hearing, Plaintiff explained that a series of class actions had been filed in the Eastern District of New York against Defendant Henry Schein (and others). (Dkt. No. 81, 4:20–23.) Those cases were consolidated for discovery. (Dkt. No. 81, 4:20–21.) The discovery schedule in the consolidated case was structured to coordinate with the discovery schedule in another related antitrust case brought by SourceOne Dental against Defendant Henry Schein (among others). (Dkt. No. 81, 5:4–7.)

Staying this case would deprive Plaintiff of the opportunity to coordinate efficient discovery efforts with the litigants in such related proceedings, specifically because discovery in the *Dental Supplies Antitrust Litigation* case closes in mid-2017. (*See* Dkt. No. 70, at 6.) As noted in Plaintiff's Response, the witnesses in this case will likely overlap with those in the related New York cases. (Dkt. No. 70, at 6 nn.4, 5.) Defendants have not disputed or responded to these

concerns, and the Court finds no reason to minimize the import of such practical consequences. (*See* Dkt. No. 72 (notifying the Court that Defendants would not be filing a Reply brief).)

In short, staying this case would prevent Plaintiff from coordinating with the litigants in the ongoing related proceedings, thus limiting the synergies and efficiencies that could otherwise accrue to substantial benefit. A stay would necessarily increase discovery costs for Plaintiff—and potentially for Defendant Schein. Based on the unique time-sensitive harm that would be brought about by staying this case, this factor weighs strongly against granting a stay.

### d. Factor Four: Public Interest

Defendants argue that the general federal policy in favor of arbitration warrants granting a stay in this case. (Dkt. No. 66, at 6–7.) Defendants in other cases have made this same argument without success. *See, e.g.*, *Grant v. Houser*, 799 F. Supp. 2d 673, 679–80 (E.D. La. 2011); *Peru v. Unisert Multiwall Sys., Inc.*, No. 4:14-cv-773, 2014 WL 7338863, at *4 (S.D. Tex. Dec. 22, 2014). As one district court noted in response to this argument, "[i]f this policy were sufficient to warrant a stay, a stay pending interlocutory appeal of a denial of a motion to compel arbitration would be reflexive." *Peru*, 2014 WL 7338863, at *4. Fifth Circuit precedent definitively holds that such a stay is not automatic, thus indicating that the general policy favoring arbitration is not dispositive or absolute. *See Weingarten Realty Investors*, 661 F.3d at 907.

Even giving weight to the policy favoring arbitration, the Court is not persuaded that this general policy is sufficient to tilt this factor in favor of the Defendants, particularly in this case—and especially in light of the Court's previous holding that Defendants' arguments in favor of arbitration were wholly groundless. (Dkt. No. 63.) Defendants could have presented additional arguments, aside from the general policy favoring arbitration, to demonstrate why the public

interest favors a stay in this case. They did not. As such, the "public interest in speedy resolution of disputes prevails," and this factor weighs against a stay. *See Weingarten Realty Investors*, 661 F.3d at 913.

## IV. CONCLUSION

Having carefully considered the relevant factors as applied to the circumstances of this case, the Court, in its discretion, determines that Defendants' Motion to Stay Proceedings Pending Appeal (Dkt. No. 66) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 17th day of February, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE