**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ARCHER AND WHITE SALES, INC.**<br><br>    Plaintiff,<br><br>    v.<br><br>**HENRY SCHEIN, INC., DANAHER CORPORATION, INSTRUMENTARIUM DENTAL, INC., DENTAL EQUIPMENT, LLC, KAVO DENTAL TECHNOLOGIES, LLC, AND DENTAL IMAGING TECHNOLOGIES CORPORATION,**<br><br>    **Defendants.** | Civil Action No. 2:12-CV-00572-JRG<br><br>**FILED UNDER SEAL** |

**PLAINTIFF ARCHER AND WHITE SALES, INC.'S SUR-REPLY IN OPPOSITION TO SCHEIN'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 288)**

## TABLE OF CONTENTS

I.   SCHEIN CONTINUES TO IGNORE ARCHER'S ALLEGATIONS ................................1

II.  SCHEIN CONTINUES TO MISINTERPRET THE LAW AS APPLIED TO
     ARCHER'S ALLEGATIONS ........................................................................................4

     CONCLUSION..............................................................................................................7

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (2d Cir. 2011)..................................................................................................4

*Continental Ore Co. v. Union Carbide & Carbon Co.*,
    370 U.S. 690 (1962).............................................................................................................1, 2

*Corr Wireless Commc'n v. AT&T, Inc.*,
    893 F. Supp. 2d 789 (N.D. Miss. 2012)................................................................................4

*Howard Hess Dental Labs Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010)..................................................................................................3

*In re High Fructose Corn Syrup Antitrust Litig.*,
    295 F.3d 651 (7th Cir. 2002) ................................................................................................4

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
    940 F. Supp. 2d 367 (E.D. La. 2013) ...................................................................................2

*MM Steel, L.P. v. JSW Steel (USA), Inc.*,
    806 F.3d 835 (5th Cir. 2015). ...........................................................................................3, 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)........................................................................................................4, 6, 7

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
    939 F. Supp. 2d 1002 (N.D. Cal. 2013) ...............................................................................2

*Toys "R" Us v. Fed. Trade Comm'n*,
    221 F.3d 928 (7th Cir. 2000) ................................................................................................3

Plaintiff Archer and White Sales, Inc. ("Archer") is a Texas-based discount distributor of dental equipment. When Archer sought to expand its sales outside of Texas, Schein, Patterson, Benco, and Burkhart ("the Cartel Members") conspired to force their common suppliers, the Danaher Defendants, to restrict Archer's sales territory to Texas, and ultimately to cut off Archer altogether. The Second Amended Complaint explains in detail, with Defendants' admissions and other facts, how the purpose of the conspiracy to boycott Archer was to protect an unlawful attempt by the Cartel Members to keep margins at artificially high levels. Defendants' conduct constitutes the type of group boycott that the Supreme Court and Fifth Circuit consistently recognize as per se illegal. In its Reply, Schein persists in ignoring the relevant case law, ignoring the Second Amended Complaint's well-pled factual allegations, and generally attempting to recast the Second Amended Complaint as something it is not. Schein's argument should be rejected and its motion to dismiss denied.

## I.   SCHEIN CONTINUES TO IGNORE ARCHER'S ALLEGATIONS

In its Reply, Schein persists in attempting to break the conspiracy down into separate pieces and in refusing to acknowledge the evidence cited by Archer. Schein does its best to compartmentalize the allegations with respect to margin-fixing and boycotting, but "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Continental Ore Co. v. Union Carbide & Carbon Co.*, 370 U.S. 690, 699 (1962). As Archer's brief explained, the margin-fixing and boycott are parts of a single overarching conspiracy by which the conspiring distributors block competition from low-priced competitors. Archer Br. 13-17. And Archer's evidence of that conspiracy—both direct and indirect—is more than sufficient to overcome a motion to dismiss.

The Second Amended Complaint's direct evidence includes descriptions of meetings with employees of Schein and Burkhart explaining how the companies fixed prices, allocated customers, and utilized dental equipment manufacturers, like the Danaher Defendants, to boycott distributors who tried to undercut them on price. Archer Br. 16. Schein complains that these statements are too "ambiguous." Not so. Schein's Lowery confessed that the Cartel Members do not compete against one another on price for customers. In fact, Burkhart's Powers admitted that he will not sell to a Schein customer and will instead tell that customer "I want you to buy" from Schein. Compl. ¶ 58. Accordingly, as Schein's Lowery explained, dentists get their products "for the same price no matter who they buy it from" so that "we all get paid." *Id*. ¶¶ 35, 61.

