**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ARCHER AND WHITE SALES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) | 2:12-CV-00572-JRG-RSP |
| | ) | |
| HENRY SCHEIN, INC., DANAHER | ) | |
| CORPORATION, INSTRUMENTARIUM | ) | **ORAL ARGUMENT REQUESTED** |
| DENTAL INC., DENTAL EQUIPMENT | ) | |
| LLC, KAVO DENTAL TECHNOLOGIES, | ) | *Filed Under Seal* |
| LLC AND DENTAL IMAGING | ) | *Contains Confidential Information* |
| TECHNOLOGIES CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OMNIBUS MOTION IN LIMINE

Henry Schein, Inc. ("Schein"); Danaher Corporation ("Danaher"); Instrumentarium

Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging

Technologies Corporation (together, the "Dental Company Defendants"); Patterson Companies,

Inc. ("Patterson"); and Benco Dental Supply Co. ("Benco," and together with Schein, Danaher,

the Dental Company Defendants, and Patterson, "Defendants") hereby file their Omnibus

Motion *in Limine* against Archer and White Sales, Inc. ("Archer"). Defendants believe that the

evidence set forth below, if improperly introduced at trial, would be so prejudicial to Defendants

that the Court could not alleviate the prejudice with an appropriate instruction, and therefore

respectfully request that it be excluded.

### 1. Evidence and argument regarding Dynamic Dental Solutions, Inc. ("Dynamic")

Any question, comment, or evidence regarding Dynamic, including its termination, is

inadmissible because Archer does not own Dynamic's causes of action. Those causes of action

were sold to Benco. As a shareholder, Archer approved the sale of the causes of action in an

Asset Purchase Agreement governed by Pennsylvania law. The Federal Rules require that "[a]n action must be prosecuted in the name of the real party in interest."[1]  Under Pennsylvania law, as a result of the Asset Purchase Agreement, Benco is the only "real party in interest" with the ability to assert claims related to the alleged boycott of Dynamic.[2]  Archer has admitted that, under the Asset Purchase Agreement, █████████████████████████████████████████

████████████████████████)  In addition, as recently held by the Eastern District of New York in a highly analogous situation,[4] Archer should not be permitted to argue that it should recover for harm that Dynamic allegedly suffered because Archer is not an efficient enforcer of the antitrust laws regarding harm to Dynamic: If Dynamic was harmed, Dynamic itself is the proper party to pursue such a suit, and any such claim is owned by Benco.  Finally, Archer should not be permitted to admit evidence related to Dynamic through the back door by using it as improper character evidence under Rule 404(b)—Archer simply cannot make any "pattern and practice" argument regarding Dynamic under the Rules.

All of Archer's audio recordings, and the transcripts of those recordings, relate to the Dynamic termination, and therefore, should also be excluded, as should evidence regarding

---

[1] Fed. R. Civ. P. 17(a).

[2] *See Gardner v. Surnamer*, 608 F. Supp. 1385, 1391 n.4 (E.D. Pa. 1985) ("It is well-established under Pennsylvania law that the real party in interest in an assigned suit is the assignee and not the assignor"); *see also Beneficial Com. Corp. v. Railserv Mgt. Corp.*, 563 F. Supp. 114, 116 (E.D. Pa. 1983) ("Generally, if a person has validly assigned all of his interest in a claim before an action is brought he is no longer the real party in interest") (citing *Rodriguez v. Compass Shipping Co. Ltd.*, 617 F.2d 955 (2d Cir. 1980)).

[3] Benco Mot. for Summ. J. (Dkt. 292), Ex. 4 ██████████ at 190:25–191:05).

[4] In fact, the Eastern District of New York recently dismissed antitrust conspiracy claims brought by a dental distributor competitor similar to Archer (IQ Dental Supply, Inc.), for lack of standing. *IQ Dental Supply, Inc. v. Henry Schein, Inc., et al.*, No. 2:17-cv-04834-BMC-GRB, at *9–12, 26 (E.D.N.Y. Dec. 22, 2017) (attached hereto as Exhibit A). The claims brought by IQ Dental against Schein, Patterson, and Benco that were ultimately dismissed by the Court included the same overarching mini-conspiracies that Archer has raised in its pleadings and has sought discovery on in this case.

damages relating to the Dynamic termination or the purchase of Dynamic by Benco.

## 2. Evidence and argument regarding other alleged conspiracies or wrongful acts

Archer has asserted in the Second Amended Complaint ("SAC"), and in response to various motions, alleged wrongful acts and/or conspiracies involving some or all of the Defendants that have nothing to do with Archer (or with Danaher or any of the Dental Company Defendants), including, but not limited to: (1) an alleged conspiracy to boycott the Texas Dental Association ("TDA"), other dental associations, and SourceOne Dental in attempts to hinder their efforts to engage in the sale of consumables; (2) an alleged conspiracy to pressure manufacturers not to open ██████████████████████ authorized distributors of consumables; (3) an alleged conspiracy concerning sales representatives that changed employers, including discussions of how to handle non-competition contracts and compensation; and (4) an alleged conspiracy not to sell products to group purchasing organizations ("GPOs"). Archer's claim in this case is an alleged conspiracy to boycott, terminate, and/or restrict Archer's distribution rights. Evidence regarding alleged conspiracies or wrongful acts unrelated to this narrow claim (and unrelated to Danaher or any of the Dental Company Defendants) should be excluded as irrelevant.[5] Evidence of unrelated conspiracies, even those involving some of the same actors at issue in a particular case, is not probative of whether those actors engaged in the specific antitrust conspiracy at issue.[6] In fact, these unrelated conspiracies amount to nothing

---

[5] Fed. R. Evid. 401.

