**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ARCHER & WHITE SALES, INC., | ) |
| Plaintiff, | ) Civil Action No. 2:12-cv-00572-JRG |
| v. | ) ORAL ARGUMENT REQUESTED |
| HENRY SCHEIN, INC., et al., | ) **FILED UNDER SEAL** |
| Defendants. | ) |

**DEFENDANT BENCO DENTAL SUPPLY COMPANY'S
REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

ARGUMENT ..........................................................................................................................1

I.  Archer Concedes That It Has No Claims For Damages Related to Dynamic Dental..........1

II. The Statute of Limitations Bars All Claims Against Benco That Accrued on or Before August 1, 2013. ......................................................................................................2

III. Benco Is Entitled To Summary Judgment On All Claims Asserted by Archer. .................6

    A.  Instrumentarium. ....................................................................................................7

    B.  NSK .........................................................................................................................9

    C.  The 2010 Phone Call from Chuck Cohen to James Archer, Sr. .............................9

CONCLUSION ........................................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson News, L.L.C. v. American Media, Inc.*, 123 F. Supp. 3d 478 (S.D.N.Y. 2015) .......... 7, 8
*Culberson, Inc. v. Interstate Elec. Co.*, 821 F.2d 1092 (5th Cir. 1987) ......................................... 7
*Delek Reining, Ltd. v. Occupational Safety and Health Review Comm'n*,
   845 F.3d 170 (5th Cir. 2016) ...................................................................................................... 3
*Gabelli v. SEC*, 568 U.S. 442 (2013) ............................................................................................ 3
*Holiday Wholesale Grocery Co. v. Philip Morris Inc.*, 231 F. Supp. 2d 1253(N.D. Ga. 2002) ..... 7
*In re Pool Prods. Distribution Market Antitrust Litig.*, 988 F. Supp. 2d 696 (2013) .................... 3
*Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016) ............................................. 2
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................ 7
*Pool Products*, 988 F. Supp. 2d at 725 ......................................................................................... 4
*State of Texas v. Allan Construction Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir.1988) ................ 3, 4
*Valspar Corp. v. E. I. du Pont de Nemours & Co.*, 873 F.3d 185 (3d Cir. 2017) ........................ 10

**Statutes**

15 U.S.C. § 15 .................................................................................................................................. 2
TEX. BUS & COMM. CODE § 15.25(a) .............................................................................................. 2
TEX. BUS & COMM. CODE §§ 15.04 ................................................................................................ 2

**Rules**

Fed. R. Evid. 404(b)(1) ................................................................................................................... 7

Defendant Benco Dental Supply Company ("Benco") hereby respectfully submits this reply brief in support of its motion for summary judgment.

Plaintiff Archer & White Sales, Inc.'s ("Archer") response throws the proverbial kitchen sink at Defendants collectively – repeatedly attributing conduct to "the co-conspirators" – without distinguishing what alleged actions are attributable to Benco or supposedly establish Benco's participation in any conspiracy to boycott Archer. In the end, there are no facts sufficient to establish Benco's participation in any such conspiracy. The evidence that Archer cites is (1) inadmissible hearsay, (2) self-contradictory and (3) does not tend to exclude the possibility that Benco was acting in its own self-interest as to the scant Benco-specific actions Archer describes. As such, Benco is entitled to summary judgment as to all claims against it.

## ARGUMENT

### I. Archer Concedes That It Has No Claims For Damages Related to Dynamic Dental.

As Benco explained in its opening brief, Archer has no standing to assert claims for damages relating to Dynamic Dental, because any such claims belong to Benco under the Asset Purchase Agreement – that was approved by Archer – through which Benco acquired the assets, specifically including all claims, of Dynamic Dental. Archer now concedes not only that it cannot recover any damages suffered by Dyanmic Dental as a result of any alleged anticompetitive conduct, but also that Archer itself has no damages arising out of that conduct. Accordingly, Benco is entitled to summary judgment as to all claims for damages, including, but not limited to claims arising from Pelton & Crane's termination of Dynamic Dental, Belmont's termination of Dynamic Dental, and Dynamic Dental's alleged rejection from membership in the ADC.

