# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ARCHER AND WHITE SALES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HENRY SCHEIN, INC., DANAHER | ) CIVIL ACTION NO. 2:12-cv-00572-JRG |
| CORPORATION, INSTRUMENTARIUM | ) |
| DENTAL INC., DENTAL EQUIPMENT | ) *Filed Under Seal* |
| LLC, KAVO DENTAL TECHNOLOGIES, | ) *Contains Confidential Information* |
| LLC AND DENTAL IMAGING | ) |
| TECHNOLOGIES CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT HENRY SCHEIN, INC.'S REPLY TO ARCHER'S RESPONSE TO SCHEIN'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Henry Schein, Inc. ("Schein") files this reply brief in support of its *Motion for Partial Summary Judgment* (Dkt. 293). Partial summary judgment is proper against Archer & White Sales, Inc. ("Archer") for two main reasons.

First, Archer lacks standing to assert claims on behalf of its former business partner, Dynamic Dental Solutions, Inc. ("Dynamic"). Despite acknowledging this, Archer's damages model incorporates and relies on Dynamic-owned claims. For instance, the only pleaded basis for Archer's ▮▮▮▮▮▮ consumables damages is that Dynamic—not Archer—was denied membership in the American Dental Cooperative ("ADC") in February 2008 (and therefore Dynamic was unable to purchase consumables at a reduced rate). Only Dynamic can assert this claim. Additionally, Archer's damages model improperly includes Dynamic's sales to its Oklahoma customers (that Dynamic could not continue making after its ability to distribute Pelton & Crane products was terminated), and this inclusion in Archer's baseline sales number inflates Archer's damages figure.

Second, Archer's claims relating to Dynamic, consumables, and even Archer's sales restriction to Texas accrued no later than March 2008. The summary-judgment evidence demonstrates that in March 2008, Archer consulted counsel about antitrust claims and recorded conversations discussing antitrust issues.

Archer acknowledges the legal bar to asserting Dynamic's claims and seeking damages Dynamic allegedly suffered from not being allowed to sell certain equipment in Oklahoma, but still calls the 2008 Oklahoma meeting involving Dynamic (but not Archer) "the catalyst for this lawsuit." Resp. at 2. The Court should reject Archer's attempt to assert alleged harms to Dynamic as a basis for Archer to recover in this lawsuit, both on standing and limitations grounds.

## ARGUMENT & AUTHORITIES

    A.    **Summary judgment is proper because large portions of Archer's damages are based on the Dynamic termination.**

Archer denies it is asserting claims on behalf of Dynamic, but an examination of Archer's damages reveals that at least two significant components are based on Dynamic's alleged injuries. First, Archer's ▇▇▇▇ "consumables" damage claim is based on the allegation that Dynamic lost the opportunity to become a member of the ADC. Archer claims that had Dynamic been permitted to join the ADC, Archer could have purchased consumables through Dynamic at a lower rate. SAC (Dkt. 261) ¶¶ 47, 48, 149. As Archer pleaded, "ADC membership is vital to the ability of smaller, independent dealers to obtain access to various lines of dental supplies and equipment that these dealers could not otherwise obtain and was critical to Archer Dental's and Dynamic's business plan," but "before Dynamic could realize the benefits of its membership, ADC revoked Dynamic's membership." *Id*. ¶¶ 47, 48. This is Archer's only pleaded basis for seeking consumables damages. But only Dynamic can claim injury from its denial of ADC membership; Dynamic, not Archer, was denied membership.[1] *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (party has standing to "assert his own legal rights and interests," not those of third parties); *United States v. Acadiana Treatment Sys. Inc.*, 214 F.3d 1350, at *3 (5th Cir. 2000) (shareholder-standing rule is an "equitable restriction against shareholder suits to redress injuries to a corporation"). In sum, Archer claims damages based on an inability to purchase consumables from the ADC, but that inability is predicated solely on the ADC's refusal to accept Dynamic as a member in February 2008—and Archer cannot assert claims on behalf of

---

[1] Although not in its pleading and thus not a proper basis for any such claim, Archer has also linked this claim in deposition to Archer's effort to join the ADC in 2003. Not only is this not pleaded, but there are no factual allegations linking this denial to anything any Defendant allegedly did and any such claim would obviously be barred by limitations.

