**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ARCHER AND WHITE SALES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HENRY SCHEIN, INC., DANAHER CORPORATION, INSTRUMENTARIUM DENTAL INC., DENTAL EQUIPMENT LLC, KAVO DENTAL TECHNOLOGIES, LLC, DENTAL IMAGING TECHNOLOGIES CORPORATION, PATTERSON COMPANIES, INC., AND BENCO DENTAL SUPPLY CO.,<br><br>Defendants. | Case No. 2:12-CV-00572-JRG-RSP<br><br>**ORAL ARGUMENT REQUESTED**<br><br>*Filed Under Seal*<br>*Contains Confidential Information* |

**HENRY SCHEIN INC.'S
SEALED REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
ARCHER'S HORIZONTAL CONSPIRACY CLAIMS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................1

ARGUMENT .................................................................................................................................3

I.    ARCHER CANNOT AVOID SUMMARY JUDGMENT BY RELYING ON
PURPORTED EVIDENCE FROM OTHER CONSPIRACIES THAT DID NOT
INVOLVE, AND COULD NOT HAVE INJURED, ARCHER. ........................................3

II.   ARCHER HAS FAILED TO COME FORWARD WITH ANY EVIDENCE THAT
"TENDS TO EXCLUDE THE POSSIBILITY" OF SCHEIN'S INDEPENDENT
CONDUCT. .....................................................................................................................6

CONCLUSION .............................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................ 5, 10

*Astoria Entm't, Inc. v. Edwards*,
    159 F. Supp. 2d 303 (E.D. La. 2001), *aff'd*, 57 F. App'x 211 (5th Cir. 2003) ..................................... 3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 9

*Henderson Broad. Corp. v. Houston Sports Ass'n, Inc.*,
    647 F. Supp. 292 (S.D. Tex. 1986) ........................................................................................... 9

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010) ..................................................................................................... 8

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999) ..................................................................................................... 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................................................... 2, 3, 5, 10

*Miles Distribs., Inc. v. Specialty Const. Brands, Inc.*,
    476 F.3d 442 (7th Cir. 2007) ................................................................................................... 8

*MM Steel, L.P. v. JSW Steel (USA), Inc.*,
    806 F.3d 835 (5th Cir. 2015) ................................................................................................ 6, 7

*Monsanto Co. v. Spray-Rite Corp.*,
    465 U.S. 752 (1984) ............................................................................................................ 8, 9

*Rossi v. Standard Roofing, Inc.*,
    156 F.3d 452 (3d Cir. 1998) .............................................................................................. 6, 7, 10

*Seagood Trading Corp. v. Jerrico. Inc.*,
    924 F.2d 1555 (11th Cir.1991) ................................................................................................ 10

*Serfecz v. Jewel Food Stores*,
    67 F.3d 591 (7th Cir. 1995) ..................................................................................................... 4

*Tim W. Koerner & Assocs., Inc. v. Aspen Labs, Inc.*,
    492 F. Supp. 294 (S.D. Tex. 1980),
    *aff'd sub nom. Koerner & Assoc. v. Aspen Labs*, 683 F.2d 416 (5th Cir. 1982) ..................................... 9

## INTRODUCTION

Archer's Response confirms—rather than refutes—why this Court should grant summary judgment with respect to Archer's claim of any horizontal boycott agreement involving Schein. Despite the voluminous discovery in this case, including the production of over 600,000 pages of documents and over 30 depositions of party and non-party witnesses, Archer & White Sales, Inc. ("Archer") has not adduced *any* evidence raising a genuine issue of material fact supporting a claim that Henry Schein, Inc. ("Schein") agreed with its rival dealers Patterson, Benco, or Burkhart to boycott Archer.

Lacking such evidence, Archer's strategy in its Response is transparent—to try to misdirect and distract the Court with page upon page of purported "evidence" of "other conspiracies" for which Archer cannot credibly assert any claim.  Thus, the Response is chock-full of allegations concerning purported price-fixing to dental customers, efforts to deter ███████ from entering into the market for dental supply distribution, ██████████████████████████████████ █████████████████████████████████████████████████.  But this purported conduct is immaterial and irrelevant to the key question whether Schein *agreed* with any competitor to boycott Archer.  More fundamentally, it also is conduct for which Archer *cannot* assert *any* claim of injury or recover damages as a matter of well-settled law.