Schein offers no innocent interpretation of the statements. Rather, Schein asks the Court to "[s]et[] aside" the margin-fixing accusations because they do not expressly reference a boycott. Reply at 3. But this Court must not "wip[e] the slate clean after scrutiny of each" factual component. *Continental Ore*, 370 U.S. at 699. The margin-fixing allegations are important context for the group boycott conspiracy.[1] In any event, Schein again ignores significant evidence of the existence of an agreement. For example, Schein's Lowery admitted to Pettus that the Cartel Members brought manufacturers (like the Danaher Defendants) into their conspiracy by convincing them to terminate or restrict dealers who refused to sell at the same high prices as the Cartel Members. Compl. ¶ 70. Indeed, he even acknowledged that everything would have been "hunky dory" with Archer and Dynamic had they played on "the level playing field." *Id*. ¶ 73. Additionally, Schein's Matt Zolfo directly threatened Jim Archer Jr. at a Dallas Midwinter

---

[1] The cases that Schein cites for the proposition that Archer must plead facts that the Defendants entered into a specific boycotting agreement are inapposite. The conspiracy alleged in *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002 (N.D. Cal. 2013), had no price-fixing component, and the complaint in *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367 (E.D. La. 2013), lacked *any* allegation of horizontal collusion or contacts.

Dental meeting when he said, "get the price up on Nomads *or it won't matter soon*." *Id.* ¶ 114 (emphasis added). Recently produced emails make the existence of the boycott agreement even more obvious. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████ *Id.* ¶ 106. Schein cannot possibly claim that such statements are not direct evidence of a conspiracy to eliminate Archer as competition.[2]

Even if the statements described above were ambiguous, however, that would not make them irrelevant, but rather circumstantial evidence of the conspiracy. Archer's position is that it has identified sufficient direct evidence of the conspiracy, but even if it had not, the additional indirect evidence in the Second Amended Complaint—including a detailed description of how the Cartel Members consistently applied pressure to the same manufacturers about Archer's discounting around the same time, Archer Br. 18-19—gives rise to an inference of the existence of an illicit conspiracy. As the Fifth Circuit explained in *MM Steel*, "independent threats from two distributors" within several weeks of one another are sufficient to infer a conspiracy. *MM Steel, L.P. v. JSW Steel (USA), Inc.*, 806 F.3d 835, 845 (5th Cir. 2015). Similar evidence in this case includes Schein and Burkhart making the same threat to stop selling Pelton & Crane within the same month, Compl. ¶¶ 50-51, and ███████████████████████████████

█████████████████, *id.* ¶ 90.

The evidence contained in the Second Amended Complaint is certainly more substantial than the evidence examined in Schein's cited cases. *See Howard Hess Dental Labs Inc. v.*

---

[2] In light of Schein's numerous admissions of the existence of a conspiracy, whether the conspirators ever had a single meeting in which they decided on a course of action is irrelevant. *Cf. Toys "R" Us v. Fed. Trade Comm'n*, 221 F.3d 928, 932 (7th Cir. 2000) (affirming finding of antitrust violation even though the defendant "was careful to meet individually with each of its suppliers").

*Dentsply Int'l, Inc.*, 602 F.3d 237, 255-56 (3d Cir. 2010) (plaintiff's only evidence of agreement was that defendant distributors were all market participants with Dentsply distribution agreements, knew that Denstply was the dominant manufacturer, and had an economic incentive to maintain Dentsply's dominance); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 226 (2d Cir. 2011) (mere exchange of credit information not direct evidence of an agreement); *Corr Wireless Commc'n v. AT&T, Inc.*, 893 F. Supp. 2d 789, 805 (N.D. Miss. 2012) (statements that individuals opposed developing a spectrum band and that there had been a delay in developing the band not direct evidence of an agreement to cause such delay). In fact, the evidence that the court in *In re High Fructose Corn Syrup Antitrust Litigation* found sufficient to overcome a motion for summary judgment is remarkably similar to the evidence in this case. *Compare* 295 F.3d 651, 662 (7th Cir. 2002) (defendant's employee stating "[w]e have an understanding within the industry not to undercut each other's prices" and another defendant's employee referring to a competitor as a "friendly competitor"), *with* Compl. ¶¶ 35, 57-59, 61-63 (Lowery and Powers explaining how they "keep[] the integrity of the margins" and will not undercut each other on price), *and id.* ¶ 60 (Lowery considers Burkhart a "good competitor").

II. **SCHEIN CONTINUES TO MISINTERPRET THE LAW AS APPLIED TO ARCHER'S ALLEGATIONS**

Schein prefers to close its eyes to Archer's allegations and instead seek cover for its complaints by pointing to *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984), urging this Court to view its complaints as nothing more than a natural reaction to a price-cutting rival and to view Danaher's actions as a perfectly legitimate response. But Schein's description of the "common economic experience" ignores the allegations in this case.

First, Schein is correct that a manufacturer generally may deal or refuse to deal with whomever it likes, but only "*as long as it does so independently*." *Id.* at 761 (emphasis added).