[6] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 595–96 (1986) (evidence of a conspiracy in one market "does not tend to show a conspiracy … in another"); *see* Fed. R. Evid. 404(b)(1); *see also Holiday Wholesale Grocery Co. v. Philip Morris Inc.*, 231 F. Supp. 2d 1253, 1312–13 (N.D. Ga. 2002) ("For the finder of fact to draw the inferences permissible under Rule 404(b) with regard to [alleged conspiracies in other] jurisdictions, the court would need to conduct mini-trials on Defendants' conduct . . . Such a course of action would violate Rule 403 by causing unfair prejudice to Defendants, confusing the issues, and resulting in undue delay of this litigation.") (quoting prior discovery order).

more than prohibited character evidence that Archer intends to offer as "proof" that the Defendants engaged in a conspiracy against Archer.[7]   Evidence of other irrelevant alleged conspiracies would be misleading and confusing to the jury, would be unfairly prejudicial to Defendants, and would require a series of mini-trials regarding each of these alleged conspiracies, none of which have anything to do with Archer.[8]

### 3.  Evidence regarding other "low margin" distributors

Archer should be prohibited from presenting any evidence regarding third-party distributors as suggesting a conspiracy against Archer, as Archer alleges in its SAC.[9]   Archer alleges that

[0]   The experiences of third-party distributors are entirely irrelevant to Archer's claim of a boycott against *it*, and the voluminous deposition testimony and exhibits that Archer has designated for use at trial concerning the termination of other dealers will undoubtedly confuse the jury, unduly prejudice the Defendants, and require numerous mini-trials as to each of these unrelated distributors.[11]   For example, Archer has

---

[7] Fed. R. Evid. 404(b).

[8] *See* Fed. R. Evid. 403; *Yellow Bayou Plantation, Inc. v. Shell Chem., Inc.*, 491 F.2d 1239, 1242–43 (5th Cir. 1974) (affirming district court decision to exclude evidence of other lawsuits against defendant involving similar allegations, due to "faint probative value and high potential for unfair prejudice…."); *see also Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1356–57 (5th Cir. 1983) (holding that exclusion of evidence of prior jury determinations was appropriate due to high risk of misleading or confusing the jury); *Painter v. Suire*, 650 F. App'x 219, 225 (5th Cir. 2016) (evidence of unrelated charges was properly excluded due to the risk of jury confusion).

[9] *See, e.g.*, SAC, ¶¶ 109, 115–24.

[10] SAC, ¶ 117.

[11] Fed. R. Evid. 401–403; *see, e.g., Anheuser–Busch, Inc. v. A-B Distributors, Inc.*, No. 95–241–Civ–J–20, 1996 WL 34719787, at *1 (M.D. Fla. April 4, 1996) (ruling *in limine* that "[t]estimony of current or past Anheuser–Busch wholesalers or that of any non-Anheuser-Busch wholesalers will not be permitted for any purpose").

designated voluminous testimony from ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████ [12] Given the fact that this email string says nothing about Archer or even the region in which Archer operated, Archer obviously plans to confuse and distract the jurors with this irrelevant evidence.

### 4. Hearsay statements by non-party manufacturers

In order to support Archer's allegation that the distributor Defendants attempted to enlist other manufacturers in an alleged conspiracy against it, Archer relies on purported statements made by individuals associated with non-party manufacturers—without actually alleging that these other manufacturers joined *any* conspiracy.[13] These alleged statements are inadmissible hearsay, often supported by nothing more than Jim Archer, Jr.'s own self-serving testimony— sometimes relating to statements allegedly made by manufacturers to his father, adding an additional layer of multiple hearsay[14]—and are not admissible against Defendants.[15]  Further, they have absolutely no relevance to any claims against Danaher or the Dental Company Defendants.  Admission of these unsupported, unverified hearsay statements will do nothing



---

[12] ██████████████████████████████████████████████████████

[13] *See, e.g.,* SAC, ¶¶ 126–30, 132–35, 137–41 ██████████████

[14] *See, e.g.,* ██████████████

[15] Fed. R. Evid. 801–802.

more than confuse the jury and waste further time on yet another series of mini-trials as to each of these manufacturers.  The Court should prohibit Archer from presenting evidence or argument regarding the alleged hearsay statements.[16]

5.  ████████████████████████ and testimony prompted thereby

Defendants request that the Court issue an order *in limine* excluding ███████

As such, the ████████████████ constitutes inadmissible hearsay—not subject to any exception—the admission of which would be unduly prejudicial to Defendants.[18]

Immediately following ████████████████████████



---

[16] Fed. R. Evid. 401–403.
[17] Dep. of ████ Ex. 15, AW0000821, attached hereto as Exhibit V.
[18] Fed. R. Evid. 801–802, 403.
[19] Dep. of ████ Nov. 1, 2017, Exhibit U at 475:11–25.
[20] Dep. of ████ Nov. 1, 2017, Exhibit U at 476:19–477:05; Dep. of ████ Oct. 9, 2017, attached hereto as Exhibit W at 333:12–20.
[21] Dep. of ████ Nov. 1, 2017, Exhibit U at 472:07–13; 475:02–09.