## II. The Statute of Limitations Bars All Claims Against Benco That Accrued on or Before August 1, 2013.

It is undisputed that Archer did not file any suit against Benco until August 1, 2017. Archer argues, without any citation or legal support, that the joint and several nature of liability for antitrust cases means that the applicable four year statute of limitations, 15 U.S.C. § 15b; TEX. BUS & COMM. CODE §§ 15.04, 15.25(a), does not bar Archer's claims against Benco that accrued beyond the limitations period. Archer also asserts, alternatively, that there is sufficient evidence in the record to establish that "fraudulent concealment" applies here and tolled the statute of limitations until some unspecified time in 2017, when Benco and Patterson first responded to discovery requests. Neither argument is correct.

Archer's unprecedented argument is that once it brought suit against Schein and the Danaher Defendants in 2012, the statute of limitations was indefinitely tolled for any other person or company Archer might later decide to sue as part of the alleged conspiracy. Despite the wealth of judicial decisions dealing with alleged conspiracies and statutes of limitations, Archer does not cite to a single case holding, or even suggesting, such tolling exists or is permissible. The Seventh Circuit's opinion in *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016) is not remotely on point or analogous. In that case, the Court held that an entity *that had rejoined a conspiracy* after it had emerged from bankruptcy should not be dismissed *at the class certification* stage, based upon the fact that it had previously filed for bankruptcy. The Court explained that there would be no conflict with bankruptcy law, because any liability that a jury might find "would be predicated on post-discharge conduct." *Id.* at 930. There was no discussion in that case about whether the limitations period is tolled for any and all subsequently alleged conspirators in an antitrust case the minute the first alleged conspirator is sued.

Moreover, unlike in *Kleen Products*, where there was no conflict with the bankruptcy

laws by allowing liability arising from post-discharge conduct, allowing pre-statute of limitations claims against Benco to proceed would directly conflict with the statutory four-year limitations period. As Benco has explained, both the Supreme Court and the Fifth Circuit have explained the value and importance of enforcing statutes of limitations. *See* Benco's Mot. S.J. at 14 (citing *Gabelli v. SEC*, 568 U.S. 442, 448 (2013) and *Delek Reining, Ltd. v. Occupational Safety and Health Review Comm'n*, 845 F.3d 170, 177 (5th Cir. 2016)). Archer offers no accepted or reasoned basis upon which this Court can or should disregard the statute of limitations simply by virtue of the fact that liability under the antitrust laws is joint and several.

Although Archer alternatively invokes "fraudulent concealment" to avoid the bar of the statute of limitations, the record in this case cannot support the application of that doctrine here. For fraudulent concealment to apply, Archer must show two elements: "that the defendants concealed the conduct alleged" and "that the plaintiffs failed, despite the exercise of due diligence, to discover the facts that form the basis of the claims." *In re Pool Prods. Distribution Market Antitrust Litig.*, 988 F. Supp. 2d 696, 723 (2013) (citing *State of Tex. v. Allan Constr. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir.1988)). "Concealment" in the first element requires that the defendant "engaged in affirmative acts of concealment," which must be "'some trick or contrivance tending to exclude suspicion and prevent inquiry.'" *Id.* (quoting *Allan Constr. Co.*, 851 F.2d at 1528-29). "Concealment by silence is not enough." *Id.*

Archer's claim for fraudulent concealment as to Benco fails for two, independent undisputed reasons. First, Archer believed as early as March 2008 that there was a conspiracy among at least some distributors to get manufacturers to stop dealing with Archer. Archer's entire original complaint, and the bulk of its subsequent amended complaints, concern Archer's claims of a conspiracy among Schein, Burkhart and the Danaher Defendants to boycott Archer and Dynamic