Dynamic.[2]

Second, Archer's "affected brands" damages is based in significant part on Dynamic's sales in Oklahoma. As much as it tries to avoid the issue, Archer admits that "the sales to Dynamic … are … included in a model of the but-for world." Resp. at 47. Because these sales are included ███████████████, Archer suggests there is no harm from their inclusion. But including these sales ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Despite Archer's attorney argument otherwise, Archer is claiming as damages the "lost" sales Dynamic would have made if its distribution ability had not been terminated.[3]

Thus, summary judgment is not only proper on claims that belong to Dynamic, but as a result of this legal fact all of Archer's "consumables" damages—and a significant part of its "affected equipment" damages—are barred.[4]

---

[2] Even if Dynamic were the party asserting this claim, as opposed to Archer, the claim is completely illogical and unsupported by any admissible facts—there are no facts suggesting that Schein or any other defendant conspired with anyone to ask the ADC to deny Dynamic's membership. Indeed, the ADC exists to allow smaller distributors to obtain the buying power of a larger distributor like Schein, Patterson, or Benco (thus, the ADC would never listen to any of these Defendants even if such "input" was actually offered). SAC ¶ 48.

[3] Excluding Dynamic-related sales also implicates Archer's claimed lost sales linked to ███████. Archer's brief makes clear that Archer is seeking damages based on ███████ termination of Dynamic. See, e.g., Resp. at 17, 39 n.5 (linking ███████ termination of Dynamic to damages).

[4] Moreover, since Archer's "consumables" and "non-attached" equipment damages are based on ratios of the "affected equipment" numbers, these other damages are also improperly infected with these lost Dynamic sales. These other damages are improper for a host of other reasons as well.

3

**B.    Summary judgment is proper on limitations grounds for all of the claims related to Dynamic, consumables, and even Archer's restriction to Texas.**

The statute of limitations bars any claims based on the events occurring before April 13, 2008.[5] This is a separate and independent reason that Archer's consumables claim, which is based on the February 2008 denial of Dynamic's membership into the ADC, is barred. Further, all claims associated with the late February or early March 2008 termination of Dynamic (which Archer now re-characterizes as Archer's ability to sell into Oklahoma) are also barred because Archer did not bring its lawsuit until August 2012.

As explained, Archer's claim for lost "consumables" damages depends entirely on the ADC's exclusion of Dynamic in February 2008. *See* SAC ¶¶ 47, 48, 149 (asserting that the ADC's refusal to accept Dynamic as a member in February 2008 led to Archer's consumables damages). There is no other pleaded basis for Archer's Dynamic-related claims, and Archer did not bring its lawsuit until August 2012, more than four years after this known fact. Thus, Archer's Dynamic-related claims (and any claims before April 13, 2008) are barred by the four-year statute of limitations.

The same applies to any claim by Archer related to the termination of Dynamic's ability to sell equipment in Oklahoma. Archer attempts to sidestep this result by arguing that even though Dynamic was no longer allowed to sell in Oklahoma, somehow Archer might still be allowed to sell. This argument is inconsistent with Archer's theory of the case. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. This flies in the face of Archer's conspiracy theory. ▇▇▇▇▇▇

---

[5] Archer has objected to the tolling agreement as summary-judgment evidence. Dkt. 352 at 2. Archer filed its complaint on August 31, 2012. Dkt. 1. Without this tolling agreement, then, Archer's claims accruing before August 31, 2008 are untimely, and Archer (improperly) pins the accrual date as "May 2008." Resp. at 50. By Archer's logic, all such claims are time-barred.