Archer cannot survive summary judgment by trumpeting its desire to serve as the "Robin Hood" of small dealers, self-charged with the responsibility "to right the wrong and to restore fair competition" to all dental product distribution markets.  Resp. at 1.  As it acknowledges (perhaps unwittingly), the only redressable legal claim this "small, family-owned business" asserts is that: 1) its distribution territory was improperly limited by defendant Pelton & Crane to Texas in

February 2008[1], and by defendant Instrumentarium in April 2009 and, 2) it was improperly terminated as a distributor in 2014—all purportedly as a result of an unlawful group boycott jointly orchestrated by its rival dealers.  Accordingly, at this summary judgment stage, Archer was required to come forward with **evidence** showing that Schein unlawfully agreed with another dealer to cause the territory limitations and termination that allegedly injured Archer.  That, however, is where Archer has utterly failed to carry its burden.

As described below, the only evidence Archer has proffered to support its boycott claim against Schein is that some Schein employees complained at various times to manufacturers about Archer and its low-priced sales.  But that is undisputed.  Schein admits that its employees complained about Archer.  They complained about Archer, they complained about defendant dealers Patterson and Benco, and they complained about Burkhart and numerous other competing dealers.  But evidence that Schein employees complained about Archer to their common manufacturers is legally insufficient to avoid summary judgment on Archer's horizontal boycott conspiracy claim.  Archer was required to come forward with more than that; it was required to proffer some evidence "tend[ing] to exclude the possibility" that the Schein salespeople acted independently from their competitors when they complained—in other words, some evidence that Schein **agreed** with another dealer to cause a manufacturer to terminate Archer or limit its distribution territory. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Because Archer has failed to adduce any such evidence, summary judgment in Schein's favor should be granted.

---

[1]   As set forth in Defendant Henry Schein, Inc.'s Motion for Partial Summary Judgment (Dkt. 296), any claim with respect to this reduction in Archer's distribution territory is barred by the statute of limitations.

## ARGUMENT

I.   **ARCHER CANNOT AVOID SUMMARY JUDGMENT BY RELYING ON PURPORTED EVIDENCE FROM OTHER CONSPIRACIES THAT DID NOT INVOLVE, AND COULD NOT HAVE INJURED, ARCHER.**

Its Response shows that Archer completely misapprehends the burden it must satisfy at summary judgment.  Although it may desire to right all injuries to competition everywhere, antitrust law does not give Archer the legal right to do so.  It is entitled to maintain an action only for injuries *it* sustained from allegedly unlawful conduct.

In a "civil matter [a] plaintiff is not entitled to recover damages for all wrongs committed against society …. [It] may only recover for *its own* injuries.") *Astoria Entm't, Inc. v. Edwards*, 159 F. Supp. 2d 303, 316–17 (E.D. La. 2001), aff'd, 57 F. App'x 211 (5th Cir. 2003) (emphasis added.)  "To survive [Schein's] motion for summary judgment, [Archer] must establish that there is a genuine issue of material fact as to whether [Schein] entered into an illegal conspiracy that *caused [Archer]* to suffer a cognizable injury." *Matsushita*, 475 U.S. at 585–86 (emphasis added). Schein's "actions with respect to parties other than [Archer] *are irrelevant* to this determination." *Astoria*, 159 F. Supp. 2d at 317 (emphasis added).

Thus, although it devotes scores of pages to discussion of purported price-fixing agreements between Schein and Burkhart (*see* Resp. at 17-23), as a matter of black letter law, Archer has no legal right to sue Schein or other dealers for allegedly fixing prices and margins on products defendants sold to their customers.  As the Supreme Court has made clear, a competitor cannot "recover damages for any conspiracy by [antitrust defendants] to charge higher than competitive prices. . . . Such conduct… could not injure [plaintiffs]: as [defendants'] competitors, [plaintiffs] stand to gain from any conspiracy to raise the market price…." *Matsushita*, 475 U.S. at 582–83 (internal citations omitted).