4

Archer alleges that Danaher and other manufacturers did ***not*** act independently in terminating Archer and other low-margin dealers, as evidenced by, among other things, ███████████████████████████████████████████████████████████████████████████████████████████████████ Compl. ¶ 94. Schein proposes a different interpretation of the email, Reply at 8-9, but a motion to dismiss is not the proper forum in which to debate the appropriate inference to be drawn from a piece of evidence. In any event, Archer's interpretation of the email is the better one. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Compl. ¶¶ 118-19. ███████████████████████████████████████████████

███ In the end, Schein is left with a load of theories as to why a manufacturer *might* want to terminate a distributor in a vacuum, but those theories are disproved by the allegations and evidence in this case.[3]

---

[3] In any event, Schein's criticisms of Archer's business model are flat wrong. For example, Schein's disparagement of Archer's "independent service technicians" rings hollow given that Schein owns 45% of Darby Dental, an internet-based dealer of dental products that sells nationwide and that does not employ any service technicians but rather, like Archer, contracts with independent service technicians. Compl. ¶ 93. If the use of independent service technicians is so inadequate, one wonders why Schein would have made an investment in and contuse to support such a company. Schein also falsely asserts, without any basis whatsoever, that Archer's customers must pay separately for equipment repairs in some way that is distinguishable from full-service dealers. Archer is just as able to offer and fulfill warranties as any other dealer.

5

Second, Schein is correct that dealers may complain to manufacturers about price-cutting competitors, but again, that is legal only if the dealers do so independently, and Archer has alleged that they did not. Archer's case is not "based solely on parallel behavior." Reply at 7 (quoting *MM Steel*, 806 F.3d at 847). As described above, Archer has pointed to the Cartel Members' "trust" relationship and attempts to maintain supracompetitive margins. What is more, while citing *MM Steel* for this proposition, Schein ignores the Fifth Circuit's holding that "independent threats from two distributors" within several weeks of one another are sufficient to infer a conspiracy. 806 F.3d at 845. Similar evidence in this case includes Schein and Burkhart making the same threat to stop selling Pelton & Crane within the same month, Compl. ¶¶ 50-51, and ███████████████████████████████████████████████, *id.* ¶ 90. Accordingly, Archer has sufficiently alleged that the Cartel Members' complaints were not independent.

Finally, Schein returns to *Monsanto* and claims that a manufacturer may terminate a distributor in response to complaints from other distributors. What Schein overlooks, however, is that even in *Monsanto*, the Supreme Court found that the distributors and their shared manufacturer engaged in an illegal conspiracy to cut off a rival based on direct evidence similar to that alleged in the Second Amended Complaint. The evidence cited by the Supreme Court included the manufacturer threatening to limit supply to price-cutting distributors and a newsletter to dealer-customers talking about how they operate in a "playground" and that "harmony can only come from following the rules of the game." *Monsanto*, 465 U.S. at 765-66. The manufacturer threat in *Monsanto* mirrors the decision by the Danaher Defendants to restrict (and ultimately terminate) Archer's sales territory, Compl. ¶¶ 76-81, 120, and the threats by Instrumentarium against Archer to "back off" and "not quote" Cartel Member customers, *id.* ¶

87. The communication to the dealers in *Monsanto* echoes the statements by Lowery about things being easier when everyone is "on the same playing field." *Id.* ¶ 59. If the direct evidence in *Monsanto* was sufficient to find a conspiracy after a jury trial, *see* 465 U.S. at 757, then similar allegations in Archer's Second Amended Complaint are surely enough to survive a motion to dismiss.

## CONCLUSION

Schein may not like the facts alleged in Archer's Second Amended Complaint, but it cannot simply ignore them. For the foregoing reasons, Schein's Motion to Dismiss should be denied. In the alternative, should the Court find any deficiencies in the Second Amended Complaint, Archer should be granted leave to amend.

Dated: December 29, 2017.                    **MCKOOL SMITH, P.C.**

/s/ *Samuel F. Baxter*
Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@McKoolSmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Lewis T. LeClair
Texas State Bar No. 12072500
lleclair@mckoolsmith.com
Gary Cruciani
Texas State Bar No. 05177300
gcruciani@McKoolSmith.com
Phillip Aurentz
Texas State Bar No. 24059404
paurentz@McKoolSmith.com
Travis E. DeArman
Texas State Bar No. 24074117
tdearman@McKoolSmith.com
Chelsea A. Priest
Texas State Bar No. 24102375
cpriest@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Charles E. Fowler, Jr.
Texas State Bar No. 24083014
cfowler@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

***ATTORNEYS FOR PLAINTIFF,
ARCHER AND WHITE SALES, INC.***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via email on December 29, 2017.

/s/ *Samuel F. Baxter*
Samuel F. Baxter

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case (Dkt. No. 116).

/s/ *Samuel F. Baxter*
Samuel F. Baxter