Despite the fact that the ▇▇▇▇ is nothing more than a list of *allegations* created for

purposes of litigation, at many of the depositions Archer's counsel used this document to suggest

to the witness that the events described therein in fact occurred. Archer's counsel purported to

use the document as a business record and structured significant portions of the direct

examination around this ▇▇▇▇

     This ▇▇▇▇ is pure hearsay, not subject to any exception, and is inadmissible against

Defendants because it:

- Is Not a Business Record: The ▇▇▇▇ does not meet the business records exception because it was not generated in the ordinary course of business, at or near the time of the events recorded.[22]  In fact, the ▇▇▇▇ was created *ex post facto* for the purposes of litigation,[23] further underscoring its inadmissibility.[24]

- Is Not a Statement of a Party Opponent:  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[25]

- Contains Multiple Levels Hearsay: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[26]

---

[22] Fed. R. Evid. 803(6).

[23] Courts have also observed that "[t]he primary motive for preparing the report in the first place is a better indicator of trustworthiness than the form of the investigation." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000).  It is evident that Mr. Pettus's "primary motive" was not to create records in the normal course of business, but to provide material assistance in building Archer's case against Schein so that Archer would forgive Mr. Pettus's substantial debts.  The timing of the creation of the chronology, which was not created at or near the time of the events displayed, rebuts any notion that it reflects Mr. Pettus's present sense and/or impression under Fed. R. Evid. 803(1).  *See also AEL Indus., Inc. v. Loral Fairchild Corp.*, 882 F. Supp. 1477, 1487 (E.D. Pa. 1995) (excluding business records prepared "long after the time" that the referenced events occurred).

[24] *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1091 (10th Cir. 2001) (affirming exclusion of business record); *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 850–51 (N.D. Tex. 2009) ("[If] the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail"); *see also Lust v. Sealy, Inc.*, 383 F.3d 580, 588 (7th Cir. 2004) (excluding memoranda as unreliable when prepared in anticipation of litigation).

[25] Fed. R. Evid. 801(d)(2).

[26] Under Fed. R. Evid. 805, double hearsay is admissible only if "*each part* of the combined statements conforms with an exception to the [hearsay] rule." *Paddack v. Dave Christensen, Inc.*,

- Reflects Events About Which ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛[27]

- Summarizes Inadmissible Documents: In some instances, the ⬛⬛⬛⬛ refers to documents and evidence that would not be admissible on their own, such as the various secret audio recordings made of numerous individuals.[28]

Because the underlying document (*i.e.*, the ⬛⬛⬛⬛ is inadmissible hearsay, any testimony based on the ⬛⬛⬛ is also inadmissible hearsay.[29] Here, the deposition testimony prompted by the inadmissible ⬛⬛⬛⬛⬛⬛ does "nothing to overcome the evidentiary shortcomings of the underlying evidence."[30] Instead, Archer is "simply creating another level of hearsay," because "the deposition transcript amounts to a written record (first level of hearsay) of what ⬛⬛⬛⬛⬛⬛⬛ previously wrote in … ⬛⬛⬛⬛ (second level) that someone else told [them] (third level)."[31]

### 6. Recordings between Archer and non-parties

Archer has relied on a number of recordings among itself, its representatives, and other non-parties as supposed evidence of a conspiracy.[32] These transcripts and recordings are out-of-court statements offered for the truth of the matter asserted—that Defendants participated in a

---

745 F.2d 1254, 1260 (9th Cir. 1984) ("It is clear that a summary of both inadmissible and admissible hearsay should not be admitted under Rule 1006.").

[27] Fed. R. Evid. 602.

[28] "[I]nadmissible documents are not made admissible by being summarized." *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1045 (7th Cir. 1990).

[29] *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, No. 1:09-cv-1685, 2014 WL 12480496, at *2–3 (M.D. Pa. Mar. 3, 2014) (precluding deposition testimony based on inadmissible hearsay).

[30] *Id.* at *1.

[31] *Id.* at *2 n.3.

[32] These recordings were manufactured *ex post facto* for the purpose of litigation to bolster Archer's claim against Defendants, and therefore, these recordings are neither reliable nor trustworthy. *See supra* note 21.

conspiracy. Because these recordings are hearsay not covered by any exception, they are inadmissible.[33] In similar contexts courts have excluded recordings of conversations not involving defendants that were, as here, "an attempt to obtain inculpable statements in support of a suspicion of conspiracy."[34] Such statements "would not prove a conspiracy since they would only be binding on [the speaker] and would be hearsay as to all other party defendants."[35] Moreover, far from bearing any indicia of reliability, these recordings are unreliable: Archer and its witnesses have admitted that the recordings were at times partial, not covering the entire conversation purportedly being captured,[36] and at other times were entirely fabricated, reflecting Archer's efforts to stage a purported conversation to cause it to seem real.[37]

### 7. Hearsay statements by James Archer, Sr.

Throughout its SAC and depositions, Archer relies on statements by James Archer, Sr.[38] Mr. Archer's statements constitute hearsay, often contain multiple levels of hearsay, and are not admissible as to Defendants, particularly since Defendants have had no opportunity to preserve Mr. Archer's testimony through a deposition on these statements due to his unfortunate incapacity.[39]

---

[33] Fed. R. Evid. 802.

[34] *Corner Pocket of Sioux Falls, Inc. v. Video Lottery Techs., Inc.*, 979 F. Supp. 1269, 1282–83 (D.S.D. 1996), *aff'd*, 123 F.3d 1107 (8th Cir. 1997).