3

Dental. In fact, at that time, Archer itself encouraged secret recordings of conversations that it now relies upon as evidence of that suspected wrongdoing. Archer claims now though, that, although it was aware of some conspiracy in 2008, it was not aware of Patterson and Benco's participation in the alleged conspiracy until some unspecified time later. (Pl's Brief at 60.) But that is not sufficient to invoke fraudulent concealment. Archer does not point to any "affirmative act" by any alleged conspirator[1] that constituted some "trick or contrivance to exclude suspicion or prevent inquiry" as to Benco or Patterson, as required under Fifth Circuit law. At most, Archer's allegations are that defendants failed to affirmatively disclose Benco's alleged participation in the claimed conspiracy, which is not enough. *See, e.g., Pool Products*, 988 F. Supp. 2d at 725 ("The [complaint] alleges, at most, that defendants engaged in communications that were not disclosed to outsiders. That is insufficient."). Furthermore, Archer does not identify any statement denying wrongdoing by any alleged co-conspirator that it reasonably relied upon, *Allan Construction*, 851 F.2d at 1532-33, nor could Archer have reasonably relied upon any such statement, given its stated belief, as early as March 2008 that there was a conspiracy involving Schein, Burkhart and the Danaher Defendants to boycott Archer. Archer's failure to identify any act of affirmative concealment that it reasonably relied upon is, independently, fatal to its claim for fraudulent concealment.

The second, independent reason why Archer's claim for fraudulent concealment fails demonstrates the inherent contradiction in all of Archer's claims against Benco. Archer claims that in December 11, 2008, it was instructed by an Instrumentarium representative, Mike Null, to cancel certain sales in Pennsylvania and Maryland – outside of Archer's sales territory – because Archer had failed to get approval for those sales and they "had caused considerable problems for

---

[1] Archer recites case law for the proposition that a co-conspirator could be liable for the affirmative acts of concealment of another co-conspirator (Pls' Brief at 60), but then fails to identify any affirmative act of concealment by any alleged co-conspirator.

4

both the dealer stores in these areas." (Ex. 144 to Pl's Brief (email from Mike Null to Archer dated Dec. 11, 2008)). ███████████████████████████████████████████████████████████████ In fact, Archer relies upon this email as one of the few, thin, pieces of evidence tying Benco into the alleged conspiracy to damage Archer's business. (*See* Pl's Br. at 32.) Thus, Archer is simultaneously claiming that (1) the mere fact that Instrumentarium allegedly received "nearly simultaneous" complaints from Patterson and Benco regarding Archer's out-of-territory sales is sufficient evidence for a jury to infer Benco's participation in the alleged conspiracy; but (2) such evidence was insufficient to even suggest to Archer that Benco (or Patterson) was part of the conspiracy it already believed existed between Schein and Burkhart to pressure manufacturers not to deal with Archer.

Benco's actions were in no way "concealed" by trick or artifice. Archer believed *at the time* that Benco and other distributors had been complaining about Archer's selling out of its territory at below-market prices – indeed, the manufacturers themselves told Archer about such complaints. This was all open knowledge. But such conduct never caused Archer to suspect that Benco was part of any conspiracy to boycott Archer as late as one week before it filed the complaint naming Benco, as admitted by Archer's managing agent. The fact is that Archer accepted restrictions on its sales outside of its designated territory without raising claims of conspiracy, because competitor complaints to manufacturers – about low-pricing by non-full service dealers or dealers selling outside of designated territory – were common practice in this industry and across industry in general. Such complaints, and the manufacturers' responses to those complaints, are an insufficient basis from which to infer an illegal agreement.

This same defect is found in another piece of "evidence" Archer relies upon. Archer's

claim that Chuck Cohen, of Benco, in August 2010, offered to pay Archer between $600,000 to $1 million. (Pl's Br. at 9-10; 38.) Archer now claims that it did not understand why Benco made this offer and that it was inexplicable other than as an attempt prevent Archer from suing Schein and Burkhart to shield Benco's own participation in the alleged conspiracy. *Id.* at 38. Although Archer's characterization of this call is demonstrably false, as explained below, Archer is simultaneously claiming (1) that this "bizarre" offer to it, for which Archer now claims Benco "had no legitimate business decision," supports an inference that Benco participated in the alleged conspiracy; and (2) there was no reason for Archer to be suspicious about the alleged offer such that fraudulent tolling applies. Archer's claim of fraudulent concealment is untenable.