4

competition from these very people—something Archer claims and Schein denies—how would Archer be allowed to use the exact same salespeople to sell in Oklahoma under Archer's name but not under Dynamic's name? Even accepting Archer's assumptions, this theory is illogical.[6]

Moreover, Archer's attempts to push the accrual date to May 2008 fails on the simple fact that Archer, not Dynamic, consulted counsel about antitrust matters on March 7, 2008. Moreover, Archer called this whole course of conduct "illegal" on a March 12, 2008 recording. Indeed, the very fact that Archer started recording conversations—and asked others to record conversations as a ruse to entrap individuals into validating the recorder's theories and conclusions—itself demonstrates that Archer was on notice of the supposedly illegal conduct. And inquiry notice is all that is required to start limitations running. *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1171 (5th Cir. 1979); *see also State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1533 (5th Cir. 1988).[7]

## CONCLUSION

For the foregoing reasons, Schein respectfully requests that the Court grant partial summary judgment and all other relief to which it is justly entitled.

---

[6] It is hardly reasonable to believe that Archer, with no local presence, would be permitted to sell product in a territory when its former local affiliate had just been told it would not be permitted to sell in that territory, ███████████████████████████████████████████████████████████████████████████████████████████.

[7] Archer suggests in a footnote that its arguments concerning the continuing-conspiracy doctrine and fraudulent concealment might apply to Schein's motion, although none of the "evidence" cited in that section relates to Schein or supports either theory. *See* Resp. (Dkt. 353) at 50, n.11. There are no facts linking 2008 conduct in Oklahoma to any other alleged conspiracy, nor is there any evidence of concealment. Archer's effort to link the Dynamic set of facts (largely centered on Dynamic salesman Salerno) in Oklahoma in 2008 to ill-founded, later "conspiracies" having nothing to do with Dynamic or Archer does not withstand scrutiny. Nor is there any evidence of concealment. Archer's half-hearted attempt to salvage this barred claim fails. Schein incorporates its motion for summary judgment and its reply filed today on this issue, and incorporates co-defendants' motions and replies to this faulty continuing-conspiracy and fraudulent-concealment theory.

| | |
|---|---|
| Dated: February 9, 2018 | Respectfully submitted,<br><br>*Paul F. Schuster*<br>Paul F. Schuster<br>  Texas Bar No. 00784931<br>  pschuster@lockelord.com<br>John P. McDonald<br>  Texas Bar No. 13549090<br>  jpmcdonald@lockelord.com<br>Matthew K. Hansen<br>  Texas Bar No. 24065368<br>  mkhansen@lockelord.com<br>Andrew Buttaro<br>  Texas Bar No. 24092207<br>  andrew.buttaro@lockelord.com<br>**LOCKE LORD LLP**<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas 75201<br>Telephone: (214) 740-8000<br>Facsimile: (214) 740-8800<br><br>Christopher Ondeck (*pro hac vice*)<br>  condeck@proskauer.com<br>Adrian Fontecilla (*pro hac vice*)<br>  afontecilla@proskauer.com<br>Stephen Chuk (*pro hac vice*)<br>  schuk@proskauer.com<br>**PROSKAUER ROSE LLP**<br>1001 Pennsylvania Avenue NW<br>Washington, DC 20016<br>Telephone: (202) 416-5865<br>Facsimile: (202) 416-6899<br><br>Barack S. Echols (*pro hac vice*)<br>  barack.echols@kirkland.com<br>Richard C. Godfrey, P.C. (*pro hac vice*)<br>  richard.godfrey@kirkland.com<br>J. Andrew Langan, P.C. (*pro hac vice*)<br>  andrew.langan@kirkland.com<br>**KIRKLAND & ELLIS LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br><br>*Counsel for Defendant Henry Schein, Inc.* |

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case (Dkt. 116).

*Paul F. Schuster*
Paul F. Schuster

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing *Reply to Archer's Response to Schein's Motion for Partial Summary Judgment* has been served upon all counsel of record by using the Court's electronic filing system on February 9, 2018 and email.

*Paul F. Schuster*
Paul F. Schuster