3

Similarly, if Schein and other dealers jointly took steps to deter ███████ from entering into the dental product distribution business (Resp. at 8-9, 16, 24-26), or successfully impeded state dental associations from promoting another competing dealer (*id.* at 9, 13, 26-30), such conduct could only ***benefit*** Archer.  As even Archer's economic experts agree, ████████ ████████

████████████████████████████████████████████████████████

████████████████████████ ████ ████ ██ ██████████████████

███████ █ ████████████████████████████████████████████

██████████████ █ ████████████████████████████████████

██████████████████████

As it has before, Archer contends that evidence of purported dealer price-fixing or joint efforts to drive out "low margin competitors" like Archer constitute "proof" of defendants' motive to advance an "overarching conspiracy" to protect allegedly inflated profits and margins.  Setting aside the undisputed fact that Archer cannot credibly assert any injury from such conduct, courts uniformly hold that evidence of a profit motive is insufficient to avoid summary judgment in an antitrust conspiracy case.  *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 600 (7th Cir. 1995) (The "presence of an economic motive is of very little probative value.").  As courts recognize—and as Archer's own economic experts agree—*every* company in *every* industry individually has a motive to increase profits and margins.  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 137 (3d Cir. 1999) ("In a free capitalistic society, all entrepreneurs have a legitimate understandable motive to increase profits."); ███████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

---

[2] █████████████████████████████████████████████████████████████ .

Similarly, a desire to exclude competitors like ████████████████ ████████████████ from the market ***does not*** constitute evidence sufficient to avoid summary judgment. This is so because ***every*** dealer ***independently*** has the very same interest—as Archer's economic liability expert also explained:



Accordingly, all the purported evidence Archer cites about Schein's or other dealers' attempts to disadvantage their competitors is not only insufficient to prevent summary judgment on Archer's boycott claim, it is ***immaterial*** as a matter of well-settled law. "[C]onduct as consistent with permissible competition" as with conspiracy cannot support Archer's antitrust claim. *Matsushita*, 475 U.S. at 588. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

None of the "evidence" concerning alleged price-fixing or efforts to deter other competitors from entering the market that Archer uses in an attempt to distract the Court, presents a "factual dispute" that "might affect the outcome" of Archer's ***boycott*** claim. What Archer was required to do here to avoid summary judgment was to come forward with evidence to support ***that*** claim—that the manufacturer decisions to limit its distribution territory to Texas or to terminate it as a dealer were caused by some unlawful agreement that Schein entered into with one of its horizontal competitors. As discussed below, that is where Archer's evidence utterly fails.

II.   **ARCHER HAS FAILED TO COME FORWARD WITH ANY EVIDENCE THAT "TENDS TO EXCLUDE THE POSSIBILITY" OF SCHEIN'S INDEPENDENT CONDUCT.**

Once the rhetoric and discussion of conduct irrelevant to Archer's boycott claim are stripped away, it is clear that Archer has not adduced evidence sufficient to support any inference that Schein participated in an agreement with a competitor to boycott Archer.  In its Response, as it did through its three complaints and rounds of briefing on motions to dismiss, Archer persists in advancing the misleading assertion that Schein participated in a joint meeting with its competitor Burkhart and manufacturer Pelton & Crane in which they discussed terminating Dynamic Dental (not Archer) as a distributor.  *See* Resp. at 5-6 ("In furtherance of the conspiracy, Pelton & Crane's Bump met with Schein and Burkhart in January 2008 and agreed that Pelton & Crane would cut off Dynamic if Schein and Burkhart agreed to make up the lost sales.").  But this is summary judgment now, and Archer must contend with the record evidence.  And that undisputed evidence—reflected in ▮▮▮▮▮▮ own sworn testimony—proves that Archer's suggestion that any such joint meeting took place is unsupportable and false.

As Schein showed in its Motion, ▮▮▮▮▮▮ testified unequivocally that he had ***separate*** meetings at ***different times*** with representatives of Schein and Burkhart in connection with his own sales efforts, but that ▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Schein Mot. at 8-9.  Nor is there any other admissible evidence to support a claim that Schein participated in such a meeting.  Accordingly, despite the voluminous discovery in this case, Archer has come forward with ***no evidence*** that Schein ever met, communicated or discussed with any competing dealer any effort to terminate or restrict the distribution territory of Archer or Dynamic.