[35] *Id.* (determining that recordings of telephone calls among plaintiffs were inadmissible and "failed the test of admissibility" as party admissions).

[36] Dep. of _____, Oct. 23, 2017, Exhibit T at 161:02–05.

[37] *See* Dep. of _____ attached hereto as Exhibit X at 88:25–90:14; 92:08–93:13; 113:14–20; *see also* Dep. of _____ Exhibit U at 520:02–533:22.

[38] *See, e.g.,* SAC, ¶ 42;

[39] Fed. R. Evid. 801–802.

### 8. Verbal statements allegedly made by Mike Null

Mike Null was a regional sales director at Instrumentarium and had numerous interactions with Archer. He passed away suddenly and unexpectedly in November 2013. Archer asserts a number of verbal statements were made by Mr. Null directly related to the issues in the lawsuit that only Jim Archer, Jr. or his father allegedly witnessed.[40] Archer has no verifiable proof these statements were made, beyond Jim Archer, Jr.'s self-serving testimony. Further, given that Mr. Null passed away four years ago, Defendants have no way to independently verify these verbal statements were actually made or what Mr. Null may have meant by these alleged statements. Thus, Defendants are highly prejudiced by these unverifiable, self-serving statements supposedly made by Mr. Null. Consequently, the Court should exclude these unfairly prejudicial statements.[41]

### 9. Hearsay statements made by Powers

Archer relies on alleged statements by Jack Powers (a salesman of non-party Burkhart in Oklahoma) which Archer has twisted to suggest that there was a margin price fixing agreement between all of the Distributor Defendants.[42] Defendants have certainly never ratified or adopted any of these supposed statements of Mr. Powers (nor is there any indication that Burkhart did). As such, these statements are hearsay and inadmissible as to Defendants. [43]

Further, these purported statements cannot be admitted as statements of co-conspirators



[40] *See, e.g.,* SAC, ¶¶ 87, 96;

[41] Fed. R. Evid. 401–403.
[42] *See* SAC, ¶¶ 55, 57–59.
[43] Fed. R. Evid. 801–802, 805.

under Rule 801(d)(2)(E) unless Archer has shown by a preponderance of the evidence independent of the statements themselves (1) that a conspiracy to boycott Archer existed, (2) that the coconspirator and the defendant against whom the coconspirator's statements are offered were members of the conspiracy to boycott Archer, and (3) that the statements were made during the course and in furtherance of the conspiracy to boycott Archer.[44] Archer has not and cannot independently establish the existence of a conspiracy to boycott Archer between the distributors and Defendants.  Further, Mr. Powers's chatter about alleged past acts are not "in furtherance of" a conspiracy and have nothing to do with the alleged conspiracy at issue here—a purported boycott of Archer.[45]   Finally, Mr. Powers only has relevance to the Dynamic Dental issues, which, as explained above, likewise should be excluded.  Thus, the Court should exclude any alleged statements by Mr. Powers claiming that Defendants had joined an alleged conspiracy to boycott distributors.

### 10. Evidence and argument on Defendants' wealth, including specific compensation

The wealth of the Defendants, including the specific compensation of any employee, is not relevant to any issue in the case and the probative value of this information would be substantially outweighed by the danger of unfair prejudice, confusion, and waste of time.  Therefore, an order *in limine* as to such evidence is warranted.[46]

---

[44] *Park v. El Paso Bd. Of Realtors*, 764 F.2d 1053, 1064 (5th Cir. 1985).

[45] *United States v. Cornett*, 195 F.3d 776, 783 (5th Cir. 1999).

[46] *See Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-cv-621-JRG-RSP, ECF No. 246, at *5 (E.D. Tex. Sep. 21, 2016) (granting motion *in limine* to exclude evidence of defendant's wealth, profits, and revenue); *Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72-DF-CE, ECF No. 1982, at *39 (E.D. Tex. Feb. 26, 2010) (granting motion *in limine* to exclude evidence of defendants' financial size and wealth); *United States ex rel. Koch v. Koch Indus.*, 1999 U.S. Dist. LEXIS 16622, at *7 (N.D. Okla. July 7, 1999) (holding that "[e]vidence regarding [an individual's] wealth in general is irrelevant and will not be admissible at trial"); *Arleth v. Freeport-McMoran Oil & Gas Co.*, 2 F.3d 630, 635 (5th Cir. 1993) ("In excluding

### 11. References to other lawsuits or government investigations, including by the FBI

In its SAC, Archer references other lawsuits in which some of the Defendants are currently involved, as well as several government investigations, including an investigation by the Federal Bureau of Investigation.[47] There is no suggestion of a collateral or *res judicata* effect of these other alleged investigations or lawsuits,[48] and Archer should be prevented from offering any evidence on these issues at trial. Under Federal Rules of Evidence 401, 402, and 403, these other lawsuits and investigations will waste time on proof of yet another collateral issue and are unfairly prejudicial—especially in light of the fact that they do not involve all Defendants[49]—as Archer must present evidence concerning its case, not argue "guilt by association."[50] The same is true of Archer's efforts to persuade the FBI to investigate the Defendants starting in 2008.

---

evidence concerning [a company president's] personal financial condition, the district court found that the prejudicial effect of the evidence substantially outweighed its probative value").

[47] SAC, ¶¶ 41, 56.