For these reasons, and for the reasons set forth in Benco's opening brief, the statute of limitations bars all claims for damages against Benco that accrued on or before August 1, 2013.

### III. **Benco Is Entitled To Summary Judgment On All Claims Asserted by Archer**.

In its motion to dismiss, Benco explained that, contrary to Archer's conclusory allegations in the operative complaint, there was no evidence in the record that Benco played any role whatsoever in Danaher's termination of Archer in February 2014. Every witness denied that Benco played any role in Danaher's decision, and there is no documentary evidence of any actions by Benco related to that termination. (Benco's Mot. S.J. at 7-10.) In response, Archer concedes Benco's point. Archer does not cite to any evidence of Benco's involvement in Danaher's termination of Archer. Instead, Archer points to a mish-mash of unrelated incidents that Archer claims support an inference of conspiracy as to Benco.[2] Specifically as to Benco, Archer points

---

[2] Because there is no evidence Benco participated in any conspiracy to boycott Archer, Plaintiff spends the bulk of its brief citing cherry-picked evidence that supposedly shows Benco's participation in other alleged conspiracies, regarding, for example Amazon.com and state dental associations. None of those alleged conspiracies have been proved, and Benco denies participating in any such conspiracies. In fact, Benco has filed a motion for summary judgment in a case pending in federal court in New York concerning the alleged boycott of state dental associations and is awaiting a decision on that motion. Furthermore, any evidence cited by Archer concerning the existence of those other conspiracies is not evidence that Benco participated in the alleged conspiracy to boycott Archer. *See*

to three pieces of evidence that Benco participated in a conspiracy to boycott Archer. None of them are sufficient to support an inference of conspiracy or refute an inference of independent action by Benco.

### A. Instrumentarium.

First, Archer points to an email from December 11, 2008 (discussed above) through which Instrumentarium supposedly directs Archer to stop sales to two doctors – one in Pennsylvania and the other in Maryland – that were outside of Archer's territory and for which Archer had not gotten pre-approval, as required by its agreement with Instrumentarium. (Pl's Exh. 114.)[3] Although Archer believed that Benco and Patterson had been the dealers who had complained to Instrumentarium, it did not consider this to be evidence of any conspiracy – until 9 years later and the filing of its Amended Complaint. And it is not evidence of any conspiracy.

As the Fifth Circuit has explained, "[d]istributor complaints are to be expected in response to another's price-cutting. . . . They do not indicate an illegal conspiracy"" *Culberson, Inc. v. Interstate Elec. Co.*, 821 F.2d 1092, 1093 (5th Cir. 1987). Multiple distributors complaining about a price-cutting rival reflects nothing more than a parallel response to a common stimulus, and are not indicative of conspiracy. *Cf. Anderson News, L.L.C. v. American Media, Inc.*, 123 F. Supp. 3d 478, 504 (S.D.N.Y. 2015) ("[I]t was Anderson News' own action—imposing a plan which was good for it, but unacceptable to everyone else—that provided a common eco-

---

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 595–96 (1986) (evidence of a conspiracy in one market "does not tend to show a conspiracy … in another"); *see* Fed. R. Evid. 404(b)(1); *see also Holiday Wholesale Grocery Co. v. Philip Morris Inc.*, 231 F. Supp. 2d 1253, 1312–13 (N.D. Ga. 2002) ("For the finder of fact to draw the inferences permissible under Rule 404(b) with regard to [alleged conspiracies in other] jurisdictions, the court would need to conduct mini-trials on Defendants' conduct . . . Such a course of action would violate Rule 403 by causing unfair prejudice to Defendants, confusing the issues, and resulting in undue delay of this litigation.") (quoting prior discovery order). In the limited space of this brief, Benco focuses solely on evidence concerning the alleged boycott of Archer.

[3] This document is also inadmissible hearsay and thus cannot support Archer's opposition to Benco's Motion for Summary Judgment.

nomic stimulus for Defendants' attempts to switch wholesalers."); *see id.* at 508 ("Defendants, when presented with a common economic stimulus which Plaintiffs themselves instigated, acted in a manner that was consistent with each Defendant's own, separate economic self-interest.").