This failure alone distinguishes Archer's case from the authorities it so heavily relies upon, in particular *MM Steel*, and *Rossi*.  Unlike the record evidence here, the Fifth Circuit in *MM Steel*

pointed to direct statements by one dealer that it should "do all we can to help" a competing dealer and emails between the two dealers that they "would be successful in shutting [the plaintiff distributor] down." *MM Steel, L.P. v. JSW Steel (USA), Inc.*, 806 F.3d 835, 840-841 (5th Cir. 2015). And the plaintiff in *Rossi* testified to an explicit threat one of the defendants made to him, describing an agreement to put the plaintiff out of business. *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 468 (3d Cir. 1998). Archer has proffered no evidence remotely similar.

Thus, what Archer is left with in this case is nothing more than evidence that Schein and other dealers *individually* made complaints at various times to different manufacturers, and that some of those manufacturers may have taken those complaints into consideration in rendering decisions about Archer's status as a distributor. It certainly is true that Schein salespeople complained to manufacturers about Archer. As Schein showed in its motion, they complained about Archer's ability to sell at lower prices than Schein since Archer did not have to provide the same level of customer service Schein did, and complained when they lost sales. Schein salespeople complained—not only about Archer—but about numerous other competing dealers— including Burkhart and the dealer defendants here that Archer implausibly contends Schein conspired with. Schein Mot. at 4-7. The record evidence also includes testimony from manufacturers that they received complaints from Schein and many other dealers about their competitors "all the time." *See id.* at 7, 9. Schein specifically acknowledged the undisputed fact of these complaints in its own motion, listing and detailing occasions reflected in the record where that occurred. *Id.* at 4-7.

But no matter how nefariously Archer characterizes these complaints in its Response, it does not assist Archer to avoid summary judgment. The law recognizes the business reality that complaints by distributors about their competitors are commonplace—so much so that the U.S.

Supreme Court acknowledged that very fact over three decades ago.  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984) ("[C]omplaints about price-cutters 'are natural—and from the manufacturer's perspective, unavoidable—reactions by distributors to the activities of their rivals.'").  It makes no difference how many complaints were made, or whether other dealers complained at the same time.  ABA Model Jury Instructions in Civil Antitrust Cases (2016), at 80 (jury may not infer an agreement "no matter how many times the distributor(s) complained or how many distributors separately complained.").  Such complaints about competitors "'arise in the normal course of business'" in manufacturer-distributor everyday business dealings "'and do not indicate illegal concerted action.'"  *Monsanto*, 465 U.S. at 763 (citation omitted).  Complaints by competing salespeople are "conduct as consistent with permissible competition" as with any inference of conspiracy, and therefore evidence of such complaints ***cannot*** suffice to avoid summary judgment.

Nor is it at all unusual or unexpected that other full-service dealers in the same situation as Schein would similarly complain at the same time.  Other full-service dealers confronting the same low-service, price-cutting behavior by Archer in the marketplace independently had similar reasons for complaining themselves.  For that very reason, the law also is well-settled that parallel conduct by businesses confronting the same market conditions is not unusual; it is expected and therefore ***cannot*** raise a "plausible inference" of conspiracy.  *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255–56 (3d Cir. 2010) ("But simply because each Dealer, on its own, might have been economically motivated to exert efforts to keep Dentsply's business . . . does not give rise to a plausible inference of an agreement among the Dealers themselves"); *Miles Distribs., Inc. v. Specialty Const. Brands, Inc.*, 476 F.3d 442, 450 (7th Cir. 2007) (parallel complaints about price cutting distributors insufficient to avoid summary judgment); *see also*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 566 (2007) (there is "no reason to infer that the companies had agreed among themselves to do what was only natural anyway").

Archer moreover misstates the legal standard with its argument that it is permissible to infer a *per se* boycott agreement when a manufacturer agrees with one of its dealers to limit or terminate a competing dealer.  Resp. at 39.  That is decidedly ***not*** the law.