[48] In fact, as explained *supra* at footnote 4, one of the New York cases was recently dismissed for lack of standing. *IQ Dental Supply, Inc. v. Henry Schein, Inc., et al.,* No. 2:17-cv-04834-BMC-GRB, at *9–12, 26 (E.D.N.Y. Dec. 22, 2017) (Exhibit A) (dismissing claims against defendants Schein, Patterson, and Benco).

[49] For example, Danaher and the Dental Company Defendants are not parties to any of these lawsuits or investigations Archer identified in their SAC: *In re Dental Supplies Antitrust Litigation*, No. 1:16-cv-00696-BMC-GRB (E.D. Tex.); *SourceOne Dental, Inc. v. Patterson Companies et al*., No. 2:15-cv-05440-BMC (E.D.N.Y.); *IQ Dental Supply, Inc. v. Henry Schein, Inc., et al.*, No. 2:17-cv-04834-BMC (E.D.N.Y.); *State of Texas v. Benco Dental Supply Co.*, No. D-1-GN—15-001386 (353rd Dist. Ct., Travis County, Tex.); *State of Texas v. Henry Schein, Inc.*, No. D-1-GN-17-003749 (261st Dist. Ct., Travis County, Tex.); alleged Texas Attorney General Investigation; alleged Arizona Attorney General Investigation; alleged Federal Trade Commission Investigation.

[50] *See* Fed. R. Evid. 404(b); *ZiiLabs Inc. v. Samsung Electronics Co.*, No. 2:14-cv-203-JRG-RSP, 2015 WL 13617214, at *2 (E.D. Tex. Oct. 28, 2015) (Payne, Mag. J.) (granting "motion which seeks to preclude any 'evidence or argument referencing unrelated litigation or governmental investigations involving Samsung, including litigation between Apple and Samsung.'"); *Kinetic Concepts, Inc. v. BlueSky Med. Corp.*, No. SA-03-CA-0832-RF, 2006 WL 6505348, at *3 (W.D. Tex. May 31, 2006) (granting motion *in limine* regarding "[a]ny statement, reference to, or evidence that Plaintiffs are or have been a party to other lawsuits, including but not limited to the following lawsuits. Offering such evidence is irrelevant and immaterial, and would only serve to mislead, confuse, or unfairly prejudice the jury").

Archer argues that it should be free to introduce testimony claiming that certain of the secret recordings made by the Archers and Skip Pettus were provided to, or even made pursuant to instruction from, the FBI, but then moves *in limine* for an order prohibiting Defendants from pointing out to the jury that the FBI never pursued any charges as a result of the investigation.[51] Archer should be prohibited from introducing any evidence regarding the FBI's supposed investigation or supposed involvement in the secret recordings.

### 12. Evidence and argument concerning the American Dental Cooperative ("ADC")

In its SAC, Archer alleges that Dynamic applied for membership in the ADC; that the application was "accepted and verbally confirmed"; and that the ADC "revoked Dynamic's membership" "following threats from the Cartel Members."[52]   In light of the fact that Archer failed to obtain any evidence from the ADC during discovery about its decision concerning Dynamic (and the fact Benco acquired all of Dynamic's rights to sue regarding any alleged rejection by the ADC, *see* No. 1, *supra*), any testimony at trial regarding Dynamic's membership rejection by the ADC would be irrelevant and unfairly prejudicial, as well as being hearsay, and should be excluded.[53]

### 13. Evidence and argument on Defendants' antitrust policies

Archer's counsel repeatedly asked defense witnesses during depositions not only about their companies' antitrust policies, but also about training on those policies and whether the policies were "followed."   Archer plainly intends to imply to the jury that Defendants' antitrust *policies* constitute antitrust *law* and that their employees' familiarity with those policies, and alleged failure to adhere to those policies, establish a violation of antitrust *law*.   That implication

---

[51] Plf. Archer & White Sales, Inc.'s Mot. in Limine (Dkt. 332) at 8–9 (Motion No. 7).

[52] SAC, ¶¶ 47–48; *see also* SAC, ¶ 149.

[53] Fed. R. Evid. 401–403.

is entirely improper, and Archer and its counsel should be prohibited from confusing and misleading the jury through introduction of Defendants' antitrust policies.[54]

## 14. "Group" testimony or the use of "Danaher" as shorthand for all of the Manufacturer Defendants

Archer's SAC repeatedly alleges conduct not by specific individuals or even companies, but by the "Cartel Members" as a whole.[55] Archer's witnesses should be barred at trial from testifying as to the blanket actions of "Cartel Members" or "Defendants" collectively; rather, any testimony must specifically identify the people or entities and their specific alleged conduct.[56]

Furthermore, and along the same lines, Archer defines Defendants Danaher Corporation and the Dental Company Defendants collectively as "Danaher" in its SAC, and conflates those five separate entities into one organization throughout the pleadings, depositions, and even its expert reports.[57] However, given Archer's failure to state a claim that Danaher Corporation itself

---

[54] Other courts have excluded antitrust policies on these grounds. In an instructive decision, one federal court noted that the "case turns on whether [defendant company] violated antitrust laws," and therefore it was irrelevant whether the company's employees believed they violated policies or how the company "interpreted its own antitrust policies." *In re Urethane Antitrust Litig.*, No. 2:08-5169 (WJM-MF), 2016 WL 475339, at *2 (D.N.J. Feb. 8, 2016). "Even if such evidence were relevant, it would be substantially … outweighed by prejudice because the testimony could confuse the jury on what the governing law was. While Plaintiffs propose that any confusion can be cured an additional jury instruction, the Court finds that a barrage of evidence concerning internal antitrust policies (as opposed to antitrust law) will create prejudice too great to be cured by a limiting instruction.") (citations omitted); *see also United States v. North*, No. 3:06 CR 323(CFD), 2007 WL 1630366, at *1 (D. Conn. June 5, 2007) (granting motion *in limine* to exclude evidence of company's antitrust policy, determining that the evidence presented too great a risk that the jury would be misled about the proper scope and interpretation of the Sherman Act); *MM Steel, LP v. Reliance Steel & Aluminum Co.*, No. 4:12–CV–1227, 2013 WL 6588836, at *3 (S.D. Tex. Dec. 16, 2013) (same); Fed. R. Evid. 401–403.