There is no evidence, admissible or otherwise, of any communications between Benco and Patterson concerning the events described in this email, and no other evidence to support any inference that Benco's actions were anything other than a unilateral, expected response of an unauthorized dealer selling into the territory at below-market prices. Moreover, the email chain itself reveals that Archer had an agreement with Instrumentarium that it would not market its services in areas outside of its designated territory without pre-approval from Instrumentarium. Archer does not suggest that its own agreement with Instrumentarium was illegal, or that Archer's violations of that agreement were not a sufficient basis for Instrumentarium to instruct Archer to cancel those sales.



It is not unexpected – and does not tend to exclude the possibility that Benco was acting unilaterally in its own interest – for dealers to complain that Archer was selling outside of its territory. Archer's conduct in violating its agreement with Instrumentarium affected multiple distributors, and the resulting complaints from multiple distributors do not suggest conspiracy rather than unilateral parallel responses to a common stimulus.

### B. NSK.



### C. The 2010 Phone Call from Chuck Cohen to James Archer, Sr.

Finally, Archer claims that in 2010, Chuck Cohen of Benco called Archer and offered between $600,000 and $1 million to Archer as "settlement" of Archer's claims against Schein, Burkhart and the Danaher Defendants. Archer theorizes that Cohen made this offer to prevent litigation that would lead to the discovery of Benco's participation in the alleged conspiracy. This is baseless, and Archer badly mischaracterizes this phone call. Archer's treatment of this evidence is a classic case of working backward – assuming a conspiracy and then twisting the



9

evidence to fit the theory. "[A] litigant may not proceed by first assuming a conspiracy and then explaining the evidence accordingly." *Valspar Corp. v. E. I. du Pont de Nemours & Co.*, 873 F.3d 185, 198 (3d Cir. 2017) (citation omitted)).

This phone call does not support an inference of conspiracy. Benco had purchased the assets of Dynamic Dental, and Dynamic's owner, Skip Pettus, became a Benco employee, but (a) Archer claimed Dynamic had not intended to transfer its rights to sue Schein, Burkhart and Danaher to Benco, and (b) Archer has also claimed that it was entitled to benefits totaling $1.3 million under its agreement with Dynamic. (Pl's Brief at 38.) In the part of the recorded call that Archer omits, Cohen explained "I understand *and realize there is a debt*, and I also recognize that *having Skip* sue Burkhart and sue Schein now is just not going to work on a lot of different levels." (Pl's Ex. 31, at 2:9-13.) The transcript itself explains Benco's motivation for offering payment to Archer: (1) to clear the "debt" that Cohen mentioned (the "debt" that Pettus and Dynamic owed to Archer), and (2) to avoid Benco, through its employee, Skip Pettus, becoming involved in a lawsuit that involved its competitors (and Danaher, an important Benco supplier). There is no suggestion that Benco's alleged offer would "settle" any claims that Archer itself had against Schein or anyone else. In arguing that Benco's alleged offer was bizarre and inexplicable, Archer ignores the fact that Cohen expressly acknowledged the "debt" to Archer and explained that he did not want Benco involved in a lawsuit that would surely be sensitive to its competitors and suppliers. It is sheer, unsupported speculation to claim that this was an effort to shield Benco's participation in the claimed conspiracy.

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in Benco's opening brief and co-defendants' briefs, Benco respectfully requests that the Court grant summary judgment in favor of Benco as to all claims asserted in the Second Amended Complaint.

Dated: February 9, 2018

Respectfully submitted,

/s/ Howard D. Scher
Howard D. Scher (admitted *pro hac vice*)
Kenneth L. Racowski (admitted *pro hac vice*)
BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place, Suite 3200
50 South 16th Street
Philadelphia, PA 19102
(215) 665-8700
howard.scher@bipc.com
kenneth.racowski@bipc.com
    - and -
T. John Ward
Claire Abernathy Henry
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400
tjw@wsfirm.com
claire@wsfirm.com

*Counsel for Defendant Benco Dental Supply Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 9th day of February, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

*/s/ Howard D. Scher*
Howard D. Scher

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case (Dkt. No. 116).

*/s/ Howard D. Scher*
Howard D. Scher