"A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently."  *Monsanto*, 465 U.S. at 761; *see also Henderson Broad. Corp. v. Houston Sports Ass'n, Inc.*, 647 F. Supp. 292, 296 (S.D. Tex. 1986) ("In manufacturer-distributor cases a manufacturer generally has a right to deal or refuse to deal with whoever it wishes, as long as it does so independently.").  Similarly, it is entirely within a manufacturer's discretion to choose to sell its products through one dealer as opposed to another, even if that is to the disadvantage of the dealer that loses the manufacturer's business.  "It is not an antitrust violation for a manufacturer to alter his distribution system and negotiate a change from one distributor to another even if the effect of the new contract is to seriously damage the former distributor's business."  *Tim W. Koerner & Assocs., Inc. v. Aspen Labs, Inc.*, 492 F. Supp. 294, 302 (S.D. Tex. 1980), *aff'd sub nom., Koerner & Assoc. v. Aspen Labs*, 683 F.2d 416 (5th Cir. 1982) (internal quotation marks and citation omitted).

The law is well-settled that it is impermissible to infer a boycott agreement solely from dealer complaints, and a manufacturer's decision to terminate a competing distributor in response to such complaints.  *Monsanto,* 465 U.S. at 763 (improper to infer boycott agreement "merely from the existence of complaints, or even from the fact that termination came about 'in response to' complaints"); ABA Model Jury Instructions in Civil Antitrust Cases (2016), at 80 ("You may not infer an agreement between defendant and a complaining distributor(s) solely from the fact that

defendant acted in a response to information that came from the distributor(s) or that defendant acted exactly as the complaining distributor(s) wanted it to act or requested that it act.")  And characterizing the complaints as "threats" still does not convert them into an antitrust boycott conspiracy: a claim that a manufacturer "gave in to pressure and fear of retaliation by several of its distributors . . . *is legally insufficient* to prove a conspiracy." *Rossi*, 156 F.3d at 482 (emphasis added).  "It is a harsh reality that when competition occurs, some win and some lose. Emerging victorious from competition, however, is not illegal under the Sherman Act." *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991).  Such evidence merely shows the type of ordinary business conduct one expects to see among competing dealers trying to win customer business and manufacturers' lines from one another.

Accordingly, none of the evidence of Schein employees' complaints that Archer relies upon supports that an "inference of [horizontal] conspiracy is reasonable in light of the competing inferences of [the] independent action[s]" of those employees. *See Matsushita*, 475 U.S. at 588. To avoid summary judgment, Archer had to "do more than simply show that there is some metaphysical doubt." *See id.*  It was required to offer evidence "tend[ing] to exclude the possibility" of Schein's independent conduct. *Id*.  And it was required to "set forth specific facts showing that there is a genuine issue for trial" with respect to the question whether Schein agreed with any horizontal competitor to boycott Archer. *Anderson*, 477 U.S. at 248.  Because it has failed to do so, summary judgment in Schein's favor should be granted.

## CONCLUSION

Accordingly, for the reasons set forth above and in its original Motion, Schein respectfully requests that the Court grant summary judgment on Archer's claims alleging that Schein entered into any *per se* unlawful horizontal agreement with Benco, Patterson, and Burkhart.

Dated:  February 9, 2018

Respectfully submitted,

By: */s/ Paul F. Schuster* _____

Paul F. Schuster
  Texas Bar No. 00784931
  pschuster@lockelord.com
John P. McDonald
  Texas Bar No. 13549090
  jpmcdonald@lockelord.com
Matthew K. Hansen
  Texas Bar No. 24065368
  mkhansen@lockelord.com
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
Telephone:  (214) 740-8000
Facsimile:  (214) 740-8800

Christopher Ondeck (*pro hac vice*)
  condeck@proskauer.com
Adrian Fontecilla (*pro hac vice*)
  afontecilla@proskauer.com
Stephen Chuk (*pro hac vice*)
  schuk@proskauer.com
**PROSKAUER ROSE LLP**
1001 Pennsylvania Avenue NW
Washington, DC 20016
Telephone: (202) 416-5865
Facsimile: (202) 416-6899

Barack S. Echols (*pro hac vice*)
  barack.echols@kirkland.com
Richard C. Godfrey, P.C. (*pro hac vice*)
  richard.godfrey@kirkland.com
J. Andrew Langan, P.C. (*pro hac vice*)
  andrew.langan@kirkland.com
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel for Defendant Henry Schein, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 9th day of February, 2018.

*/s/ Paul F. Schuster*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case (ECF No.  116).

*/s/ Paul F. Schuster*