[55] *See, e.g.,* SAC, ¶¶ 38–40.

[56] *See MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806. F.3d 835, 844 (5th Cir. 2015) (plaintiff must prove each defendant knew "the essential nature and general scope" of the joint plan in order to prove each defendant was part of the conspiracy).

[57] *See, e.g.,* SAC, ¶ 1; ███████████
    ¶¶ 4, 6, and pg. 93 ███

---

DEFENDANTS' OMNIBUS MOTION IN LIMINE                                      Page 14

had some independent role in the any of the alleged actions about which Archer complains or a plausible basis for holding Danaher Corporation liable for the actions of its subsidiaries (*see* No. 15, *infra*), Archer should be prohibited from painting with a broad brush and utilizing "Danaher" as shorthand for all the Dental Company Defendants.[58]  Archer cannot manufacture a claim against Danaher Corporation simply by conflating it with its subsidiaries in front of the jury, and the Court should prohibit Archer and its counsel from confusing and misleading the jury in this matter.[59]  Furthermore, as a matter of law, Archer cannot imply or argue to the jury that Danaher conspired with any of its subsidiaries, that any of the Dental Company Defendants conspired with each other, or that the fact that different Dental Company Defendants took similar actions is indicative of a conspiracy.[60]

### 15. Evidence and argument regarding Danaher Corporation

Danaher Corporation does not manufacture, market, or sell dental equipment or supplies. Rather, it is a holding company that owns numerous separately-incorporated subsidiaries across a wide range of industries, the dental industry being just one, and it has taken no part in the day-to-day operations of its dental company subsidiaries.  Archer has produced no evidence to suggest otherwise and no evidence sufficient to pierce the corporate veil between Danaher Corporation and its various subsidiaries.  Further, Archer has produced no evidence of actions by Danaher Corporation itself in furtherance of any conspiracy to harm Archer.[61]  The presence of Danaher

---

[58] *See In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 750 (E.D. Pa. 2011) (in motion to dismiss, finding that general allegations as to corporate group, in absence of basis to impute liability, did not give notice to individual corporate entities of the claims against them).
[59] Fed. R. Evid. 401–403.
[60] *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771–72 (1984); *Century Oil Tool, Inc. v. Prod. Specialties, Inc.*, 737 F.2d 1316, 1317 (5th Cir. 1984).
[61] *See* Sealed Mot. to Dismiss Pl.'s Second Am. Compl. by Def. Danaher Corporation [Dkt No. 280]; Sealed Mot. for Summ. J. by Defs. Danaher Corporation, Instrumentarium Dental Inc.,

Corporation is nothing more than a distraction that will confuse the jury, unduly prejudice the Dental Company Defendants, and waste the Court's time. The Court should, accordingly, exclude any suggestion that Danaher Corporation was involved in the alleged conspiracy about which Archer complains.[62]

### 16. Argument alleging Danaher Corporation's acquisitions are improper

In its SAC, Archer alleges that Danaher Corporation "embarked on a plan to consolidate the dental equipment industry."[63] Archer repeats this allegation in its opposition to Danaher Corporation's motion to dismiss the Complaint.[64] Archer's legal claims in this lawsuit, however, assert a conspiracy to terminate Archer under Section 1 of the Sherman Act, not that Danaher Corporation's purchase of various dental equipment and supply manufacturers is improper or illegal, for example, through a claim for monopolization or attempted monopolization under Section 2 of the Sherman Act. Nevertheless, there is a strong likelihood that, if Archer or its counsel argues or offers evidence or testimony suggesting that these purchases were improper or harmful, the jury will wrongfully punish Defendants based on these facts. Thus, the Court should exclude all evidence or argument by Archer or its counsel suggesting that the purchase by Danaher Corporation of various dental equipment and supply manufacturers is wrongful or harmful to Archer or the dental industry.[65]

### 17. Evidence and argument regarding 2010 phone call between Cohen and Archer

Archer's SAC alleges that in "August 2010," Benco's Chuck Cohen and Jim Archer, Sr. had a phone call in which Cohen "offered to pay Archer Dental between $600,000–$1,000,000 if

---

Dental Equipment LLC, Kavo Dental Technologies, LLC and Dental Imaging Technologies Corporation at 23–27 [Dkt No. 299].
[62] Fed. R. Evid. 401–403.
[63] SAC, ¶ 25.
[64] Opp'n to Danaher Defendants' Motions to Dismiss Pl.'s Second Am. Compl. at 2.
[65] Fed. R. Evid. 401–403.

it did not file a lawsuit against Schein and Burkhart."[66] Evidence about this phone call should be precluded for numerous reasons. First, it is irrelevant and unfairly prejudicial, as suggestions concerning an agreement that was never reached/formed have no bearing upon a supposed boycott of Archer. Second, there is no evidence that Benco made an offer to settle on behalf of its alleged co-conspirators or itself; to the contrary, on behalf of Skip Pettus as the former principal of Dynamic, there was a discussion of avoiding Skip Pettus's involvement in a lawsuit to pursue a claim which had been transferred to Benco. Third, any offer of payment supposedly discussed was based on the debt that Dynamic owed Archer under the terms of their Joint Venture Agreement, which is irrelevant to this case. Fourth, testimony by James Archer, Jr. regarding the series of interrupted phone calls should be barred on the grounds of inadmissible hearsay (see No. 7, *supra*). And fifth, the admitted evidence demonstrates that the single series of discussions were preliminary, never reached closure, and ended with James Archer, Sr. disputing that Benco had purchased any claim Archer was intending to pursue and inviting him to contact Benco's lawyer if it were disputed. For these reasons, all evidence about this phone call should be excluded.[67]

## 18. Evidence and argument on wrongful acts or alleged injuries outside the statute of limitations

Archer filed its claims against Patterson and Benco on August 1, 2017. Archer admits in the SAC that it was aware of the alleged wrongful acts pertaining to Patterson and Benco well before August 1, 2013.[68] Antitrust claims are governed by a four-year statute of limitation.[69] Under any theory with which Archer attempts to proceed, even the continuing violation theory, a

---

[66] SAC, ¶ 82.

[67] Fed. R. Evid. 402–403, 802.

[68] SAC, ¶¶ 87, 90, 96, 114, 126–28, 134, 135, 138, 140, 141, 142.

[69] 15 U.S.C. §15b; *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051 (5th Cir. 1982).

plaintiff cannot sue for damages arising from alleged wrongful acts occurring outside of the limitations period.[70] Evidence of acts by Patterson or Benco that occurred prior to August 1, 2013, as well as any harm or injury arising from those acts, should be excluded as irrelevant because prosecution of those acts is barred by the statute of limitations.

Similarly, evidence of any acts by Schein that occurred prior to April 13, 2008, and acts by Danaher or the Dental Company Defendants that occurred prior to February 23, 2008, as well as any harm or injury arising from those acts, should be excluded as irrelevant, because prosecution of those acts is barred by the statute of limitations.

Evidence of past, non-actionable, alleged acts has little tendency to show the probability of current actions and, thus, is inadmissible.[71] Even if it were relevant, any minimal probative value the evidence does have is outweighed by the risk of jury confusion and wasting time.[72]

**19. Asking a witness to testify whether someone else is lying or, conversely, is truthful**

---

[70] *Al George, Inc. v. Envirotech Corp.*, 939 F.2d 1271, 1273–74 (5th Cir. 1991); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997).

[71] *See* Fed. R. Evid. 401(a), 402.

[72] *See Alanis v. Tracer Indus. Management Co., Inc.*, No. 1:13-cv-386, 2016 WL 4426377, at *6 (E.D. Tex. Aug. 18, 2016) (Crone, J.) (holding that evidence should be excluded when it only supported a claim that was not compensable); *McCann v. W.C. Pitts Construction Co.*, No. 3:10-cv-52-DPJ-FKB, 2011 WL 3924855, at *9 (S.D. Miss. Sept. 7, 2011) (finding motion *in limine* to exclude claims accruing outside of the statute of limitations to be well taken); *Parks v. Eastwood Insurance Services, Inc.*, No. SAVC 02-507-GLT, 2004 WL 5506510, at *1 (C.D. Cal. Mar. 2, 2004) (granting motion *in limine* to preclude evidence or testimony regarding employment at defendant beyond the four year statute of limitations).

[73] *See, e.g.,*



As numerous courts have held, "were-they-lying" questions are inadmissible and improper.[76] First, "were-they-lying" questions improperly invade the province of the jury to make credibility determinations concerning a witness.[77] Second, Rule 608(a) does not permit a witness to testify that another witness was truthful or not on a specific occasion.[78] Further, these questions ignore the very real possibility that there are other explanations for inconsistent testimony, which may be outside the personal knowledge of the testifying witness.[79] Finally,



[74] *See, e.g.,*

[75] *See, e.g.,*

[76] *United States v. Williams*, 343 F.3d 423, 437 (5th Cir. 2001) (government admitting prosecutor acted improperly by asking defendant about other witnesses' veracity); *United States v. Pereira*, 848 F.3d 17, 21–22 (1st Cir. 2017) (questions invading province of jury are improper under Rule 608(a) and are argumentative); *United States v. Schmitz*, 634 F.3d 1247, 1268–70 (11th Cir. 2011) ("We hold that it is improper to ask a testifying defendant whether another witness is lying."); *United States v. Harris*, 471 F.3d 507, 511–12 (3d Cir. 2006) ("Today, we follow our sister circuits and hold that asking one witness whether another is lying is inappropriate."); *United States v. Freitag*, 230 F.3d 1019, 1024 (7th Cir. 2000) ("Because credibility questions are for the jury, it is improper to ask one witness to comment on the veracity of the testimony of another witness."); *United States v. Henke*, 222 F.3d 633, 643 (9th Cir. 2000) (forcing a defendant to comment on the veracity of another witness's testimony is inappropriate); *Broyles v. Cantor Fitzgerald & Co.,* No. 3:10-857JJB-CBW, 2017 WL 3946261, at *3 (M.D. La. Aug. 18, 2017) (granting defendants' motion *in limine* precluding "were-they-lying" questions in a civil action).

[77] *Broyles,* 2017 WL 3946261, at *3; *Pereira,* 848 F.3d at 21–22; *Schmitz*, 634 F.3d at 1268.
[78] *Id.*

[79] *See Pereira*, 848 F.3d at 22; *Schmitz*, 634 F.3d at 1269.

"were-they-lying" questions are argumentative and put the witness in the impossible situation of either calling someone a liar or undermining the witness's own credibility.[80] Further, such questions have little probative value, but will prejudice the defendants and waste valuable court time and resources.[81]

Accordingly, the Court should issue an order, *in limine*, excluding any testimony or evidence as to one witness's opinion of the veracity of another witness's testimony or one witness's opinion on the truthful character of another witness, and prohibit Archer's counsel from asking any such questions of a witness at trial.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court grant the foregoing motions *in limine*.

---

[80] *Id.*

[81] Fed. R. Evid. 403.

Dated:  January 30, 2018

Respectfully submitted,

/s/ *Brett C. Govett*

Brett C. Govett (Bar No. 08235900)
Katherine Lett (Bar No. 24007548)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201
Tel:  (214) 855-8118
Fax:  (214) 855-8200
brett.Govett@nortonrosefulbright.com
katherine.Lett@nortonrosefulbright.com

Layne E. Kruse (Bar No. 11742550)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, TX 77010
Tel:  (713) 651-5151
Fax:  (713) 651-5246
layne.Kruse@nortonrosefulbright.com

Steven R. Kuney (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Liam J. Montgomery (*pro hac vice*)
Matthew C. Monahan (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
skuney@wc.com
jpitt@wc.com
lmontgomery@wc.com
mmonahan@wc.com

*Counsel for Defendants Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation*

/s/ *Howard D. Scher*

Howard D. Scher
Kenneth L. Racowski
Carrie G. Amezcua
Thomas Manning
Samantha L. Southall
David A. Schumacher
Hyun Yoon
BUCHANAN INGERSOLL & ROONEY, PC
50 S 16th Street
Suite 3200
Philadelphia, PA 19102
215-665-3859
215-665-8760 (fax)
howard.scher@bipc.com
kenneth.racowski@bipc.com
carrie.amezcua@bipc.com
thomas.manning@bicp.com
samantha.southall@bipc.com
david.schumacher@bipc.com
eric.yoon@bipc.com

Thomas J. Ward
Claire Abernathy Henry
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
903-757-6400
903-757-2323 (fax)
tjw@wsfirm.com
claire@wsfirm.com

*Counsel for Defendant Benco Supply Co.*

*/s/ Paul F. Schuster*
Paul Featherstone Schuster
John Patrick McDonald
Andrew Martin Buttaro
Matthew K. Hansen
LOCKE LORD LLP
2200 Ross Ave, Suite 2800
Dallas, TX 75201-6776
214.740.8511
214.746.8102 (fax)
pschuster@lockelord.com
jpmcdonald@lockelord.com
andrew.buttaro@lockelord.com
mkhansen@lockelord.com

Lauren Morgan Fincher
LOCKE LORD LLP
600 Congress Ave
Suite 2200
Austin, TX 78701
512-305-4700
512-305-4800 (fax)
lfincher@lockelord.com

Stephen Chuk
Adrian Fontecilla
Colin R. Kass
Christopher Ondeck
PROSKAUER ROSE, LLP - DC
1001 Pennsylvania Avenue NW
Washington, DC 20016
202-416-6697
202-416-6899 (fax)
schuk@proskauer.com
afontecilla@proskauer.com
ckass@proskauer.com
condeck@proskauer.com

Barack S Echols
Richard C Godfrey
J Andrew Langan
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Suite2400
Chicago, IL 60654
312/862-2000

*/s/ James J. Long*
James J. Long
Scott M. Flaherty
Ruvin S. Jayasuriya
Jay W. Schlosser
Mark G. Schroeder
BRIGGS AND MORGAN, P.A.
2200 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
612.977.8745
612.977.8650 (fax)
jlong@briggs.com
sflaherty@briggs.com
rjayasuriya@briggs.com
jschlosser@briggs.com
mschroeder@briggs.com

Clyde Moody Siebman
Stephanie Rene' Barnes
SIEBMAN, BURG, PHILLIPS & SMITH LLP
4949 Hedgcoxe Road
Suite 230
Plano, TX 75024
214-387-9100
214-387-9125 (fax)
clydesiebman@siebman.com
stephaniebarnes@siebman.com

*Attorneys for the Patterson Companies, Inc.*

312/862-2200 (fax)
barack.echols@kirkland.com
richard.godfrey@kirkland.com
andrew.langan@kirkland.com

*Attorneys for Henry Schein, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel

of record by using the Court's electronic filing system on January 29, 2018.

*Paul F. Schuster*
Paul F. Schuster

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7(h)-(i), I hereby certify that on December 20, 2017, counsel for

Defendants conferred with counsel for Plaintiff, via telephone, concerning the above motions *in*

*limine*. The parties reached an impasse, and were unable to reach an agreement. Counsel for

Plaintiff affirmed Plaintiff opposes the relief sought herein.

*Paul F. Schuster*
Paul F. Schuster

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal

pursuant to the Protective Order entered in this case (Dkt. 116).

*Paul F. Schuster*
Paul F. Schuster